IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| **COLONEL FINANCIAL MANAGEMENT OFFICER**, *et al.*,<br><br>　　　　　　　Plaintiffs,<br><br>　v.<br><br>**LLOYD AUSTIN**, in his official capacity as Secretary of the Department of Defense, *et al.*,<br><br>　　　　　　　Defendants. | Case No. 8:22-cv-1275-SDM-TGW |

### DEFENDANTS' OPPOSITION TO PLAINTIFF FIRST LIEUTENANT'S MOTION FOR INJUNCTIVE RELIEF

Plaintiff First Lieutenant filed an emergency motion requesting the Court to enjoin his "separation from the Marine Corps and eviction of his family from on-base housing" for not receiving his required COVID-19 vaccination, Dkt. No. 219, despite being informed prior to the filing of his motion that his on-base housing had been extended. On the same day, the Court entered a temporary restraining order and set the matter for hearing on August 10, 2022, "on whether to convert this temporary injunctive relief into a preliminary injunction." Dkt. No. 220.[1] Defendants respectfully submit this memorandum in response.

### BACKGROUND

The procedural background of this matter is set forth in Defendants' prior filings in this action.[2] *See* Dkt. Nos. 23, 42, 66, 74, 97, 118, 132, 139, 140, 156. Defendants

---

[1] Senior Trial Counsel Amy Powell is on pre-planned leave on the date of the August 10, 2022 hearing. Trial Attorney Catherine Yang will appear on behalf of Defendants at the hearing.

[2] The Court severed the claims of Marine Corps members from the original action, *Navy SEAL 1 v. Biden*, and opened a new case—the instant action—comprised of those claims. Dkt. No. 194. The referenced materials remain on the docket for this action.

respectfully refer the Court to those filings and incorporate that discussion and the declarations submitted in connection with those motions here.

## LEGAL STANDARDS

The issuance of a temporary restraining order or preliminary injunctive relief requires the same four elements to be met, and both are extraordinary remedies to be granted only under exceptional circumstances. *Cheng Ke Chen v. Holder*, 783 F. Supp. 2d 1183, 1186 (N.D. Ala. 2011) (citing *Sampson v. Murray*, 415 U.S. 61 (1974)); *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). To obtain such relief, the movant must demonstrate four requirements by a clear showing: (1) substantial likelihood of success on the merits, (2) that emergency relief is necessary to prevent irreparable injury, (3) that the balance of equities weighs in the movant's favor, and (4) that the emergency relief is not adverse to the public interest. *Parker v. State Bd. of Pardons & Paroles*, 275 F.3d 1032, 1034–35 (11th Cir. 2001); *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225 (11th Cir. 2005) (per curiam). The third and fourth requirements merge when the government is the opposing party. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

## ARGUMENT

### I. First Lieutenant Is Unlikely to Succeed on the Merits of His RFRA and First Amendment Claims.

Under RFRA, the government "shall not substantially burden a person's exercise of religion" unless the government "demonstrates that application of the burden to the person—(1) is in furtherance of a compelling governmental interest; and

(2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1(a), (b). "[A] majority of the Supreme Court has already held . . . that the Government is likely to succeed on the merits of the same claims brought by Navy SEALS," and although that decision may not be formally binding, "it is the most persuasive authority on which a District Court may rely." *Navy SEAL 1 v. Austin*, --- F. Supp. 3d ---, 2022 WL 1294486, at *4 (D.D.C. Apr. 29, 2022) (denying preliminary injunction); *cf. Dunn v. Austin*, 142 S. Ct. 1707 (2022) (denying plaintiff's application for injunction pending appeal).[3] First Lieutenant's claims are not likely to succeed for several reasons.[4]

First, even assuming First Lieutenant's sincere religious belief, the vaccination requirement does not substantially burden the beliefs he articulates. First Lieutenant's stated beliefs are to the use of mRNA technology in the Moderna and Pfizer COVID-19 vaccines, concerns with the safety of the same vaccines based on purported information in the Vaccine Adverse Event Reporting System ("VAERS"), and claims

---

[3] Additional courts have recently denied service members' requests for such relief based on the same RFRA and Free Exercise claims asserted here, finding no likely success on the merits and inability to demonstrate the remaining factors. *See, e.g.*, *Knick v. Austin*, No. 22-1267, 2022 WL 2157066 (D.D.C. June 15, 2022); *Roth v. Austin*, --- F. Supp. 3d ---, 2022 WL 1568830 (D. Neb. May 18, 2022); *Creaghan v. Austin*, --- F. Supp. 3d ---, 2022 WL 1500544 (D.D.C. May 12, 2022); *Thomas Short v. Berger*, No. 22-cv-444, 2022 WL 1203876 (D. Ariz. Apr. 22, 2022); *Mark Short v. Berger*, No. 22-cv-1151, 2022 WL 1051852 (C.D. Cal. Mar. 3, 2022).

[4] First Lieutenant's Free Exercise claim is not properly reviewed under strict scrutiny because "review of military regulations challenged on First Amendment grounds is far more deferential than constitutional review of similar laws or regulations designed for civilian society." *Goldman v. Weinberger*, 475 U.S. 503, 507 (1986). Regardless, because his RFRA claim fails, his First Amendment claim also necessarily fails and Defendants do not otherwise address it separately here.

that DoD violated 10 U.S.C. § 1107a by supposedly requiring vaccines under FDA emergency use authorization. Dkt. No. 219-1 at 16–17. None of those beliefs are burdened, however, because non-mRNA vaccines are available that satisfy the military's vaccination requirement, such as Novavax and Johnson & Johnson. *E.g.*, CDC, *CDC Recommends Novavax's COVID-19 Vaccine for Adults* (July 19, 2022), https://perma.cc/8E93-TG2T; FDA, *COVID-19 Update: FDA Limits Use of Janssen COVID-19 Vaccine to Certain Individuals* (May 5, 2022), https://perma.cc/N7WA-ECSH. The vaccines have been shown to be both safe and effective at preventing severe illness, hospitalization, and death, *see, e.g.*, Dkt. No. 74-4 ¶¶ 12, 16; Dkt. No. 74-5 ¶ 3, and claims of vaccine harm based on incorrect VAERS entries have been shown inaccurate, *see, e.g.*, Dkt. No. 167-5 (explaining the inaccuracy of claims that the COVID-19 vaccines resulted in large increases in outpatient medical encounters). *See also Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173, 1181 (9th Cir. 2021) (concluding that the record evidence reflects the safety of the COVID-19 vaccines); *United States v. Broadfield*, 5 4th 801, 803 (7th Cir. 2021) (similar); *United States v. Austin*, No. 15-20609, 2021 WL 1137987, at *2 (Mar. 25, 2021) ("By all available evidence, COVID-19 vaccines are safe and substantially reduce the health risks presented by COVID-19."). The military has not required vaccination with emergency use authorized vaccines, *see* Dkt. No. 1-4, and in any event, licensed vaccines (*i.e.*, non-emergency use authorized vaccines), such as Comirnaty, are available. *See, e.g.*, *Coker v. Austin*, No. 3:21-cv-1211, Dkt. No. 96-4 (N.D. Fla. June 17, 2022) (showing

4

availability of Comirnaty within just DoD). Thus, First Lieutenant cannot establish that the military's vaccination requirement substantially burdens the beliefs he states, and he fails to meet his threshold burden. *See, e.g.*, *New Doe Child #1 v. Congress of United States*, 891 F.3d 578, 590–91 (6th Cir. 2018) (acceptable alternatives can defeat a substantial burden claim); *Oklevueha Native Am. Church of Hawaii, Inc. v. Lynch*, 828 F.3d 1012, 1016–17 (9th Cir. 2016) (same).[5]

With respect to the compelling interest and least restrictive means prongs of the RFRA standard, Defendants incorporate their arguments made in prior filings with this Court explaining that the Marine Corps has a compelling interest in requiring individual service members' vaccination in order to ensure service member health and readiness, and that there are not less restrictive means to achieve that interest because alternatives to vaccination are not as effective at preventing severe illness, hospitalization, and death. The same arguments apply to First Lieutenant's particular circumstances, and Defendants provide the following additional discussion.

In his last two assignments prior to the adjudication of his exemption request, First Lieutenant served as the Deployed Support Unit Officer-in-Charge, and then the Fiscal Officer-in-Charge for the 1st Supply Battalion, in which roles he was responsible

---

[5] Additionally, to the extent First Lieutenant's objections are actually medical and scientific concerns, such beliefs are not religious and are not protected by RFRA. *See, e.g.*, *Fallon v. Mercy Catholic Med. Ctr. of Se. Pa.*, 877 F.3d 487, 492 (3d Cir. 2017) (plaintiff's "worries about the health effects of the flu vaccine, disbelie[f of] the scientifically accepted view that it is harmless to most people, and wish[] to avoid this vaccine" were not religious beliefs); *see also* Dkt. No. 219-1 at 10 (finding that "First Lieutenant['s] concerns about the COVID-19 vaccine testing and approval process and COVID-19 vaccines' impact on transmission" are not expressions of religious beliefs).

5

for ensuring support to deploying personnel and managing command funding, among other duties. DEX 1, Declaration of Maj. Falvey, ¶ 4. This work, according to Plaintiffs, is "critical to mission success because it focuses on maintaining the battle tempo and winning battles via supply chain and logistic functions." Dkt. No. 198 ¶ 31. Moreover, First Lieutenant must be worldwide deployable on short notice, and deployment is often to austere environments where medical care is lacking or even unavailable without introducing avoidable risk to the mission. DEX 1 ¶ 5; *see also* Dkt. No. 219-1 at 10; Dkt. No. 42-3 ¶ 15. Indeed, within the 1st Supply Battalion, three of the officers in First Lieutenant's military occupation specialty are currently deployed, and two others are in the training cycle for deployment. DEX 1 ¶ 6. Given these military needs, the Marine Corps concluded that First Lieutenant's vaccination against COVID-19 was necessary to prevent and reduce avoidable risk to the mission. *See* Dkt. No. 219-1 at 15 (explaining that vaccination is "a critical component of individual and unit readiness"); *id.* at 24 ("Personnel who have fallen ill due to a failure to be vaccinated against COVID-19 undermine a unit's effective functioning and would negatively impact their unit's ability to accomplish the mission."); *id.* (noting that vaccinated individuals, if infected, are contagious for a shorter period of time); *id.* at 25 (explaining that being unvaccinated compromises the requirement that "all personnel must be able to perform their individually assigned duties"). As numerous courts have found, "there can be no greater military interest than in keeping each servicemember fit and healthy enough to accomplish their duties." *Creaghan*, 2022 WL 1500544, at *9; *see also, e.g.*, *Navy SEAL 1*, 2022 WL 1294486, at *9 ("[T]he *sine qua*

*non* of military interests is keeping an individual servicemember fit enough to accomplish their tasks in furtherance of national security."); *Roth*, 2022 WL 1568830, at *17; *Knick*, 2022 WL 2157066, at *4. Extensive data demonstrate that vaccination remains the most effective means of preventing severe illness, hospitalization, and death from COVID-19, and First Lieutenant's claims are therefore unlikely to succeed on the merits.

Although the Court's TRO order notes that the denial of First Lieutenant's request is "subject to the same infirmities" as with prior plaintiffs and "bears an unsettling resemblance to the other appellate denials submitted," Dkt. No. 220 at 2, those concerns do not mean that the Marine Corps has failed to provide individualized review and consideration of First Lieutenant's circumstances. As another court recently, and correctly, recognized: the appeal denial letters are not meant to be "comprehensive explanations of the individualized assessments through all the levels of the chain of command that had input into the process." *Roth*, 2022 WL 1568830, at *14 (denying preliminary injunction). Nor are the assessments a "sham," as that court further held: "it is not surprising that numerous requests, even considered individually, could run afoul of the same handful of circumstances warranting denial of an exemption. This is particularly true in the military, where numerous personnel may perform identical or similar jobs in identical or similar circumstances." *Id.* at *15. That the Marine Corps has granted religious exemption requests, where appropriate, underscores the individualized consideration that it makes with each request. *See* USMC, *Monthly COVID-19 Update* (Aug. 4, 2022), https://perma.cc/HFD6-C8DG.

## II. First Lieutenant's Claims Are Unlikely to Succeed for Additional Reasons.

### A. First Lieutenant Lacks Venue in This Court.

As discussed in Defendants' motion to dismiss the Third Amended Complaint, Dkt. No. 205 at 19–22, First Lieutenant lacks venue in this district and his claims are improperly joined. First Lieutenant is not alleged to reside in this district, *see* Dkt. No. 198, and he is stationed in California—meaning that no events giving rise to his claims occurred in this district, *see* Dkt. No. 219-1 at 1 (identifying duty station as Camp Pendleton, California). Accordingly, and as several courts addressing RFRA and Free Exercise claims against the military have held, the claims of plaintiffs like First Lieutenant who lack venue should be dismissed. *See, e.g.*, *Crosby v. Austin*, No. 8:21-cv-2730, Dkt. No. 44 (M.D. Fla. Feb. 22, 2022); *Clements v. Austin*, No. 2:22-cv-2069, Dkt. No. 22 (D.S.C. July 27, 2022).

### B. First Lieutenant Has Not Exhausted His Administrative Remedies.

As Defendants' prior briefing explained, the Eleventh Circuit has "time and again" required exhaustion of administrative remedies in military cases, *Winck v. England*, 327 F.3d 1296, 1302 (11th Cir. 2003) (collecting cases), *abrogated on different grounds as recognized in Santiago-Lugo v. Warden*, 785 F.3d 467, 475 n.5 (11th Cir. 2015), and Defendants incorporate those arguments here. *See, e.g.*, Dkt. No. 205 at 13–19; Dkt. No. 156 at 4–5. Although First Lieutenant has received a discharge order, the military provides specific administrative procedures for challenging that decision. *See* Dkt. No. 23-19 ¶ 22. For instance, a discharged member may seek relief from the Board for Correction of Naval Records, which may correct any military record as necessary

to correct an error or remove an injustice and may result in reinstatement in the Marine Corps. 10 U.S.C. § 1552; *see also* Dkt. No. 23-19 ¶ 22. There is "no injustice in requiring [a member of the military] to submit to a system established by Congress and carefully designed to protect not only military interests but his legitimate interests as well." *Schlesinger v. Councilman*, 420 U.S. 738, 759–60 (1975). For these reasons, courts have required service members to exhaust their remedies through the applicable records correction board, *e.g.*, *Bois v. Marsh*, 801 F.2d 462, 467–68 (D.C. Cir. 1986), and this Court should do the same.

### III. First Lieutenant Does Not Face Irreparable Harm.

First Lieutenant also cannot satisfy the requirement of demonstrating irreparable injury, and his request for injunctive relief can be denied for this reason alone. Although First Lieutenant was notified of his separation date on August 3, he acknowledges that he has been preparing for separation since at least March of this year, when he completed "the last requirement[s] needed for Secretary of the Navy to make a final determination and to complete the Administrative Separation process." Dkt. No. 198 ¶ 31; *id.* (as of the filing date, June 30, 2022, alleging that "First Lieutenant expects to receive notice of his final separation at any time"); *see also* DEX 1 ¶¶ 3, 7 (explaining the outprocessing First Lieutenant had already undergone by the end of July, beginning in March). As his discharge order reflects, as of August 3 First Lieutenant had already elected his means of post-separation travel, as well as provided his permanent mailing address. Dkt. No. 219-3.

It is also not correct that First Lieutenant faced "eviction" on August 5, his

9

separation date, or that such action is imminent. Before this Court entered the TRO, First Lieutenant had already requested—and been approved for—an up to 60-day extension to his deadline to leave government housing.[6] DEX 1 ¶ 9.

More fundamentally, however, neither of these alleged harms presents irreparable injury as the Eleventh Circuit requires. *See Ne. Fla. Chapter of Ass'n of Gen. Contractors v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990). Separation decisions "are definitionally reparable." *Navy SEAL 1*, 2022 WL 1294486, at *15 (citing cases); *see also Sampson*, 415 U.S. at 92 n.68. And any housing (or other) expenses are the quintessential example of *reparable* harm, capable of being remedied by "adequate compensatory or other corrective relief" at the end of litigation, should the plaintiff prevail. *Sampson*, 415 U.S. at 90; *see also Navy SEAL 1*, 2022 WL 1294486, at *16 (finding no irreparable harm, where "no government actor is preventing Plaintiff from exercising his alleged religious conviction against COVID-19 vaccination"); *Thomas Short*, 2022 WL 1203876, at *8 (similar).

## IV. The Public Interest Weighs Against the Entry of Preliminary Injunctive Relief.

First Lieutenant cannot satisfy the final two factors either. As discussed in Defendants' prior briefing before this Court, and incorporated here, the military (and the public generally) have an undeniably strong interest in maintaining the national defense, of which the critical component is the health and readiness of the Nation's

---

[6] Defendants' counsel informed Plaintiffs' counsel of this extension before their filing of the TRO motion.

service members. *Winter*, 555 U.S. 7; *Navy SEAL 1*, 2022 WL 1294486, at *9 (describing this as "the *sine qua non*" of military interests); *Mark Short*, 2022 WL 1051852, at *9. The military likewise has a strong interest in maintaining good order and discipline as it responds to service members' failure to follow lawful orders, as the military could not function if individual members took it upon themselves to reject the lawful orders of their superiors. *Chappell v. Wallace*, 462 U.S. 296, 300 (1983) ("The inescapable demands of military discipline and obedience to orders cannot be taught on battlefields; the habit of immediate compliance with military procedures and orders must be virtually reflex with no time for debate or reflection."); *Miller v. United States*, 42 F.3d 297, 303 (5th Cir. 1995) (stating that concern for preserving military discipline is "the most important consideration in any single case" (quoting *Scales v. United States*, 685 F.2d 970, 973 (5th Cir. 1982))); *see also* Dkt. No. 23-19 ¶ 23.

Finally, with respect to the relief targeted toward maintaining First Lieutenant's housing, neither emergency relief through a TRO nor preliminary relief is necessary to maintain the status quo. First Lieutenant had already been approved for extended housing before he filed his motion and the Court issued emergency relief. DEX 1 ¶ 9. That preexisting extension would have been effective for up to 60 days. *Id.* ¶¶ 9–10. As such, the balance of the equities in this case favors Defendants.

## **CONCLUSION**

For the foregoing reasons, the Court should lift its temporary restraining order and decline to issue any preliminary injunctive relief for First Lieutenant.

Dated: August 8, 2022

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney
General

ANTHONY J. COPPOLINO
Deputy Director

Respectfully submitted,

/s/ *Catherine M. Yang*
ANDREW E. CARMICHAEL
AMY E. POWELL
Senior Trial Counsel
CATHERINE M. YANG
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel: (202) 514-4336
Fax: (202) 616-8460
Email: catherine.m.yang@usdoj.gov

*Counsel for Defendants*