IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| **COLONEL FINANCIAL MANAGEMENT OFFICER**, *et al.*,<br><br>                              Plaintiffs,<br><br>       v.<br><br>**LLOYD AUSTIN,** in his official capacity as Secretary of the United States Department of Defense, *et al.*,<br><br>                              Defendants. | Case No. 8:22-cv-1275 (SDM/TGW) |

**TIME-SENSITIVE MOTION TO STAY PROCEEDINGS**

**INTRODUCTION**

On December 9, 2022, Defendants moved the Court to stay proceedings to preserve judicial and party resources while Congress considered the James M. Inhofe National Defense Authorization Act for Fiscal Year 2023 ("the NDAA"). Section 525 of the NDAA requires the Secretary of Defense to rescind the mandate that members of the Armed Forces be vaccinated against COVID-19 pursuant to the Secretary's August 24, 2021 memorandum. The parties reached a partial resolution that extended deadlines for depositions and motions that had been scheduled for the week of December 11, 2022, and which Defendants had explained in the motion would be unnecessary if the NDAA passed. Specifically, the parties agreed to reschedule remaining depositions for the first two weeks of January 2023. By December 15, 2022, Congress passed Section 525, which has now been presented to the President for his

1

approval. On December 19, 2022, the White House announced that the President intends to sign the NDAA later this week.[1]

Defendants accordingly move the Court for an order vacating all pending deadlines and staying this case in its entirety for at least forty-five days after signing to preserve judicial and party resources while Defendants begin to implement that legislation. Implementation of the NDAA will have a substantial impact on this litigation and likely will partly or entirely resolve Plaintiffs' claims. At a minimum, the implementation of Section 525 of the NDAA will clarify the scope of any class-wide issues still to be resolved. Accordingly, a stay of proceedings in this case while Defendants develop implementation guidance is appropriate and will preserve the parties' and the Court's resources. Defendants propose that the parties file a joint status report proposing next steps on or before Monday, February 6, 2023, proposing next steps.

In opposing this motion, Plaintiffs seek to go to trial on issues that will either be moot (such as the soon-to-be-rescinded August 2021 mandate) or on issues that will be under consideration at the Department of Defense and the United States Marine Corps (such as how the NDAA will be implemented)). Proceeding as Plaintiffs suggest is not be an efficient use of the parties', or the Court's, resources. Any witness testimony still needed will depend on the nature of the policy in place after the NDAA, which is yet to be implemented. Moreover, some of the high-ranking officials Plaintiffs

---

[1] https://www.whitehouse.gov/briefing-room/press-briefings/2022/12/19/press-briefing-by-press-secretary-karine-jean-pierre-11/

still seek to depose are the very same officials that the Marine Corps will need to implement Section 525 and any change in military COVID-19 vaccination policy. Given that this Court's class-wise preliminary injunction continues to protect Plaintiffs, neither Plaintiffs nor the class can demonstrate prejudice from a brief stay of proceedings. To the contrary, a stay will only help clarify whether any aspect of this case will continue after Defendants implement the NDAA. Requiring depositions and discovery—including the resolution of discovery disputes—before that clarification would only prejudice Plaintiffs and waste all parties' resources. In short, to conserve judicial and party resources, the Court should enter a short stay of proceedings.

Given the depositions of high-ranking officials imminently scheduled for the first two weeks of January, Defendants respectfully request expedited treatment of this request and either an administrative stay pending briefing, or a decision by Tuesday January 3, 2023.

## BACKGROUND

On August 24, 2021, the Secretary of Defense issued a memorandum announcing that vaccination against COVID-19 would be added to the list of vaccinations required of Service Members. *See* Sec'y of Def. Mem., ECF No. 23-3. Remaining Plaintiffs in this case are fifteen United States Marines, all of whom have submitted a religious accommodation request ("RAR") seeking an exemption from the policy; most of these Plaintiffs have had their RAR denied, and no Plaintiff to date has had an RAR approved. *See* Third Am. Compl. ¶¶ 99–113, ECF No. 198.

On August 18, 2022, the Court certified a class, *see* Order, at 47, ECF No. 229. The Court also issued a class-wide preliminary injunction barring DoD and the Marine Corps from enforcing the vaccine requirement against class plaintiffs and from disciplining or separating class members who do not receive the vaccine. *See id.* The parties are currently undergoing discovery, and a trial on the merits is currently set to begin January 23, 2023. *See* Order, ECF No. 236. Discovery was previously set to close on December 16, 2022. *Id.*

When the proposed NDAA legislation was publicly released, Defendants moved to stay proceedings. ECF No. 252. The parties reached partial agreement and the Court entered an order extending certain discovery deadlines. ECF No. 254. In particular, the parties are rescheduling the remaining four depositions for the first two weeks of January, will file *Daubert* motions by January 13, 2023, and complete conferrals on outstanding discovery disputes as soon as practicable. The trial date (to begin January 23, 2023) remains unchanged. Tentatively, the parties have scheduled depositions as follows: Plaintiffs' expert Dr. Peter McCullough on January 3, 2023 in Denver, Colorado; Defendants' expert Dr. Barbara Mahon on January 11, 2023 in Atlanta, GA; Defendants' witness Lt. Gen David Ottignon on January 13, 2023; and a 30(b)(6) witness on the revised Topic 1 with a date/location to be determined in the first two weeks of January.

In addition to the rescheduled depositions and anticipated *Daubert* motions, discovery disputes and trial preparation remain. Defendants have a pending motion for a protective order regarding an additional deposition and await a response to their

communications about discovery deficiencies before filing a motion to compel. The parties have also been discussing approaching the Court about the time needed to conduct the trial because the length of trial is not specified by the Court's scheduling order, and the parties anticipate needing considerable time to present their cases. Defendants also currently anticipate filing a partially dispositive motion (related to the informed consent and damages claims), so that such a motion could be resolved in advance of the trial. Such motions are currently due by January 4, 2023. ECF No. 236. The joint pretrial statement is due January 11, 2023, and the pretrial conference is set for January 18, 2023. *Id*.

On December 15, 2022, Congress passed the James M. Inhofe National Defense Authorization Act for Fiscal Year 2023. *See* 168 Cong. Rec. H8853 (Dec. 8, 2022); 168 Cong. Rec. S7236 (Dec. 15, 2022); Ex. 1;[2] *see also* https://www.reuters.com/world/us/us-senate-backs-record-858-billion-defense-bill-voting-continues-2022-12-16/. Section 525 of the legislation is titled "Rescission of COVID-19 Vaccination Mandate." Ex. 1. In full, Section 525 provides:

> Not later than 30 days after the date of the enactment of this Act, the Secretary of Defense shall rescind the mandate that members of the Armed Forces be vaccinated against COVID-19 pursuant to the memorandum dated August 24, 2021, regarding "Mandatory Coronavirus Disease 2019 Vaccination of Department of Defense Service Members".

---

[2] The Rules Print and Joint Explanatory Statement (as prepared to be inserted into the Congressional Record) are also available on the Committee's website: https://rules.house.gov/bill/117/hr-7776-sa.

*Id*. The NDAA does not require or prohibit further specific implementation measures, but a joint explanatory statement from conference notes that DoD "has mechanisms to correct a servicemember's military record for discharge due to failure to receive the COVID-19 vaccine" and that "the military departments have the ability to consider applications for reinstatement of servicemembers who were previously separated for refusing the vaccine." Ex. 2. On December 19, 2022, the White House confirmed that the President intends to sign the NDAA later this week.[3]

## ARGUMENT

The Court should stay further proceedings in this case pending the implementation of the NDAA and to give the parties and the Court time to consider how the implementation will impact this litigation. A district court "has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997). "A request for stay 'calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.'" *Ferrari v. N. Am. Credit Servs., Inc.*, 585 F. Supp. 3d 1334, 1336 (M.D. Fla. 2022) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936)). In deciding whether to stay proceedings, courts consider "(1) whether a stay will unduly prejudice or tactically disadvantage the nonmoving party, (2) whether the moving party will suffer a hardship or inequity going forward, and (3) whether a stay will preserve judicial resources." *Garmendiz v. Capio Partners, LLC*, No. 8:17-cv-987-EAK-AAS, 2017 WL 3208621, at

---

[3] https://www.whitehouse.gov/briefing-room/press-briefings/2022/12/19/press-briefing-by-press-secretary-karine-jean-pierre-11/

6

*2 (M.D. Fla. July 26, 2017); *see also, e.g., Prudential Ins. Co. of Am. v. Silvers*, No. 3:19-cv-240, 2020 WL 10180568, at *1 (M.D. Fla. Dec. 4, 2020) (considering "whether a stay will streamline the case for trial" and "whether a stay will reduce the burdens of litigation on the parties and on the Court.").

Here, these factors weigh in favor of a stay of proceedings. Indeed, proceeding to address Plaintiffs' challenges to the military's COVID-19 vaccination regulations after the Government "commence[s] rescinding [those same] regulation[s] appears to be a very wasteful use of limited judicial resources." *Wyoming v. Zinke*, 871 F.3d 1133, 1142 (11th Cir. 2017). Even assuming that some aspect of Plaintiffs' claims might continue once Section 525 is implemented, it "is clearly evident that the disputed matter" has "become a moving target." *Id.*; *see also Ethyl Corp. v. Browner*, 989 F.2d 522, 524 n.3 (D.C. Cir. 1993) (quoting *Anchor Line Ltd. v. Fed. Maritime Comm'n*, 299 F.2d 124, 125 (D.C. Cir. 1962)) ("when an agency seeks to reconsider its action, it should move the court to remand or hold the case in abeyance pending reconsideration by the agency"). The value in a stay is especially great here given the military context—"in no other area has the [Supreme] Court accorded Congress greater deference." *Rostker v. Goldberg*, 453 U.S. 57, 64-65 (1981).

I. **A Stay Promotes Judicial Economy.**

The Court should stay proceedings to promote judicial economy and to conserve the parties' and the Court's resources. Implementation of the NDAA could resolve Plaintiffs' claims, potentially rendering unnecessary—or at least substantially affecting—future litigation. Proceeding with discovery, trial preparations, dispositive

7

motions, and trial before the implementation is complete may be enormously wasteful, especially as the parties have been undergoing discovery on a highly expedited basis. *See* Order, ECF No. 236. Given the complexity of issues in this case, the number of Plaintiffs, and the certification of a class action, discovery so far has been extensive. Preparation for the trial currently scheduled to begin in January 2023 is time intensive. Accordingly, the requested relief will further the orderly course of justice and preserve the Court's resources. "[A] stay will conserve judicial time and energy by allowing [Congress] to address the . . . concerns raised by the Court in its preliminary injunction order, which may moot this litigation entirely." *Pavek v. Simon*, 19-cv-3000 (SRN/DTS), 2020 WL 4013982, at *2 (D. Minn. July 16, 2020), at *2; *see also Ferrari*, 585 F. Supp. at 1337 (stay appropriate and warranted where pending proceedings "will have a 'substantial or controlling effect' on [plaintiff's] claim") (citation omitted).

As an absolute minimum, Section 525's enactment into law would impact the basis for class certification. This Court has explained that "[f]or a remedy, the plaintiffs request *only* (which is the *only* remedy foreseeably 'appropriate') an order re-committing the Marines' applications [for a religious accommodation from the COVID-19 vaccination requirement at issue in Section 525] *en masse* to the Marine Corps for a determination in accord with the 'to the person' requirement and other requirements of RFRA." *Col. Financial Management Officer v. Austin*, --- F. Supp. 3d ---, ---, 2022 WL 3643512, at *19 (M.D. Fla. Aug. 18, 2022) (emphasis added). This demand for remand for reconsideration of the exemption requests of class members will soon be moot; there is no reason to reconsider requests for exemption from a

mandate that no longer exists. To the extent class members claim they have other lingering effects from the mandate and demand new class-wide relief, such relief has not been the subject of this litigation to date.

It is difficult to see how the parties can investigate and the Court could adjudicate such claims in the abstract before the Defendants have implemented the NDAA and considered its application to Plaintiffs. Some Plaintiffs and many class members, for example, have no disciplinary record at all and thus the rescission of the mandate appears to moot their claims entirely. Other Plaintiffs have administrative proceedings initiated but not concluded. If any claims survive the implementation of the NDAA, the remaining Plaintiffs will need to amend their complaint, including as to any potential class claims, but in any event a trial in January is premature. A stay "will narrow the legal issues involved in this dispute and provide a more concrete setting for deciding any issues [that may or may not be] left on the table." *See Am. Petroliam Institute v. EPA*, 683 F.3d 382, 388 (D.C. Cir. 2012).

## II.   A Stay Would Prevent All Parties from Needlessly Wasting Resources.

Given that implementing Section 525 will clearly impact the scope and nature of the issues to be decided, proceeding with expedited discovery imposes a hardship on Defendants (as well as Plaintiffs). The Eleventh Circuit has recognized the hardship that potentially unnecessary discovery imposes as it has "emphasized the responsibility of trial courts to manage pretrial discovery in order to avoid 'a massive waste of judicial and private resources' and a loss of society's 'confidence in the courts' ability to administer justice.'" *See Perez v. Miami-Dade Cnty.*, 297 F.3d 1255, 1263 (11th

9

Cir. 2002) (quoting *Johnson Enters. of Jacksonville, Inc. v. FPL Grp. Inc.*, 162 F.3d 1290, 1333 (11th Cir. 1998)). "If a stay is not granted and the parties proceed, it is entirely possible that *all* parties to this case may expend significant time and resources litigating a matter that [Congress] might resolve" in the national defense authorization bill. *See Pavek*, 2020 WL 4013982, at *3. Even if some aspects of this case proceed, the depositions that are currently scheduled may well have limited relevance to any disputes that remain. Accordingly, there is a high likelihood that proceeding with discovery and litigation in this case will waste resources of all parties.

Moreover, the imminently scheduled depositions regarding a policy that Congress has directed the Secretary to revoke through passage of the NDAA are potentially irrelevant and would consume the limited time and resources of high-ranking officials. The Supreme Court has explained that litigation "exacts heavy costs in terms of efficiency and expenditure of valuable time and resources that might otherwise be directed to the proper execution of the work of the Government." *Ashcroft v. Iqbal*, 556 U.S. 662, 685 (2009). Those principles apply with the greatest force when official military duties in furtherance of the national defense are implicated. *See Woodard v. Marsh*, 658 F.2d 989, 994 (5th Cir. 1981) (equitably balancing the impact on the military of "requir[ing] the Army to submit to discovery concerning" its decisions). Here, the imminently scheduled depositions in this case include high-ranking military officials and one high-ranking Centers for Disease Control and Prevention ("CDC") official: Lieutenant General David A. Ottignon, Barbara Mahon, M.D. M.P.H., and someone who can testify on behalf of the Marine Corps as to

current policies and procedures implementing the vaccine mandate.

Lt. Gen. Ottignon is the Commanding General of the Second Marine Expeditionary Force. A Marine Expeditionary Force ("MEF") is a combined arms force consisting of ground, air, and logistic forces. Lt. Gen. Ottignon's MEF is one of three in the Marine Corps. The Second MEF includes more than 47,000 Marines and Sailors and is representative of the largest and most powerful Marine Air Ground Task Force. Lt. Gen. Ottignon is the highest-ranked of several government officials not ordinarily subject to deposition that are scheduled to provide deposition testimony in this case. *See, e.g.*, *In re United States*, 985 F.2d 510, 512 (11th Cir. 1993); *In re Paxton*, 53 F.4th 303, 309 (5th Cir. 2022); *Lederman v. N.Y.C. Dep't of Parks & Recreation*, 731 F.3d 199, 203–04 (2d Cir. 2013); *Simplex Time Recorder Co. v. Sec'y of Labor*, 766 F.2d 575, 586–87 (D.C. Cir. 1985). His imminent deposition is anticipated to remove him from important duties that are on his schedule that week. The week of January 9-13, 2023 is the Quarterly Executive Off-Site for all 3 and 4 star General Officers across the Marine Corps Operational Forces. The planned deposition thus removes him from a Service-strategic level meeting, and may stifle efforts to communicate and plan current and future operations and plans for the operational force currently focused on Europe and Africa. Disturbing Lt. Gen Ottignon's duties as the Commanding General of this large force should not be required at this time given the ongoing policy process.

In the previous motion, Defendants had identified Colonel Richard Wilson, the Branch Head of a division of the Marine Corps that is responsible for coordinating the development and execution of plans and policies related to the structure, deployment,

11

and employment of Marine Corps forces in general, as the likely 30(b)(6) witness for a revised Topic 1. Defendants now anticipate that Col. Wilson may be replaced as the 30(b)(6) witness on this topic by Col. Mark Reid, who is currently serving as Director of the Ground Combat Element Division of Capabilities Development Directorate within Combat Development and Integration. Although Col. Reid can be prepared to testify on this topic during the first two weeks of January, preparation and deposition will take Col Reid away from preparation time for a brief to the Deputy Commandant of Combat Development and Integration, and would require missing a meeting with foreign officers on the Marine Corp's recent reorganization of our infantry battalions and planned way ahead. Not having his leadership and expertise in these strategic level engagements undermines the Marine Corps' goal of staying ahead of near-peer competitors in the warfighting domains of land and sea. Regardless of the particular deponent identified, if depositions go forward, Defendants will prepare someone to address the past Marine Corps policy and guidance implementing the DoD vaccination directive, but that individual will not be able to testify as to ongoing deliberations (which are likely privileged in any event).

  Finally, Dr. Barbara Mahon is a Senior Advisor in the Office of the Director for the CDC's National Center for Immunization and Respiratory Diseases and the Acting Director of the proposed Coronavirus and Other Respiratory Viruses Division. These responsibilities require extensive resources and time commitment. Dr. Mahon serves as the CDC lead on child respiratory illnesses this winter season, requiring frequent engagement with CDC leadership; the White House; state, local, territorial,

and Tribal public health departments; and other public health partners. In addition to advancing the CDC's mission, Dr. Mahon is routinely called upon by the White House and public health leadership for advice and opinions on COVID-19, including vaccination. On the days preparation and the deposition are scheduled, she is being pulled away from other duties, including: HHS, interagency and White House calls regarding the respiratory virus situation; meetings regarding the prevention of RSV; interviewing key leadership candidates for her division; and an NCIRD senior leaders strategy meeting. Under the present circumstances, requiring Dr. Mahon to continue to devote her resources to prepare for potentially unnecessary deposition and trial imposes a needless burden on those who rely on her unique experience and expertise.

The time and resource demands of depositions of these senior officials may be wholly unnecessary, and if those demands are ultimately necessary, any deposition should occur, if at all, only after the Secretary implements the NDAA.

### III.  A Brief Stay Would Benefit, Not Unduly Prejudice Plaintiffs.

The Court must balance the benefits to the parties and for judicial economy against any undue prejudice that a stay may impose upon Plaintiffs. Plaintiffs will not be prejudiced by a short stay of proceedings because the Court has already granted their request for a class-wide preliminary injunction. The proposed stay will not affect the preliminary injunction at all. Rather, it would merely stay further litigation in the district court pending the implementation of new legislation that moots significant aspects of this case. *See Whitman-Walker Clinic, Inc. v. U.S. Dep't of Health and Human Servs.*, 2021 WL 4033072, at *2 (D.D.C. Sept. 3, 2021) (finding no hardship from stay

13

pending rulemaking insofar as "decisions of this Court . . . have already provided preliminary (and continuing) relief"); *Washington v. Trump*, 2017 WL 1050354, at *5 (W.D. Wash. Mar. 17, 2017) (finding that any prejudice to plaintiffs from stay would be "minimal" in light of the preliminary injunctive relief already in effect); *Hawaii v. Trump*, 233 F. Supp. 3d 850, 855 (D. Haw. 2017) (same); *Boardman v. Pac. Seafood Grp.*, 2015 WL 13744253, at *2 (D. Or. Aug. 6, 2015) (granting stay of proceedings while defendants pursued appeal of preliminary injunction, and finding stay would not harm plaintiffs because of the injunction in place).

Plaintiffs cannot demonstrate sufficient prejudice to justify proceeding with this case given the passage of Section 525. Plaintiffs assert that some part of their claims might survive, but until the military has an opportunity to implement Section 525, Plaintiffs have no basis for any such speculation. And Plaintiffs cannot explain how a limited stay would prejudice them while Court decides what aspects of the Plaintiffs' claims (if any) remain. Even if Plaintiffs are right that some aspect of their claims will continue, a stay would ensure that any deposition and trial would be focused squarely on those issues rather than matters rendered moot by the implementation of Section 525. If anything, requiring Plaintiffs and military deponents to guess about the possible scope of their claims before the Secretary implements Section 525 may prejudice Plaintiffs' ability to obtain information from deponents relevant to any aspect of the case that might, hypothetically, remain. Plaintiffs have previously suggested that a supplemental round of depositions could cure this issue. But there is no basis for two rounds of deposition testimony of the same high-ranking witnesses in

this matter. Defendants anticipate that high-ranking military and public health officers could only be made available once for deposition in this case. It is undeniably appropriate that such depositions occur only when the Court and the parties know what policy is being implemented and challenged.

## CONCLUSION

For the foregoing reasons, the Court should vacate all pending deadlines—including those related to discovery and the January 2023 trial—and stay proceedings in this matter for a period of forty-five days, through and including February 6, 2023. Defendants propose that the parties file a joint proposed schedule for further proceedings on or before that date.

## LOCAL RULE 3.01(g) CERTIFICATION

On December 21, 2022, counsel for Defendants conferred via email with Plaintiffs' counsel, who represented that they oppose the relief sought in this motion. Plaintiffs' counsel also requested that the Court be notified "that there are no depositions scheduled before January 3, and that Plaintiffs intend to file a written response by December 29."

Dated: December 21, 2022                         Respectfully submitted,

BRIAN M. BOYNTON                                 /s/ Amy E. Powell
Principal Deputy Assistant Attorney              ANDREW E. CARMICHAEL
General                                          AMY E. POWELL
                                                 Senior Trial Counsel
ALEXANDER K. HAAS                                MICHAEL P. CLENDENEN
Director, Federal Programs Branch                LIAM C. HOLLAND
                                                 CATHERINE M. YANG
ANTHONY J. COPPOLINO                             Trial Attorneys

15

| | |
|---|---|
| Deputy Director | United States Department of Justice |
| | Civil Division, Federal Programs Branch |
| | 1100 L Street, N.W. |
| | Washington, DC 20005 |
| | Tel: (919) 856-4013 |
| | Email: amy.powell@usdoj.gov |
| | *Counsel for Defendants* |