UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

| | | |
|---|---|---|
| COLONEL FINANCIAL MANAGEMENT OFFICER, United States Marine Corps, *et al.*, for themselves and all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 8:22-cv-01275 SDM-TGW |
| v. | ) ) | |
| LLOYD AUSTIN, in his official capacity as Secretary of the United States Department of Defense, *et al.*, | ) ) ) ) | |
| Defendants. | ) ) | |

**PLAINTIFFS' RESPONSE IN OPPOSITITION TO
DEFENDANTS' TIME-SENSITIVE MOTION TO STAY PROCEEDINGS**

Plaintiffs, pursuant to Local Rule 3.01(b) and the Court's Order of December 22 (Doc. 257), respond in opposition to Defendants' Time-Sensitive Motion to Stay Proceedings (Doc. 256). As shown below, Defendants' stay motion does not provide sufficient justification to avoid the trial date that the Court ordered and Defendants agreed, through mediation, to keep in place.[1]

**1. No changed circumstances justify Defendants' abandoning their mediated agreement to keep the Court's trial date in place.** Two weeks before filing the pending "time-sensitive" stay motion (Doc. 256) on the grounds that the President

---

[1] Given the relatively short response period, which included Christmas, and the Court's scheduling of a hearing on Defendants' stay motion for December 30 (Doc. 259), this written response is somewhat abbreviated.

intended to sign the NDAA,[2] which includes a provision requiring Defendant Secretary Austin to rescind the military vaccine mandate (Doc. 256 at 1–2), Defendants filed an "emergency" stay motion (Doc. 252) on the grounds that Congress had released an agreed draft of the NDAA containing the rescission provision (Doc. 252 at 1). The parties mediated Defendants' first stay motion before Magistrate Judge Porcelli, resulting in an agreement to move several depositions to the first two weeks of January but keep the current trial date of January 23 in place. (Order, Doc. 254, at 1-2.) Although Congress passed the NDAA after the parties' agreement, and the President signed the NDAA on December 23,[3] the probable passage of the NDAA by Congress and signing by the President by the end of the year were expressly contemplated by the parties when they agreed to keep the trial date in place. Thus, there has been no change of circumstances justifying Defendants' abandoning the parties' mediated agreement so soon.

**2. Mootness is speculative and dependent on remedial commitments Defendants have not made.** Just as Congress's consideration of a directive to Defendant Secretary to rescind the vaccine mandate did not, in and of itself, moot any issue in the case, the President's signing of the enacted legislation did not, in and of itself, moot any issue in the case. Only the actual rescission by Defendant Secretary

---

[2] The James M. Inhofe National Defense Authorization Act for Fiscal Year 2023.
[3] Jim Garamone, *Biden Signs National Defense Authorization Act Into Law*, DOD News (Dec. 23, 2022), https://www.defense.gov/News/News-Stories/Article/Article/3252968/biden-signs-national-defense-authorization-act-into-law/.

2

and implementing policy by Defendant Commandant can potentially moot any issue in the case, and even then, mootness is not certain. More importantly, Defendants—the military officials seeking postponement of the trial—are the very military officials responsible for rescinding the vaccine mandate and implementing the rescission for the Marine Corps. In other words, they do not have to wait for another Executive Branch department or military branch to implement the NDAA, and they fail to explain why they cannot effect the new policy sooner than the 30-day NDAA deadline and sufficiently before trial to show the Court how the policy *actually* moots any issue to be tried.[4] Given Defendants' constant "readiness" refrain, it is implausible that the Marine Corps has no plan to effect a policy change it has expected since early December.

Although this case was precipitated by the military vaccine mandate, Plaintiffs' First Amendment and RFRA claims are not directed at the vaccine mandate itself so much as the Marine Corps' religious accommodation policy as applied to the vaccine mandate.[5] The upcoming trial, and Plaintiffs' completed and planned discovery to

---

[4] Defendants' ostensibly magnanimous argument, that "requiring Plaintiffs and military deponents to guess about the possible scope of their claims before the Secretary implements Section 525 may prejudice Plaintiffs' ability to obtain information from deponents relevant to any aspect of the case that might, hypothetically, remain," is entirely disconnected from this reality.

[5] *Cf.* Doc. 229 at 5–6, 18 (discussing applicability of Marine Corps Order (MCO) 1730.9, *Accommodation of Religious Practices in the Marine Corps*); Doc. 255 at 9–13 (explaining Plaintiffs' need for a Marine Corps Rule 30(b)(6) witness on the issuance of MCO 1730.9 one month before Defendant Secretary's memorandum announcing the vaccine mandate.)

date, are focused on the Marine Corps's inability to justify the religious accommodation policy it has already implemented and already applied to Plaintiffs (i.e., across-the-board denials), and the resulting adverse actions against Plaintiffs (i.e., discipline, threats of discipline, and administrative obstructions for resisting orders to vaccinate). To be sure, "[t]he specific issue that unifies the class[—]the organized, purposeful, and systemic failure to resolve the requests for a religious accommodation in accord with the burden imposed by RFRA"—will not be resolved by rescission of the vaccine mandate. (Doc. 229 at 23.) True, the Court's contemplated *ultimate* classwide relief, "an order re-committing the Marines' applications *en masse* to the Marine Corps for a determination in accord with the 'to the person' requirement and other requirements of RFRA" (Doc. 229 at 46), might no longer apply. But that contemplated ultimate relief included, by necessary implication, abrogating all adverse disciplinary and administrative actions against Plaintiffs resulting from the flawed and invalidated accommodation process, and Defendants have not shown the Court that Plaintiffs will not need this necessarily included relief on a classwide basis.

The NDAA says nothing about rescinding the Marine Corps's religious accommodation policy, and Defendants have given the Court no indication that they intend to change the religious accommodation policy or how they apply the policy in the future. Moreover, Defendants have given the Court no indication that they intend to rescind all discipline and threats of discipline against Plaintiffs, and otherwise restore Plaintiffs in all respects to their good military standing preceding their religious

accommodation requests. Furthermore, the NDAA does not preclude issuance of a new COVID vaccine mandate at any point in the near or distant future, and Defendants have not disavowed taking such action.[6] Thus, Defendants fall far short of demonstrating their "voluntary" rescission of the vaccine mandate will in any way moot Plaintiffs' First Amendment and RFRA challenges to the Marine Corps's religious accommodation policy.[7] If Defendants intend to do more to moot Plaintiffs' claims, they should say so.

**3. Rescission of the vaccine mandate will not require Plaintiffs to file an amended complaint.** Contrary to Defendants' argument (Doc. 256 at 9), rescission of the vaccine mandate will not require Plaintiffs to amend their complaint. As shown above, even if rescission of the mandate obviates the need to remand all Plaintiffs' religious accommodation requests for proper consideration under RFRA, the rescission will not, without much more, obviate the need for classwide relief from all the adverse consequences of the mandate suffered by Plaintiffs to date. Evidence of

---

[6] To the contrary, Defendant Secretary stands by the mandate. *See* Garamone, *supra* note 3 ("[Secretary] Austin argued that the mandate is necessary to protect military readiness, and he has been clear in his support for maintaining it. Still, Congress has spoken and the department will fully comply with the NDAA, officials said.").

[7] To prove mootness resulting from the mere rescission of the vaccine mandate, Defendants would have to overcome the high burden imposed by the voluntary cessation doctrine. *See, e.g.*, *Harrell v. The Fla. Bar*, 608 F.3d 1241, 1265 (11th Cir. 2010) ("That burden will have been borne only if: (1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." (cleaned up)).

any new policy can be presented at trial, and the pleadings subsequently amended to conform to that evidence either by the parties' consent or at the Court's broad discretion. *See* Fed. R. Civ. P. 15(b); *Borden, Inc. v. Florida E. Coast Ry. Co.*, 772 F.2d 750, 757–58 (11th Cir. 1985) ("There is a strong policy embodied in the Federal Rules of Civil Procedure, and Rule 15 particularly, favoring the liberality of amendment."). And, *if* any party's evidence of a new policy requires giving another party additional time to meet that evidence, the Court may order a continuance for that purpose. Fed. R. Civ. P. 15(b)(1). Thus, Rule 15 and the Court's inherent authority to control its proceedings already provide sufficient tools to deal with the eventual rescission of the vaccine mandate and any implementing policy change by the Marine Corps. Defendants have not shown the additional need for a stay now.

4. **A stay benefits only Defendants, at Plaintiffs' expense.** A stay benefits Defendants by delaying accountability for what Defendants have already done, on the thinnest of promises that some aspect of the trial may not be necessary. Conversely, "a stay will unduly prejudice [and] tactically disadvantage" Plaintiffs. *See Garmendiz v. Capio Partners, LLC*, No. 8:17-cv-00987-EAK-AAS, 2017 WL 3208621, at *2 (M.D. Fla. July 26, 2017) (cited by Defendants, Doc. 256 at 6). Plaintiffs have diligently pursued their claims since October 2021. (Doc. 1.) Plaintiffs have diligently pursued discovery on an expedited schedule (as recently amended) and are prepared to finish on time. (*See* Doc. 254; Doc. 255 at 2–7.) As shown above, Plaintiffs' discovery and trial presentation are focused on what Defendants have already done to Plaintiffs, and

do not much depend on what Defendants will do with their vaccine mandate. This Court's preliminary injunction, and recent favorable appellate decisions from other courts,[8] give Plaintiffs optimism in the likelihood of their success at trial based on the evidentiary record to date. Defendants want to stop everything—not to avoid prejudice, but for their convenience—so they can take their time in rescinding the vaccine mandate and formulating an implementing policy without having to submit to the completion of Plaintiffs' discovery[9] and the finality of this Court's judgment. But it is not inequitable to require Defendants to meet all their obligations—their trial obligations under this Court's orders and their mediated agreement with Plaintiffs, and their NDAA obligations to rescind the vaccine mandate. Just because the NDAA gives Defendant Secretary 30 days to rescind the vaccine mandate does not excuse Defendant Secretary from doing it sooner if necessary to meet his judicial obligations. If knowing the details of the rescission and implementing policy prior to the trial of this action is necessary, Defendants should have to provide those details before the current trial date.

---

[8] *See Singh v. Berger*, No. 22-5234, 2022 WL 17878825 (D.C. Cir. Dec. 23, 2022); *Doster v. Kendall*, 54 F.4th 398 (6th Cir. 2022).

[9] For example, Plaintiffs' remaining depositions include one of Defendants' most important witnesses on application of the RFRA compelling interest standard to individual Marines' religious accommodation requests. (*See* Doc. 255 at 8–15; *cf.* Doc. 256 at 10 ("Here, the imminently scheduled depositions in this case include high-ranking military officials [including] Lieutenant General David A. Ottignon . . . .").)

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' stay motion.

/s/ Roger K. Gannam
Mathew D. Staver
Horatio G. Mihet
Roger K. Gannam
Daniel J. Schmid*
Richard L. Mast*
LIBERTY COUNSEL
P.O. Box 540774
Orlando, FL 32854
(407) 875-1776
court@LC.org
hmihet@lc.org
rgannam@lc.org
dschmid@lc.org
rmast@lc.org
*Admitted specially

*Attorneys for Plaintiffs*