IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| **COLONEL FINANCIAL MANAGEMENT OFFICER,** *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> **LLOYD AUSTIN,** in his official capacity as Secretary of the United States Department of Defense, *et al.*, <br><br> Defendants. | Case No. 8:22-cv-1275 (SDM/TGW) |

**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR A PROTECTIVE ORDER**

In accordance with the Order dated January 4, 2023, Defendants submit this supplemental memorandum in support of their Motion for a Protective Order, ECF No. 250, to address two topics: the National Defense Authorization Act, and prior deposition testimony.

1. **The NDAA**

On December 23, 2022, the President signed into law the James M. Inhofe National Defense Authorization Act for Fiscal Year 2023 ("NDAA"). *See* Pub. L. No. 117-263, § 525 (Dec. 23, 2022), 136 Stat 2395. Section 525 of the NDAA directs the Secretary, within 30 days, to rescind the memorandum requiring vaccination of service members for COVID-19. That rescission is forthcoming soon and is expected to be followed by further implementation guidance. The statutorily mandated rescission fundamentally changes the nature of this case and alters the need for further testimony on the Rule 30(b)(6) topics because most or all of the issues are moot. *See Rich v. Sec., Fla. Dep't of Corrections*, 716 F.3d 525, 531 (11th Cir. 2013) (in considering mootness, "we bear in mind that government actors carry a lesser burden than others when they

have unambiguously terminated the challenged policy."); *see, e.g.*, *Log Cabin Republicans v. United States*, 658 F.3d 1162, 1166–68 (9th Cir. 2011) (vacating judgment after legislative action repealed the challenged military policy); *cf. Doe v. Shanahan*, 755 F. App'x 19 (D.C. Cir. 2019) (dissolving injunction in light of changed military policy). While it is unlikely that any of this case remains, the topics identified by Plaintiffs are particularly unlikely to remain at issue; preparation of a Rule 30(b)(6) designee or designees on these topics is therefore disproportionate to the needs of the case.

Topics 1(a) and 5. Topic 1 encompasses the Order governing accommodation of religious practices in the Marine Corps, and Topic 5 encompasses the procedures for requesting accommodation. Those processes are no longer applicable to the requirement to be vaccinated for COVID-19 challenged in this case, and this litigation does not encompass future or different requirements from which accommodation could be requested. Accommodations are frequently granted from other requirements of the Marine Corps, including uniform and grooming standards. Plaintiffs have already had the opportunity to depose the person primarily charged with helping implement the Religious Accommodation Request policy with respect to the former COVID-19 vaccination requirement, Colonel Jeppe.[1]

Topic 2. This topic generally encompasses impacts of COVID-19 on the Marine Corps, a tremendously broad topic. Any future discovery about the impacts of COVID-19 ought to be narrowly focused on any issues remaining after rescission, if any, but not all "operational or deployment events [that] were cancelled" and the "additional operational or deployment events were delayed, shortened or postponed"

---

[1] The remainder of Topic 1, on which Defendants originally offered a witness, addresses other policies and procedures implementing the now-defunct requirement to be vaccinated for COVID-19. The remainder of this topic is therefore now also irrelevant to any issues that could conceivably remain in this case. The parties have nonetheless negotiated a deposition date of January 27, 2023.

as a result of COVID-19.² Preparing a witness to testify about all events that were cancelled or postponed in the first three years of the pandemic is disproportionate to the needs of the case in any event, but certainly under the present circumstances.

<u>Topics 3, 4, 6, and 7</u>. These topics, as drafted, cover the Marine Corps' compelling interests supporting the COVID-19 vaccination requirement and the unavailability of less restrictive means, both in general and as analyzed during the accommodation process and appeals process. Defendants do not need to address an ongoing interest in the vaccination requirement for all Marines in light of the rescission. Moreover, the process for implementing the prior requirement itself is plainly moot and cannot be revisited now that there is no requirement from which Plaintiffs are seeking accommodation.³

<u>Topics 9 and 10</u>. Plaintiffs insist these topics are relevant because "recruitment and retention" were, in Plaintiffs' view, negatively affected by the vaccination requirement. Even if that were true, they cannot be so negatively affected in the future by the now-defunct requirement, and whatever relevance Plaintiffs' claim to these topics, it no longer exists. If Plaintiffs contend that these topics are still relevant because they do not know whether the military will remove discipline from the records of those servicemembers who refused to be vaccinated, this is all the more reason to defer this deposition until after the rescission is issued.

---

² Plaintiffs' formulation that the impacts be those affected as a result of "actual" COVID-19 cases "instead of" mitigation measures makes no sense. Mitigation measures were implemented because COVID-19 cases and data made clear the need to protect the force, and such mitigation measures often included cancellation and curtailment of operations and events.

³ It was noted at the hearing that the rescission left open the possibility of future COVID-19 vaccination requirements. If new or different COVID-19 vaccination requirements are imposed in the future, those would subject to review as to any new accommodation requests resolved by future decisionmakers. Hypothetical denials of accommodation from future requests for accommodation from a new or different requirement would be supported by a new analysis of compelling interests and less restrictive means, and, in any event, Plaintiffs lack standing to challenge some future action that is not before the Court.

### 2. Deposition Testimony

Plaintiffs' memorandum in opposition cites but fails to attach transcripts of deposition testimony. *See* ECF No. 255. Plaintiffs' characterizations of that testimony are misleading, as reflected in the attached excerpts. Exs. A–B.

<u>Col. Jeppe.</u> Plaintiffs claim that they asked Colonel Jeppe about MCO 1730.9 and that he "had wholly insufficient knowledge of the order to justify preclusion of a subsequent Rule 30(b)(6) deposition." Pls.' Opp'n at 10–11. About a month after the issuance of MCO 1730.9, Colonel Jeppe assumed his role as Head of the Manpower Military Policy Branch within the Manpower Plans and Policy Division at Manpower and Reserve Affairs, Headquarters U.S. Marine Corps. *See* Ex. A, Tr. 70:7–9. Colonel Jeppe was thus the person primarily responsible for *implementing* the administrative procedures of MCO 1730.9 with respect to the COVID-19 vaccination requirement, and Plaintiffs asked essentially no questions about that implementation. A Rule 30(b)(6) designee does not need to have personal knowledge about every aspect of a topic on which he or she is to be questioned, and thus could have answered questions about the *issuance* of MCO 1730.9, about which Plaintiffs again asked essentially no questions. *See id.* And, in any event, it is not apparent why the issuance—as opposed to the implementation—of MCO 1730.9 is relevant to this case either before or after the recission of the policy challenged in this case. Plaintiffs had more than adequate opportunity to depose a witness on this subject.

<u>Col. Rans</u>. Plaintiffs characterize Colonel Rans as having "disclaimed expertise in military readiness." Pls.' Opp'n at 14. But Colonel Rans confirmed that she is an expert in the immunization component of military readiness. *See* Ex. B, Tr. 39:16–40:17 (initial questioning regarding Colonel Rans's claimed expertise); *id.* at 181:2–20

(alleged disclaiming of expertise in military readiness); *id.* at 187:21–188:17 (redirect confirming Colonel Rans's expertise in the immunization component of military readiness).[4] Plaintiffs conclude that Colonel Rans "could not deliver on Defendants' disclosure of her supposed knowledge on 'COVID's impacts on the military' or 'COVID-19['s] threat to military efficiency, especially in operational settings." Pls.' Opp'n at 15. Plaintiffs cannot point to a single instance in which they asked Colonel Rans a question on these subjects that she could not satisfactorily answer, and to the extent Plaintiffs asked about these subjects at all, Colonel Rans provided satisfactory answers. *See, e.g.*, Ex. B, Tr. 145:13–146:7, 151:19–153:16, 165:3–168:4, 175:23–180:23; *see also* ECF No. 250-4 (Rans expert disclosures).

RADM Gillingham. Plaintiffs also claim that Rear Admiral Gillingham could not "testify meaningfully on the topic" of military readiness and COVID-19's impact on military operations. Pls.' Opp'n at 15. Rear Admiral Gillingham is an expert in Force Health Protection. *See* ECF No. 250-6 (Gillingham expert disclosures). He answered Plaintiffs' questions on this topic satisfactorily, *see, e.g.*, Ex. C, Tr. 36:20–37:6 (describing an incident in which a ship was forced to "c[o]me off of its mission"); *id.* 40:17-41:16 (describing expertise); *id.* 77:11-95:10 (discussing data on risks to unvaccinated service members), and to the extent he did not provide any answer, it is again because Plaintiffs did not ask.

---

[4] Plaintiffs also claim that Colonel Rans's inability to "quantify readiness in terms of 'likelihood of any particular Marine missing a day of work due to illness'" undermines her claimed expertise in medical readiness. Pls.' Opp'n at 14. Colonel Rans testified that the presence of an unvaccinated Marine in a unit poses a risk of impeding the readiness of that unit. *See* Ex. B, Tr. 183:4–8; *see also id.* 175:23–176:22 (discussing importance of medical readiness); 143:22-149:11 (discussing information that vaccination decreases risks). The fact that Colonel Rans could not "quantify . . . that risk" with some unspecified unit of measurement, *id.* at 183:9–184:4, does not undermine her expertise.

Dated: January 6, 2023

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

ANTHONY J. COPPOLINO
Deputy Director

Respectfully submitted,

*/s/ Michael P. Clendenen*
ANDREW E. CARMICHAEL
AMY E. POWELL
Senior Trial Counsel
MICHAEL P. CLENDENEN
LIAM HOLLAND
CATHERINE M. YANG
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel: (202) 305-0693
Email: michael.p.clendenen@usdoj.gov
*Counsel for Defendants*