## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

<table>
<tr><td>

**COLONEL FINANCIAL MANAGEMENT OFFICER,** *et al.*,

           Plaintiffs,

  v.

**LLOYD AUSTIN,** in his official capacity as Secretary of the United States Department of Defense, *et al.*,

           Defendants.

</td><td>

Case No. 8:22-cv-1275 (SDM/TGW)

</td></tr>
</table>

## DEFENDANTS' MOTION IN LIMINE TO EXCLUDE THE OPINIONS OF PLAINTIFFS' EXPERT WITNESSES

### INTRODUCTION

Federal Rule of Evidence 702 was designed to prevent the introduction into evidence of junk science and otherwise unreliable opinions. Plaintiffs in this case seek to disregard Rule 702 and proffer testimony from two anti-vaccine advocates whose opinions have been widely rejected by the scientific community, the courts, their former employers, and their own licensing boards. This Court should be the latest to join this growing chorus rejecting these opinions and exclude them as unreliable and inadmissible.

Plaintiffs have identified two individuals—Drs. Peter McCullough and Ryan Cole—to offer expert testimony that the COVID-19 vaccines are neither safe nor effective. Despite the overwhelming evidence that the COVID-19 vaccines are safe and have prevented hundreds of thousands of deaths, Drs. McCullough and Cole maintain that the vaccines are not effective and can result in adverse health effects.

They accordingly opine that the risks of vaccination outweigh the benefits.  To reach these conclusions, which fall well outside their areas of expertise and have not been peer reviewed, they cherry pick (and in many circumstances misinterpret) non-peer reviewed papers and case studies that identify potential rare side effects from the COVID-19 vaccine and offer nothing but *ipse dixit* in extrapolating their opinions from these papers and studies.  A number of the studies relied upon expressly contradict their opinions and state that the benefits of vaccination greatly outweigh any potential risks.  And researchers who Drs. McCullough and Cole have relied upon for their opinions have stated that the doctors have misinterpreted their studies.

It is precisely for these reasons that courts confronted with these same opinions from Dr. McCullough in other challenges to the Department of Defense's vaccine mandate have uniformly rejected them as unreliable under Federal Rule 702.  And it is also the reason why both Drs. McCullough and Cole are facing the removal of their licenses and professional discipline for advancing these medically unsupported positions, which can cause harm to those they treat.

Drs. McCullough and Cole are obviously free to advocate whatever views they may have in the town square.  But their widely rejected and unreliable opinions fail to meet the demanding standards necessary for admission under Rule 702.  Although in some circumstances the soundness of expert testimony can best be addressed through cross-examination or contrary expert testimony, this is not the case here.  Nor is this a case where the challenges to expert testimony go to weight instead of admissibility.  Rather, the defects in Drs. McCullough and Cole's opinions fall squarely within the

heartland of the concerns Rule 702 was designed to address, and exclusion is therefore warranted.

In addition, even if this testimony were admissible, the Court should still exclude Dr. McCullough's opinions pursuant to Federal Rule of Civil Procedure 37 for failing to produce a report containing the information required by Rule 26(a)(2). As Dr. McCullough acknowledged in his deposition, he has failed to identify in his report all of the facts and data he is relying upon for his opinions and has failed to identify his previous expert depositions and trial testimony as required by Rule 26(a)(2)(B). This failure is not substantially justified and permitting Dr. McCullough to testify to the bases for his opinions and his previous testimony for the first time at deposition—and perhaps trial—greatly prejudices Defendants' ability to properly prepare their examination of Dr. McCullough.

## **BACKGROUND**

In support of their challenge to the U.S. Marine Corps' vaccine requirement, Plaintiffs seek to present the opinions of two witnesses to testify concerning the purported lack of safety or efficacy of the COVID-19 vaccines. This includes:

1. **Dr. Peter McCullough:**   Dr. McCullough, an internal medicine and cardiovascular disease doctor, seeks to offer three related opinions in this matter. First, he opines that "the COVID-19 vaccine(s) are neither safe nor generally effective in preventing infection or transmission of COVID-19 and its variants." *See* Ex. 1 ¶¶ 2-3 (Decl. of Dr. McCullough). Second, he opines that "the vaccine could cause significant harm and even death of the Plaintiffs." *Id.* ¶ 2. Finally, Dr. McCullough

opines that "the data upon which the Defendants have based the mandate upon is flawed and/or inaccurate; and imposing this vaccine is not only dangerous and could cause harm to the Plaintiffs, but to the public-at-large who depend on service members to defend our freedom." *Id.*

2. **Dr. Ryan Cole:** Dr. Cole, who is not an epidemiologist but rather an anatomic and clinical pathologist, similarly opines that "a 'vaccine' against coronavirus cannot, and never will be, protective nor safe." Ex. 2 ¶¶ 1, 3 (Decl. of Dr. Cole). In Dr. Cole's opinion, the COVID-19 vaccine will cause the vaccine recipients' "body to form an antibody that may briefly seem effective, however, the antibodies formed eventually become an enemy to the human body and already have, may, and in likelihood will continue to prime the body for a worse, potentially deadly reaction to future coronaviruses." *Id.* ¶ 3. Dr. Cole further opines that the "young, healthy, military population is at infinitesimally small risk for severe disease, hospitalization, and death from SARS-CoV-2," and that "[t]his experimental injection is a far higher risk to these robust, healthy individuals compared to the virus." *Id.* ¶ 4. Finally, Dr. Cole opines that "[f]rom a scriptural point of view, all major religions[ ] contain admonitions to not harm others, and not harm self," and that "[m]andating these ineffective and harmful so-called vaccines is the antithesis of doing good to all people." *Id.* ¶¶ 5-6.

# ARGUMENT

## I. THE OPINIONS OF DRS. MCCULLOUGH AND COLE ARE INADMISSIBLE UNDER FRE 702

### A. Legal Standard

To be admissible, expert opinions must satisfy the requirements of FRE 702. As the Eleventh Circuit has explained, expert testimony is admissible if: "(1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *City of Tuscaloosa v. Harcos Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998) (footnote omitted).   The Supreme Court has listed four non-exclusive factors courts should consider in determining whether expert opinions are reliable: (1) whether the theory or technique can be tested; (2) whether it has been subjected to peer review; (3) whether the technique has a high known or potential rate of error; and (4) whether the theory has gained general acceptance within the scientific community.  *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 593-94 (1993).  A "basic foundation" of admissibility is that the proposed expert's testimony receives support form an "an appropriate validation, *i.e.*, 'good grounds,' based on what is known." *United States v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004) (quoting *Daubert*, 509 U.S. at 590).

FRE 702 assigns to the trial court the "task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597; *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1335 (11th Cir. 2010) (recognizing that trial court must act as a "gatekeeper" to ensure that speculative, unreliable testimony is not admitted into evidence). Even after *Daubert*, the trial court's gatekeeping responsibility bars a "let it all in" approach, and the trial court must resist "the temptation to answer objections to receipt of expert testimony with the shorthand remark that the jury will give it 'the weight it deserves.'" *Joy v. Bell Helicopter Textron, Inc.*, 999 F.2d 549, 569 (D.C. Cir. 1993) (citations omitted). Plaintiffs bear the burden to demonstrate, by a preponderance of the evidence, that "the witness is qualified to testify competently, that his opinions are based on [a] sound method[ ], and that his testimony will be helpful to trier of fact." *Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty.*, 402 F.3d 1092, 1107 (11th Cir. 2005).

### B. The Opinions of Drs. McCullough and Cole are unreliable.

The opinions of Drs. McCullough and Cole lack any of the indicia of reliability required by FRE 702. As discussed below, their opinions that the risks associated with vaccination outweigh the benefits are not widely accepted in the scientific community, lack any peer review, and have been repeatedly rejected by courts as unreliable. The bases for their opinions are grounded largely in a reliance on non-peer reviewed studies, case studies that reach no firm conclusions about vaccine safety, and improper extrapolation of study results. In addition, they greatly exaggerate the potential harms associated with vaccines described in the studies they have identified and cherry-pick

6

certain findings, while completely ignoring other findings in these studies that directly contradict their opinions and state that vaccine safety outweighs any potential risks. While such conduct may be permissible for an advocate, it has no place for an expert opinion in the courtroom, and Plaintiffs cannot meet their burden of demonstrating that their experts offer reliable opinions. Exclusion is therefore appropriate.

### 1. The opinions lack widespread acceptance in the scientific community.

As the Supreme Court observed in *Daubert*, "[w]idespread acceptance can be an important factor in ruling particular evidence admissible, and 'a known technique which has been able to attract only minimal support within the community . . . may properly be viewed with skepticism." *Daubert*, 509 U.S. at 594 (citation omitted). Expert opinions outside the mainstream of current scientific thought are subject to exclusion. *Jones v. NL Indus.*, No. 4:03CV229-M-B, 2006 WL 5157750, at *3 (N.D. Miss. May 24, 2006).

Here, both Drs. McCullough and Cole's fringe opinions concerning the safety and efficacy of the COVID-19 vaccines and are not widely accepted in the scientific community and fall well outside the mainstream of scientific thought. Multiple courts have rejected as unreliable the precise opinions Dr. McCullough seeks to offer here because they fall outside the mainstream of scientific thought. *Navy SEAL 1 v. Austin*, --- F. Supp. 3d ----, 2022 WL 1294486, at *11 (D.D.C. Apr. 29, 2022) (noting that Dr. McCullough offered "an opinion outside the scientific mainstream[,]" and observing that one court has entered "a preliminary injunction against him for false statements

(there, for continuing to claim affiliation with Baylor University after having been fired for spreading medical, COVID-related misinformation"), *appeal filed*, No. 22-5114 (D.C. Cir. May 5, 2022); *Roth v. Austin*, --- F. Supp. 3d ---, 2022 WL 1568830, at *21 (D. Neb. May 18, 2022) (stating that "there are 'many, many, many' problems with the testimony of Dr. Peter A. McCullough, Plaintiffs' 'expert,' which caused the Court to wonder if Plaintiffs' argument would not be better if Dr. McCullough's testimony was not in the case," and observing that "Dr. McCullough is hardly a 'real expert' in the field"), *appeal filed* No. 22-2058 (8th Cir. May 20, 2022); *Harris v. Univ. of Mass., Lowell*, 21-cv-11244-DJC, 2021 WL 3848012, at *3 n.5 (D. Mass. Aug. 27, 2021), *dismissing appeal*, 43 F.4th 187 (1st Cir. 2022); *Klaassen v. Trs. of Ind. Univ.*, 549 F. Supp. 3d 836, 878-79, 887 (N.D. Ind. 2021) (concluding that "[a] close review of Dr. McCullough's testimony reveals a true failing," giving "Dr. McCullough's testimony little weight on this record," and not crediting his "viewpoint that herd immunity has already been achieved"), *vacated as moot and remanded with instructions*, 24 F.4th 638 (7th Cir. 2022); *see also United KP Freedom All. v. Kaiser Permanente*, No. 21-cv-07894-VC, 2021 WL 5370951, at *2 (N.D. Cal. Nov. 18, 2021) (in a case where the plaintiffs submitted a declaration by Dr. McCullough (ECF No. 27-8), finding that "[t]he plaintiffs have submitted declarations contesting the safety and efficacy of COVID-19 vaccines (as well as asserting that the vaccines are not 'vaccines' at all), but it appears unlikely that much of this testimony would stand up under Rule 702 of the Federal

Rules of Evidence").[1]

Dr. Cole's opinions concerning the safety and efficacy of the COVID-19 vaccines are similarly well outside the mainstream of the scientific community. He acknowledges that he is "the world's most maligned doctor," and that "hundreds of thousands" of people have filed complaints about him with the American Board of Pathology. Ex. 23 (Cole Tr. 42:4-8; 43:1-7). He admits that his opinions have led to widespread disagreement and criticism for spreading misinformation, including by professional associations, the FDA, the CDC, NIH, the American Medical Association, and the Federation of State Medical Boards. *Id.* (Cole Tr. 425:20-428:11). He also acknowledges that "I am not 'mainstream' per se," and claims that "I have a lot of colleagues that are ostriches." *Id.* (Cole Tr. 429:21-430:3). Indeed, Dr. Cole

---

[1] It is not just courts that have concluded that Dr. McCullough's opinions are outside the mainstream of scientific thought. His former employer, Baylor Scott & White Health, terminated its relationship with Dr. McCullough and subsequently obtained a temporary restraining order against him for affiliating himself with Baylor University while simultaneously spreading misinformation about COVID-19 and treatment—misinformation that includes the opinions he seeks to offer in this case. *See* Ex. 4 (Amanda D'Ambrosio, *Lawsuit: Doc Using Old Baylor Affiliation While Dishing COVID Vax Falsehoods*, MedPage Today (Aug. 6, 2021); Ex. 5 (TRO, Baylor, Scott & White Health v. McCollough, Cause No. DC-21-09699 (Dist. Ct. 191st Judicial Cir. July 29, 2021); Ex. 26 (McCullough Tr. 20:1-14) (stating belief that Baylor did not renew his contract because of his opinions concerning COVID and his treatment of COVID patients). Other indicia of the lack of widespread acceptance of Dr. McCullough's opinions include the fact that he has lost two editorships of major journals—the Reviews in Cardiovascular Medicine and Cardiorenal Medicine—been stripped of two professorships at Texas A&M School of Medicine and Texas Christina University School of Medicine, been stripped of the National Institute of Health's long-standing committee positions, and had the Cardio Renal Society of America dissolved due to his opinions concerning COVID. *Id.* (McCullough Tr. 96:25-98:2; Tr. 126:14-23; Tr. 127:16-23).

admits that he is "proudly" outside the groupthink of mainstream scientific thought when it comes to COVID-19 and vaccination. *Id.* (Cole Tr. 431:13-15).[2]

The lack of widespread acceptance of Drs. McCullough and Cole's opinions is further exemplified by the fact that both doctors are currently under investigation by their licensing boards based on the misinformation they have provided concerning the COVID-19 vaccine and related matters, and the harm such misinformation inflicts on patients. For example, the American Board of Internal Medicine is in the process of revoking Dr. McCullough's board certifications in internal medicine and cardiology based on his spreading of misinformation about COVID-19, including many of the same opinions he seeks to provide in this case. *See* Ex. 23 (Cole Tr. 44:12-45:2); Ex. 3 (Michael DePeau-Wilson, *Regulators Move Against Two 'Misinformation' Doctors,* MedPage Today (Nov. 1, 2022)); Ex. 24 (ABIM letter regarding Disciplinary Sanction); Ex 25 (McCullough declaration responding to ABIM providing same opinions as in this case); Ex. 26 (McCullough Tr. 63:4-22) (acknowledging board's concerns with his opinions concerning COVID).[3] Similarly, Dr. Cole is under investigation by the Washington Medical Commission for advocating against COVID-19 vaccines and claiming that masks are harmful because these statements endanger public health. *See* Ex. 23 (Cole Tr. 111:6-112:7); Ex. 6 (Audrey Dutton, *Idaho's Dr.*

---

[2] Tellingly, Dr. Cole does not believe there is such a thing as "scientific consensus," because consensus results in the "death of science in medicine." Ex. 23 (Cole Tr. 438:9-14).

[3] Most hospitals require board certification from the American Board of Internal Medicine to be on their active medical staff. Ex. 26 (McCullough Tr. 62:15-18). Yet further highlighting Dr. McCullough's lack of mainstream views, he believes that the American Board of Internal Medicine is "corrupted by the overall vaccine initiative by Pfizer and Moderna." *Id.* (McCullough Tr. 64:19-22).

*Ryan Cole defends his medical license, saying complaints are political attacks, Idaho Capital Sun* (July 29, 2022)).  The American Board of Pathology, an organization that certified Dr. Cole as a clinical and anatomic pathologist and ensures that doctors meet basic qualifications standards, has urged the Washington Medical Commission to consider disciplining him.  *See* Ex. 23 (Cole Tr. 40:15-41:6; 42:13-22); Ex. 7 (Audrey Dutton, *Idaho doctors, pathology board accuse Dr. Ryan Cole of endangering public health,* Idaho Capital Sun (Dec. 16, 2021)).  The American Board of Pathology noted that Dr. Cole has advised patients to take hydroxychloroquine and ivermectin without scientific data to support their use in the treatment of patients with COVID-19.  *Id.*  The Washington Medical Commission is also investigating Dr. Cole for his unsupported claims that COVID-19 vaccines cause cancer.  *See* Ex. 6.  The Idaho Medical Association similarly filed a complaint with the Idaho Board of Medicine asking for disciplinary action partly on the basis that Dr. Cole's pathology practice does not include direct patient care or the treatment of COVID-19.  *Id.*  Similarly, the College of American Pathology has revoked Dr. Cole's status as a fellow due to his unprofessional behavior, including his opinions on the COVID-19 vaccine.  Ex. 23 (Cole Tr. 47:2-13; Tr. 54:5-9).  The fact that these doctors' licensing bodies not only have expressed strong disagreement with their opinions about COVID-19, but also have or are considering disciplining them because these opinions actually harm public health, highlights the lack of general acceptance of their views.

As yet another example of their fringe, widely derided opinions, Dr. Cole claims that the administration of COVID-19 vaccines may result in autoimmune disease and

cancer.  *See* Ex. 2 ¶¶ 45-46.  Yet these claims have been fact checked by medical experts, including experts upon which Dr. Cole relies upon for his opinion, and determined to be false.  *See* Ex. 8 (Saranac Hale Spencer, *Idaho Doctor Makes Baseless Claims About Safety of COVID-19 Vaccines,* FactCheck.org (updated Feb. 10, 2022) (statement by Norbert Pardi, a research assistant professor of medicine at the University Pennsylvania, and the lead author of the paper Dr. Cole relied upon for his opinions about autoimmune disease and cancer, concluding that "[n]o publications demonstrate that mRNA vaccines cause cancer or autoimmune diseases.").  Similarly, Dr. Cole's opinion—and the bases for the opinion—that the COVID-19 vaccines result in dangerous spike proteins, Ex. 2 ¶¶ 10-22, 54, has been widely debunked by the authors of the studies he purports to rely upon.  *See* Ex. 9 (Audrey Dutton, *Dr. Ryan Cole's journey from Boise to Nashville to France. His new focus? Monkeypox.*, Idaho Capital Sun (Aug. 10, 2022) (quoting study author Uri Manor, addressing Dr. Cole's reliance upon his study, and stating that the small amount of spike protein in a person's cells produce from mRNA vaccines "would not be nearly enough to do any damage.").[4]

## 2. The opinions are based upon impermissible extrapolation.

In addition to the lack of general acceptance of these opinions, the opinions offered by Drs. McCullough and Cole are based on nothing more than impermissible *ispe dixit*.  For example, Dr. Cole relies upon a 2008 study of the survivors of the 1918

---

[4] Dr. McCullough makes a similar claim about the alleged harm caused by spike protein, *see* Ex. 1 ¶ 19, yet provides no support or authority in his declaration for this opinion.  This unadorned opinion should be excluded because it consists of nothing more than "subjective belief or unsupported speculation."  *Daubert*, 509 U.S. at 590.

H1NI Influenza pandemic to conclude that "[t]o deny without evidence that similar robustness happens with SARS-CoV-2 would be irresponsible[.]" Ex. 2 ¶ 23. But Dr. Cole provides no explanation for why the results of a study concerning the 1918 H1NI Influenza can appropriately be extrapolated to the COVID-19 virus,[5] and the Court should "conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (holding that trial court did not abuse discretion in excluding expert opinions that relied upon studies to reach conclusions without explaining how those studies supported the conclusions reached); *Allison*, 184 F.3d at 1313-14 (affirming exclusion of expert that failed to explain the correlation of the results of rat studies to symptoms in humans).

Similarly, Dr. Cole opines that the COVID-19 vaccines may cause "latent viral reactivation," *see* Ex. 2 ¶ 46, yet the study he relies upon expressly states that "causality has not yet been established[.]"   *See* Ex. 10, Konstantinos K. Triantafyllidis et al., Varicella Zoster Virus Reactivation Following COVID-19 Vaccination: A Systematic Review of Case Reports, Vaccines 2021, 9, 1013 (published Sept. 11, 2021). Dr. Cole also opines that the COVID-19 vaccine can result in CNS inflammation, *see* Ex. 2 ¶ 46, yet the study he relies upon explicitly states that "[o]ur report is anecdotal and does not prove a cause-and-effect relationship between SARS-CoV-2 mRNA vaccines and active CNS demyelinating disease."   *See* Ex. 11 at 1104, Mahsa Khayat-Khoel et al.,

---

[5] When asked about this study at his deposition, Dr. Cole acknowledged that the Spanish flu and COVID-19 "are very different viruses," and that he has no data comparing the two. Ex. 23 (Cole Tr. 338:4-339:19).

COVID-19 mRNA vaccination leading to CNS inflammation: a case series, J. Neurology, 269:1093–1106 (2022).   Dr. Cole fails to explain how he properly extrapolated his conclusion that the COVID-19 vaccine can result in latent viral reactivation and CNS inflammation from studies that expressly disclaimed finding such a causal link.  This improper extrapolation of data to conclusion is pervasive in Dr. Cole's declaration and renders his opinions unreliable.[6]

Dr. McCullough similarly improperly extrapolates data in reaching his opinions.  For example, he opines that "[i]ncreasingly the medical community is acknowledging the possible risks and side effects including myocarditis, Bell's Palsy, Pulmonary Embolus, Pulmonary Immunopathology, and severe allergic reaction causing anaphylactic shock," relying exclusively upon a single research study.  *See* Ex. 1 ¶ 33 & n.13.  Yet the 2012 study he relies upon involved the testing of an inactivated whole SARS coronavirus vaccine in ferrets and nonhuman primates, and a virus-like-particle vaccine in mice.  *See* Ex. 13, Chien-Te Taeng et al., Immunization with SARS

---

[6] Not only does Dr. Cole repeatedly improperly extrapolate data in reaching his opinions, but he also misinterprets the studies he relies upon.  For example, Dr. Cole states that a study examined data for myocarditis "and estimates that for males in the 12-29 year old age bracket, 6 COVID deaths per million second mRNA vaccine doses administered, while 39-47 new cases of myocarditis would be expected[.]" Ex.  2 ¶ 32.  But rather than the COVID-19 vaccine causing deaths, the article he relies upon states the exact opposite, and notes that "[p]er million second doses of mRNA COVID-19 vaccine administered to males aged 12-29 years, 11,000 COVID-19 cases, 560 hospitalizations, 138 ICU admissions, and six deaths due to COVID-19 <u>could be prevented</u>, compared with 39-47 expected myocarditis cases after COVID-19 vaccination."  Ex. 12 at 979, Julia W. Gargano et al., Centers for Disease Control & Prevention, Use of mRNA COVID-19 Vaccine After Reports of Myocarditis Among Vaccine Recipients: Update from the Advisory Committee on Immunization Practices — United States, June 2021, Morbidity and Mortality Weekly Report Vol. 70 No. 27, (July 9, 2021) (emphasis added).  This misinterpretation of the data, which directly contradicts his opinion that the COVID-19 vaccine is not safe or effective, greatly undermines the reliability of his opinions.

Coronavirus Vaccines Leads to Pulmonary Immunopathology on Challenge with the SARS Virus, PLoS ONE, Vol. 7, Issue 4 (Apr. 2012).  Like Dr. Cole, Dr. McCullough makes no attempt to explain why the results of a study involving a different vaccine on animals can properly be extrapolated to the COVID-19 vaccine on humans.  As such, Dr. McCullough's opinions are unreliable and should be excluded.  *See Joiner*, 522 U.S. at 144; *Allison*, 184 F.3d at 1313-14.[7]

The lack of reliability of Dr. Cole's opinions are further exemplified by the fact that much of his alleged support for his opinion that the COVID-19 vaccines are harmful are based on small case studies.  For example, Dr. Cole relies upon a case study involving a single 66-year-old man to support his conclusion that the COVID-19 vaccine can cause lymphoma.  *See* Ex. 2 ¶ 46 & n.88.  The case study he relies upon expressly notes that "[a]t this time, extrapolation of the findings of this case to other patients with . . . peripheral T cell lymphoma involving TFH cells is premature," and that "[d]edicated studies are needed to determine whether this case can be extrapolated to populations of patients with AITL or other peripheral T cell lymphoma involving TFH cells."   *See* Ex. 14, Serge Goldman et al., Rapid Progression of Angioimmunoblastic T Cell Lymphoma Following BNT162b2 mRNA Vaccine Booster Shot: A Case Report, Frontiers in Medicine, Vol. 8 (Nov. 25, 2021).  Despite

---

[7] Dr. McCullough also simply misreads the data he relies upon in his declaration.  For example, although Dr. McCullough states that "milder side effects from the vaccine include changes in hormone and menstrual cycles in women," *see* Ex. 1 ¶ 47, the article he relies upon for this opinion states that "[s]ome people may experience temporary changes in menstrual volume and menstrual cycle lengths due to COVID-19," not the vaccine, *see* Ex. 15, Can COVID-19 or the COVID-19 Vaccine Affect Your Period? (May 25, 2021) (medically review by Fernando Mariz & Jill Seladi-Schulman).

the clear limitations of this case study, Dr. Cole improperly has extrapolated the results of this one case to the entire population.

Dr. Cole also relies upon a case study involving one 55-year-old White male who experienced an acute flare of arthritis 12 hours after receiving the COVID-vaccine and concludes that the vaccine can lead to adverse health effects. *See* Ex. 2 ¶ 46 n.100. This case study concludes that "we cannot exclude the possibility that the timing of the flare with regard to vaccination was coincidental." Ex. 16, Comment, Flare of rheumatoid arthritis after COVID-19 vaccination, The Lancet, Vil. 3 (July 2021). Dr. Cole nevertheless relies upon this equivocal single-case study to conclude that the COVID-19 vaccine causes adverse health effects.

Dr. Cole similarly relies upon a case study involving one 32-year-old man in Japan who experienced respiratory failure after receiving his first dose of the COVID-19 vaccine in concluding that the vaccine can cause multisystem inflammatory system. *See* Ex. 2 ¶ 46 n.101. Yet all this brief case study concludes is that "COVID-19 vaccination *could* be a trigger for this condition." Ex. 17 at 870, Yusuke Miyazato et al., Multisystem Inflammatory Syndrome in Adult after First Dose of mRNA Vaccine, Emerging Infectious Diseases, Vol. 27, No. 4 (April 2022) (emphasis added).

Dr. Cole also opines that the COVID-19 vaccine could cause certain autoimmune conditions and relies upon a case study involving three individuals who experienced Graves disease after the administration of the vaccine. Ex. 2 ¶ 46 n.98. That case study expressly notes that "a limitation [of the case study] is the onset of Graves could have occurred independently of the vaccine administration." Ex. 18 at

16

4, Michael A. Weintraub et al., *Graves Disease Following the SARS-CoV-2 Vaccine:*
*Case Series*, J. Investigative Med. High Impact Case Reports, Vol. 9 (2021).   He
nevertheless ignores this possibility that is based on a sample size of three people.

As the Eleventh Circuit has explained, "[w]hile we acknowledge the importance
of anecdotal studies for raising questions and comparing clinicians' findings, in the
face of controlled, population-based epidemiological studies which find otherwise,
these case studies pale in comparison." *Allison*, 184 F.3d at 1316 (holding that district
court did not abuse its discretion in discounting expert's reliance on case reports "in
the face of the overwhelming contrary epidemiological evidence presented.").   Dr.
Cole acknowledged as much in his deposition and admitted that it is improper to draw
conclusions from small case studies.   Ex. 23 (Cole Tr. 392:2-3) ("So, you know,
drawing a conclusion off of seven patients or so, no.").   Yet that is precisely what he
did in this case, and his reliance upon case studies involving one or a few individuals,
and whose conclusions did not establish causation between the COVID-19 vaccines
and certain medical conditions, is another example of the lack of reliable opinions.

### 3. Drs. Cole and McCullough have cherry-picked information in reaching histheir opinions.

Contributing to their unreliable opinions is the fact that Plaintiffs' experts have
selectively relied upon certain information in studies while ignoring other, central
conclusions.   For example, Dr. Cole's bottom-line opinion is that the COVID-19
vaccine is neither "protective nor safe."   Ex. 2 ¶ 3.   Yet many of the studies he relies
upon to reach this conclusion directly contradict this opinion.   For example, one of

the studies he relies upon to claim that the vaccines cause serious side effects expressly "highlight[s] that immune-mediated reactions from the SARS-CoV-2 mRNA vaccines are very rare and during the COVID pandemic, the vaccine programme continues to be crucial." *See* Ex. 19, at 2, Gloria Shwe Zin Tun et al., Immune-mediated hepatitis with the Moderna vaccine, no longer a coincidence but confirmed.[8]

Dr. Cole wholly ignores these consistent conclusions, which directly contradict his opinion, and at the same time he greatly exaggerates the risks associated with the COVID-19 vaccines discussed in the studies he has identified.[9] This cherry-picking is yet another reason Dr. Cole's opinions should be excluded as unreliable.[10] *See Arevalo*

---

[8] A second study Dr. Cole relies upon emphasizes that "[o]verall, COVID-19 vaccination is still recommended, as the benefits of COVID-19 vaccination vastly outweigh the potential risk of herpesvirus reactivation." Ex. 20 at e8, N. Seto-Torrent et al., Letters to the Editor, J. European Academy of Dermatology & Venereology, Vol. 36, e1–e79 (2021). A third study relied upon by Dr. Cole explains that "[g]iven the assumed low incidence and mostly favourable outcome of autoimmune responses, the benefits of vaccinations outweigh the comparatively small risks." *See* Ex. 21 at 555, Leon D. Kaulen et al., Neurological autoimmune diseases following vaccinations against SARS-CoV-2: a case series, European J. of Neurology, Vol. 29 (Oct. 11, 2021). And a fourth study relied upon by Dr. Cole emphasizes that "[g]iven the high efficacy of the COVID-19 vaccines, the benefits of vaccinating vulnerable populations outweigh the risk of rheumatic disease flare, and expert panels including the American College of Rheumatology continue to recommend the vaccine in all eligible patients." *See* Ex. 16, at e470.

[9] For example, although Dr. Cole claims that the COVID-19 vaccine can result in anaphylaxis, *see* Ex. 2 ¶ 46, the study he relies upon for this conclusion states that "the overall risk of anaphylaxis to an mRNA COVID-19 vaccine remains extremely low and largely comparable to other common health care exposures." Ex. 22 at 2, Kimberly G. Blumenthal et al., Acute Allergic Reactions to mRNA COVID-19 Vaccines, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7941251/ (2021).

[10] When asked about this cherry-picking at his deposition, Dr. Cole claimed, without support, that the study authors are motivated by a desire to keep their NIH funding. Ex. 23 (Cole Tr. 304:3-20; Tr. 320:16-21) (discounting study conclusion supporting vaccination because "all of [the] funding came from the NIH for research"); *id.* (Cole Tr. 321:4-10) (discounting study conclusion that MRNA vaccines have demonstrated high efficacy and safety in clinical trials from COVID-19 protection by claiming "[t]hat's the homage to getting published over the past three years."); *id.* (Cole Tr. 375:7-377:14) (discounting study he relies upon that contradicted his conclusions by claiming that "[i]f you want something printed, you have to say that" the benefits of vaccination outweigh the risks); *id.* (Cole

*v. Coloplast Corp.*, No. 3:19cv35777, 2020 WL 3958505, at \*7 (N.D. Fla. July 7, 2020) (explaining that "the reliability of the methodology used to form an opinion is questionable when the expert 'cherry picks' data in order to support his preferred conclusion"), *aff'd sub nom. Arevalo v. Mentor Worldwide LLC*, 2022 WL 16753646 (11th Cir. Nov. 8, 2022); *In re Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig.*, 524 F. Supp. 2d 1166, 1184 (N.D. Cal. 2007) (excluding expert opinion as unreliable that "ignores all the evidence that contradicts her litigation-created conclusion" and instead based her opinion on cherry-picked studies).

Dr. McCullough similarly impermissibly cherry-picked portions of studies that supported his opinions while discounting other portions that contradicted his opinions. Dr. McCullough could not identify any legitimate methodology for how he selected studies; rather, he rejected any studies that disagreed with his conclusions on the grounds of "publication bias" and then relied upon publications that supported his opinions based on his "experience." Ex. 26 (McCullough Tr. 239:15-240:6). Dr. McCullough believes that peer reviewed research concerning COVID is biased because it presents vaccines in a favorable light and the research suppresses

---

Tr. 387:22-388:10) (discounting study he relied upon concluding that benefits of vaccination outweigh the risks because he believes such acknowledgement is necessary to get published); *id.* (Cole Tr. 388-17-391:5) (discounting study he relied upon concluding that the benefits of vaccination outweigh the risks because of speculation that, had the authors concluded otherwise, it would "be very dangerous for their career."). Yet Dr. Cole has never spoken to the authors of the studies he relies upon to determine whether they secretly think vaccines are harmful, noting that "I am making an assumption, obviously." *Id.* (Cole Tr. 377:22-378:4). This speculation as to motives and selective reliance upon parts of studies illustrates Dr. Cole's position as an anti-vaccine advocate rather than as an unbiased researcher, and greatly undermines the reliability of his opinions.

information on treatment.  Ex. 26 (McCullough Tr. 130:5-15; Tr. 133:21-24 ("So we're seeing wide-scaled corruption in the medical literature, all to favor the vaccines and to prevent any fair, balanced discussion of safety risks.").[11]  This approach may be appropriate for an advocate, but it fails to satisfy the requirements of Rule 702.

### 4. There is a lack of "fit" between Drs. McCullough and Cole's claimed expertise and their opinions.

In addition to the reliability concerns discussed above, there is also a lack of fit between Drs. McCullough and Cole's claimed expertise and the opinions they offer in litigation.  "[W]hether the individual offering the evidence is qualified as an expert in the field in which he is offering an opinion is a threshold determination in deciding whether scientific evidence is admissible." *Richter v. Home Depot, U.S.A., Inc.*, No. 8:05-cv-2153-T-TMB, 2009 WL 2914256, at *4 (M.D. Fla. Aug. 4, 2009) (citation omitted).

As one court has observed, although Dr. McCullough has a master's degree in public health, with a focus on epidemiology, "his practice was almost entirely internal medicine and clinical cardiology until he began publishing on COVID-19 in the early days of the pandemic." *Navy SEAL 1*, 2022 WL 1294486, at *11.  This lack of "fit" between Dr. McCullough's expertise and the opinions he seeks to offer in this case is grounds for exclusion.  *See Palma v. Safeco Ins. Co. of Ill.*, No. 8:20-cv-251, 2021 WL 1405507, at *5 (M.D. Fla. Apr. 14, 2021) (Merryday, J.) (excluding opinion of forensic

---

[11] Dr. McCullough believes, without evidence, that the Lancet and New England Journal of Medicine are "corrupted." Ex. 26 (McCullough Tr. 134:15-18).  He also discounts any scientific information that comes from the CDC because he believes the CDC is biased and "they're trying to accomplish their charge of getting everyone vaccinated, irrespective of how many Americans lose their lives or are damaged." Ex. 26 (McCullough Tr. 225:8-12).

economist concerning future medical costs and life care plan as falling outside area of expertise); *Richter*, 2009 WL 2914256, at *5 (excluding medical doctor's opinions on tool design and operation or engineering matters as falling outside doctor's expertise).

Similarly, Dr. Cole, a clinical and anatomical pathologist, does not have degrees or certifications in virology, and does not claim to be an expert in epidemiology or statistics. Ex. 23 (Cole Tr. 210:13-15; Tr. 222:16-22; Tr. 223:1-6). Although he did a year of PhD work in virology, he dropped out of the program and did not complete his degree. *Id.* (Cole Tr. 19:12-20:7; Tr. 22:13-19). Nor does he have any peer-reviewed publications in the field of virology. *Id.* (Cole Tr. 211:6-8). In addition, he has not treated patients at a clinic in at least twenty years. *Id.* (Cole Tr. 180:20-181:2). And he has never testified as an expert in court, whether about vaccines or anything else. *Id.* (Cole Tr. 91:21-92:1). Like Dr. McCullough, there is no fit between Dr. Cole's expertise as a pathologist and his opinions that the COVID-19 vaccines are neither safe nor effective.[12]

---

[12] Despite acknowledging that he lacks any special training in world religions, Ex. 23 (Cole Tr. 224:18-225:14), Dr. Cole offers the religious opinion that "Novavax is not compatible with many genuine religious exemption requests," and that "[f]rom a scriptural point of view, all major religions, contain admonitions to not harm others, and not harm self," and that "[m]andating these ineffective and harmful so-called vaccines is the antithesis of doing good to all people." Ex. 2 ¶¶ 5-6, 51. Nowhere in his 59-paragraph declaration does Dr. Cole provide (a) an explanation for the unadorned statement that NovaVax is not compatible with many genuine religious exemption requests; (b) a methodology for reaching such a conclusion; or (c) the facts and data he relied upon in reaching this opinion. This opinion should be excluded.

**5. The opinions have not been subject to peer review or testing.**

Finally, neither Dr. McCullough nor Dr. Cole suggests that their opinions that the COVID-19 vaccines are unsafe or ineffective have been subjected to peer review or testing, yet another indication that their opinions are unreliable. *See Daubert*, 509 U.S. at 593-94 (stating that "submission to the scrutiny of the scientific community is a component of 'good science,' in part because it increases the likelihood that substantial flaws in methodology will be detected."); *McDowell v. Brown*, 392 F.3d 1283, 1301 (11th Cir. 2004) (affirming exclusion of expert whose opinions, among other things, had never been published or subjected to peer review).

## II.   EXCLUSION OF DR. MCCULLOUGH'S OPINIONS ALSO IS WARRANTED UNDER RULE 37 BECAUSE HE FAILED TO PROVIDE A REPORT THAT COMPLIES WITH RULE 26(a)(2).

Even if the Court concludes that Plaintiffs' experts' opinions are admissible, it nevertheless should exclude Dr. McCullough's testimony because his expert report failed to comply with Rule 26(a)(2)(B), the failure is not substantially justified, and Defendants are prejudiced by this non-disclosure.

Rule 26(a)(2)(B) requires that specially retained expert witnesses provide a written report that discloses, among other things, a "complete" statement of all opinions and the bases for those opinions, the facts and data considered by the expert, and a list of all other cases in which the witness has testified at deposition or trial during the previous four years. *See* Fed. R. Civ. P. 26(a)(2)(B)(i), (ii) & (v). Rule 26(a)(2) is designed to deter "procrastination and sandbagging," and it "is

unacceptable to make a party wait, and thus be surprised, at deposition." *Hamlett v. Carroll Fulmer Logistics Corp.*, 176 F. Supp. 3d 1360, 1365 (S.D. Ga. 2016).

In addition to providing a report that complies with Rule 26(a)(2), "[a] party has a duty to supplement both the expert's report and the information given during an expert's deposition in a timely manner if the party learns that the information is incomplete or incorrect." *See* Fed. R. Civ. P. 26(e); *Dixon v. United States*, No. 15-23502, 2017 WL 5643319, at *2 (S.D. Fla. Mar. 1, 2017) (excluding opinion not contained in report and holding that even if plaintiffs "opened the door" during expert deposition by eliciting an opinion not contained in the report, the defendant still had a duty to supplement the report if it wished to rely on opinion at trial).

An expert's failure to comply with these disclosure obligations will result in the "party not being able to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." *See* Fed. R. Civ. P. 37(c)(1). "When determining whether such a failure was substantially justified or harmless, reviewing courts consider the non-disclosing party's explanation for the failure, the importance of the information, and whether the opposing party is prejudiced by the discovery violation." *Christie v. Bank of Am.,* No. 8:13-cv-1371, 2015 WL 10960875, at *2 (M.D. Fla. Jun. 19, 2015) (citations omitted) (excluding expert witnesses that failed to comply with Rule 26(a)(2)(B) disclosure requirements). "The burden of establishing that a failure to disclose was substantially justified or harmless rests on the nondisclosing party." *Mitchell v. Ford Motor Co.*, 318 Fed. App'x 821, 824 (11th Cir. 2009) (quotation omitted).

Here, Dr. McCullough's report failed to identify: (a) all of the facts and data he is relying upon in support of his opinions; and (b) all deposition and trial testimony provided in the past four years.   *See* Ex. 1.   Dr. McCullough has provided no justification for the failure to include this information in his report, let alone a substantial justification.   Although Dr. McCullough acknowledged that he had an obligation to identify in his report all of the facts and data he was relying upon for his opinions, he admitted that he had not done so, identified data for the first time at his deposition, and anticipated relying on additional facts and data at trial.   Ex. 26 (McCullough Tr. 100:15-20; Tr. 101:10-24; Tr. 159:11-20).   When asked at his deposition why his report did not contain any studies from 2022 despite the fact that his report was issued in November 2022, Dr. McCullough explained that this is "the reason why we have a deposition."   Ex. 26 (McCullough Tr. 242:21-24; Tr. 243:12-22 (noting that he "reserve[s] [his] right" to rely on facts and data that are not contained in his report that pre-date his report)).   In addition, Dr. McCullough stated that he had been an expert witness in 21 cases, including cases in 2019 and 2020 and other cases challenging the Department of Defense vaccine requirements, *see* Ex. 26 (McCullough Tr. 30:9-10; Tr. 33:3-34:13), yet none of these cases were disclosed in his Rule 26(a)(2) report.   *See* Ex. 1; *id.* (McCullough Tr. 34:2-11; Tr. 35:3-14).   This lack of justification is particularly notable given that Plaintiffs have not produced any documents considered by Dr. McCullough in response to Defendants' discovery requests seeking "all documents considered or relied on by each of Plaintiffs' experts in forming his or her opinions in this action," as well as "all Federal Rule of Civil Procedure 26(a)(2)(B)

reports by each of Plaintiffs' expert witnesses prepared in the last ten years." *See* Ex. 27 (Pls' Resps. & Objs. to Defs' Second Set of Reqs. for Prod.). Nor has Dr. McCullough sought to supplement his report with this information as required by Rule 26(e) (such supplementation now would prejudice Defendants' ability to effectively examine him).

In addition, Dr. McCullough's failure to comply with Rule 26(a)(2) substantially prejudices Defendants because we could not fully vet this information at his deposition and will be hindered in preparing for trial. "To permit procrastinators to point to deposition questions as proof of no prejudice is to neuter the rule and deny adversaries the full benefit of pre-deposition, question-preparation time, if not the option to obviate a deposition expense outright." *Hamlett*, 176 F. Supp. 3d at 1365.[13]

## CONCLUSION

The Court should exclude the opinions of Drs. McCullough and Cole.

## LOCAL RULE 3.01(g) CERTIFICATION

On January 11, 2023, undersigned counsel conferred via email with Plaintiffs' counsel, who represented that they oppose the relief sought in this motion.

Dated: January 13, 2023                     Respectfully submitted,

BRIAN M. BOYNTON                     */s/ Amy E. Powell*
                                                            ANDREW E. CARMICHAEL

---

[13] Dr. Cole admitted that his report "does not contain all of the facts and information I am relying on." Ex. 23 (Cole Tr. 237:2-12). Because Dr. Cole has failed to submit a written supplemental report containing all of the facts and data he is relying upon for his opinions, he should be limited to the bases for his opinions contained in his report if the Court deems his opinions admissible. *See* Fed. R. Civ. P. 26(e); *Dixon*, No. 15-23502, 2017 WL 5643319, at *2.

Principal Deputy Assistant Attorney
General

ALEXANDER K. HAAS
Director, Federal Programs Branch

ANTHONY J. COPPOLINO
Deputy Director

AMY E. POWELL
Senior Trial Counsel
MICHAEL P. CLENDENEN
LIAM HOLLAND
CATHERINE M. YANG
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel: (919) 856-4013
Email: amy.powell@usdoj.gov
*Counsel for Defendants*