# Exhibit 5

# IN THE UNITED STATES DISTRICT COURT

# FOR THE MIDDLE DISTRICT OF FLORIDA

**COLONEL FINANCIAL MANAGEMENT OFFICER**, *et al.*,

                    Plaintiffs,

     v.

**LLOYD AUSTIN, III**, in his official capacity as Secretary of U.S. Dep't of Defense, *et al.*,

                  Defendants.

Case No. 8:22-cv-01275-SDM-TGW

## DEFENDANTS' OBJECTIONS AND RESPONSES TO PLAINTIFFS' FIRST SET OF INTERROGATORIES

Pursuant to Federal Rules of Civil Procedure 26 and 33, Defendants, by and through their undersigned counsel, hereby respond to Plaintiffs' first set of requests for production, served August 17, 2022.

### Plaintiffs' Interrogatory No. 1:

**1. State the total number of Religious Exemption requests, the total number of initially approved requests, the total number of initially denied requests, the total number of initially denied requests for which the cognizant command chaplain or any other relevant official determined that the stated religious beliefs were sincere, the total number of pending appeals from initially denied requests, the total number of initially denied requests for which the time to appeal has expired without appeal, the total number of appeals denied, and the total number of successful appeals resulting in the granting of a Religious Exemption.**

### Defendants' Response to Plaintiffs' Interrogatory No. 1:

**Response.**   As of September 16, 2022, Marine Corps records reflect the following information:

(1) Total Religious Accommodation Requests: 3736

(2) Initially approved requests:  0

(3) Initially denied requests: 3736

(5) Pending appeals from initially denied requests:  767

(6) Initially denied requests for which the time to appeal has expired:    2,139

(7) Appeals denied:  621

(8) Successful appeals resulting in the granting of a Religious Exemption: 14

Of the appeals to the Assistant Commandant of the Marine Corps, approximately 621 were denied, 14 were approved, 42 were withdrawn, and 106 were returned with no action.

**Objections.**   Defendants object to the request insofar as it seeks information from DoD more broadly than the Marine Corps.  The Department of Defense is an organization encompassing more than 2 million employees with offices, installations,

2

and bases worldwide, including components that have been severed from this case. Defendants will only provide information for the Marine Corps.

Defendants object to providing data on "initially denied requests for which the cognizant command chaplain or any other relevant official determined that the stated religious beliefs were sincere." This request is overly burdensome and disproportionate to the needs of the case. This information is not centrally tracked. In order to provide information, someone would need to review each and every Religious Accommodation Request (RAR) file for any opinion or assessment of sincerity, including the chaplain interview checklist and assessment. Moreover, the resulting information would likely be incomplete or difficult to categorize because the answer as to whether someone has a sincerely held religious belief may be partial, caveated or incomplete in any individual file, opinion, or assessment. Even if review only took 2 minutes per file, the task would require at least 125 manhours, and is disproportionate to the needs of the case.

Defendants object to any instruction or argument that Defendants are required to regularly supplement this data, which may change on a daily or weekly basis. Supplementing responses regularly would be unreasonable, burdensome and disproportionate to the needs of the case.

### Plaintiffs' Interrogatory No. 2:

**2. For any Marine who received a Religious Exemption, state the date of the approval, the name, rank, rate, rating, MOS, duty or command assignment, status (e.g., active duty or reserve), and time remaining in the Marine Corps at the time of the approval.**

3

### Defendants' Response to Plaintiffs' Interrogatory No. 2:

**Response:**  See Appendix A, marked CONFIDENTIAL, PRODUCED PURSUANT TO PROTECTIVE ORDER.

**Objection:**  Defendants object to the provision of personally identifiable information subject to the Privacy Act, especially insofar as that information relates to non-class members.  The invasion of privacy is unnecessary, unreasonable, and disproportionate to the needs of the case. In light of the protective order in place in this matter, ECF No. 240, Defendants are nonetheless producing this information under a protective order.

### Plaintiffs' Interrogatory No. 3:

**3. State the total number of Medical Exemption requests, the total number of approved requests, and the total number of denied requests.**

### Defendants' Response to Plaintiffs' Interrogatory No. 3:

**Response:**  As of September 9, 2022, the Medical Readiness Reporting System (MRRS) reflect that there are currently 31 "permanent" medical exemptions to the COVID-19 vaccine requirement and 59 temporary medical exemptions.  These numbers do not reflect expired, revoked or otherwise withdrawn exemptions.  Medical exemptions are placed in MRRS by individual primary care providers across the Department of Defense (DoD). The Marine Corps does not track requested or denied medical exemptions but relies on the MRRS data in what is reported for permanent and temporary medical exemptions to the COVID-19 vaccine mandate.

4

**Objections:**  The request seeks information that is unreasonable, irrelevant and disproportionate to the needs of the case insofar as it seeks information about temporary medical exemptions, which are in no way comparable or analogous to the religious exemptions sought by Plaintiffs.

Defendants object to the request insofar as it seeks information from DoD more broadly than the Marine Corps.  The Department of Defense is an organization encompassing more than 2 million employees with offices, installations, and bases worldwide, including components that have been severed from this case. Defendants will only provide information for the Marine Corps.

Defendants object to providing information about the total number of medical exemption requests made and the total number of denied requests.  That information is not tracked by the Marine Corps.  It may be recorded in individual medical records for individual service members, but is not available other than searching each and every individual medical record for hundreds of thousands of Marines, a task that is plainly disproportionate to the needs of the case.

Defendants object to the vagueness of the request which does not specify data ranges or whether current or historical data is sought.  It is likely impossible to reconstruct the total exemptions granted in the past that have since expired (a number that is particularly irrelevant to the issues before the Court).  Moreover, this information fluctuates frequently, as temporary exemptions expire or new requests are granted.  Defendants have previously provided snapshot of exemptions in the past. *See, e.g.*, ECF Nos. 47-4; 52-4.  Defendants object to any instruction or argument that

Defendants are required to regularly supplement this data, which may change on a daily or weekly basis.   Supplementing responses regularly would be unreasonable, burdensome and disproportionate to the needs of the case.

**Plaintiffs' Interrogatory No. 4:**

**4.  State the number of Marines who have been separated from the Marine Corps for declining to accept or receive a COVID-19 vaccination based on a religious objection to the vaccination.**

**Defendants' Response to Plaintiffs' Interrogatory No. 4:**

**Response:**   No Marines are or have been separated "for declining to accept or receive a COVID-19 vaccination based on a religious objection to the vaccination." Rather, Marine Corps records reflect that as of 16 September 2022, 3,468 Marines have been separated because they failed to follow a lawful order to be vaccinated.  Not all of those Marines had previously submitted a Religious Accommodation Request (RAR) for exemption from the DoD COVID-19 vaccination mandate, and not all of the Marines had submitted an appeal after receiving a denied RAR.  A total of 10 Marine officers have been approved for discharge following denial of an RAR appeal; 3 were discharged prior to the injunction.  A total of 833 enlisted Marines who submitted a RAR were later separated for refusing to follow a lawful order to be vaccinated.

**Objection:**   Defendants object to the premise that Marines are separated "for declining to accept or receive a COVID-19 vaccination based on a religious objection to the vaccination."  The process underlying separation and the bases therefore are

6

fully explained in Marine Corps policies and in the relevant declarations previously filed in this case. *See, e.g.*, Furness Decl., ECF No. 206-2; MARADMIN 612/21.

Defendants object that the requested numbers are not relevant to the questions before the Court and the request is therefore disproportionate to the needs of the case. Providing more detailed information than that provided above would impose a significant burden on Defendants without advancing the case. Defendants are not tracking the number of enlisted service members with a RAR appeal denial who have pending or completed separation proceedings.

### Plaintiffs' Interrogatory No. 5:

**5. State the number of courts-martial and the number of separation proceedings, whether pending or concluded, against a Marine whose request for a Religious Exemption was denied after appeal.**

### Defendants' Response to Plaintiffs' Interrogatory No. 5

**Response:** Marine Corps records reflect that there have been no court martials initiated based on failure to follow an order to be vaccinated.

Marine Corps records reflect that as of 16 September 2022, 3,468 Marines have been separated because they failed to follow a lawful order to be vaccinated. Not all of those Marines, however, previously submitted an RAR or had an RAR appeal denied. A total of 833 enlisted Marines who submitted a RAR were later separated for refusing to follow a lawful order to be vaccinated, but Defendants are not tracking the number of enlisted service members with a RAR appeal denial who have pending or

completed separation proceedings. Not all Marines who previously submitted RARs for exemption from the COVID-19 vaccination requirement, submitted an appeal or had an appeal denied. Officer data is tracked at Headquarters Marine Corps. Marine Corps records reflect that approximately 140 officers in the class failed to follow a lawful order to be vaccinated after their RAR appeals were denied. Of those officers, 3 were retained and 10 were approved for separation, with 3 of them actually being separated prior to the injunction. Of the 140 officers who refused to follow the order after their appeals were denied, 92 misconduct cases were being tracked on the Officer Disciplinary Notebook (ODN) prior to the preliminary injunction. The remaining 48 officers were not yet added to the ODN database prior to the injunction.

**Objection:** Defendants object to the total number of interrogatories. This compound interrogatory is at least 2 separate interrogatories (one related to courts martial, one to separation proceedings).

Defendants object to the request as irrelevant and overbroad to the extent it seeks information about separations or court martials unrelated to vaccination status. Individuals may be subject to such actions for reasons unrelated to their failure to be vaccinated and unrelated to the matter before the Court. Attempting to track down courts martials or separations for everyone that had an RAR appeal denied irrespective of the connection to the vaccination requirement would be difficult or impossible, and plainly disproportionate to the needs of the case.

Defendants object that the requested numbers are not relevant to the questions before the Court and the request is therefore disproportionate to the needs of the case.

8

Providing more detailed information than that provided above would impose a significant burden on Defendants without advancing the case. Defendants are not tracking the total numbers of pending separations or the number of enlisted service members with a RAR appeal denial who have pending or completed separation proceedings. It would be unreasonably burdensome to attempt to discover the pending enlisted administrative separations, which are not tracked centrally. Hundreds of individual authorities would need to review their data, a task that is disproportionate to the needs of the case.

**Plaintiffs' Interrogatory No. 6:**

**6. State the number of Marines who have been served with, issued, or provided Administrative Separation orders, papers, letters, or documents for declining to accept or receive a COVID-19 vaccination based on a religious objection to the vaccination.**

**Defendants' Response to Plaintiffs' Interrogatory No. 6:**

**Response.** No Marines are or have been separated "for declining to accept or receive a COVID-19 vaccination based on a religious objection to the vaccination." Marine Corps records reflect that as of 16 September 2022, 3,468 Marines have been separated because they failed to follow a lawful order to be vaccinated. Not all of those Marines had previously submitted RARs for exemption from the COVID-19 vaccination requirement, or had an appeal denied. Marine Corps records reflect that approximately 140 officers failed to follow a lawful order to be vaccinated after their RAR appeals were denied. Of those officers, 3 were retained and 10 were approved

9

for separation, with 3 of them actually being separated prior to the injunction. Of the 140 officers who refused to follow the order after their appeals were denied, 92 misconduct cases were being tracked on the Officer Disciplinary Notebook (ODN) prior to the preliminary injunction. The remaining 48 officers were not yet added to the ODN database prior to the injunction. Defendants are not tracking the number of enlisted service members with an RAR appeal denial who have pending or completed separation proceedings.

**Objections.** Defendants object to the premise that Marines are separated "for declining to accept or receive a COVID-19 vaccination based on a religious objection to the vaccination." The process underlying separation and the bases therefore are fully explained in Marine Corps policies and in the relevant declarations previously filed in this case. *See, e.g.*, Furness Decl., ECF No. 206-2; MARADMIN 612/21.

Defendants object to the ambiguity of the phrase "served with, issued, or provided Administrative Separation orders, papers, letters, or documents" as it is unclear whether Plaintiffs are seeking information about the number of Marines for whom separation proceedings have commenced, or the number of Marines who have received final separation orders, or some other number connected to the service of unspecified documents.

Defendants object that the requested numbers are not relevant to the questions before the Court and the request is therefore disproportionate to the needs of the case. Providing more detailed information than that provided above would impose a significant burden on Defendants without advancing the case. Defendants are not

tracking the total numbers of pending separations or the number of enlisted service members with a RAR appeal denial who have pending or completed separation proceedings.

### Plaintiffs' Interrogatory No. 7:

**7. State the number of Marines against whom the Marine Corps has instituted a Board of Inquiry proceeding for declining to accept or receive a COVID-19 vaccination based on a religious objection to the vaccination, and the number of such Board of Inquiry proceedings that are pending or concluded.**

### Defendants' Response to Plaintiffs' Interrogatory No. 7:

**Response.** Marine Corps records reflect the following for each USMC region:

For the Pacific Region: There are 2 concluded Boards of Inquiry related to failure to comply with an order to be vaccinated.

For the East Region: There are 3 concluded BOIs and 3 pending BOIs related to failure to comply with an order to be vaccinated.

For the West Region: There are 2 concluded BOIs and 4 pending BOIs related to failure to comply with an order to be vaccinated.

For the National Capital Region: There are 4 concluded BOIs and 4 pending BOIs related to failure to comply with an order to be vaccinated.

**Specific Objections.** Defendants object to the premise that Marines are subject to a Board of Inquiry "for declining to accept or receive a COVID-19 vaccination based on a religious objection to the vaccination." The process underlying separation and the bases therefore are fully explained in Marine Corps policies and in the relevant

declarations previously filed in this case. *See, e.g.*, Furness Decl., ECF No. 206-2; MARADMIN 612/21.

Defendants object that the requested numbers are not relevant to the questions before the Court and the request is therefore disproportionate to the needs of the case. Providing more detailed information than that provided above would impose a significant burden on Defendants without advancing the case. Defendants are not centrally tracking which of the pending or completed BOIs involved individuals who had an RAR appeal denied. Defendants continue to investigate and may be able to supplement this interrogatory response within 2 weeks with additional information about which of the individuals with pending or completed BOIs had RARs or RAR appeals denied, depending on what information is available.

## Plaintiffs' Interrogatory No. 8:

**8. State the number of Marines who have been granted a Religious Exemption, Medical Exemption, or any other exemption, accommodation, exception to policy, or arrangement, for any reason, that permitted them to continue to serve in the positions or duty assignments they held at the time of requesting such exemption, accommodation, exception to policy, or arrangement.**

## Defendants' Response to Plaintiffs' Interrogatory No. 8:

<u>**Response.**</u> Defendants stand on their objections.

<u>**Specific Objections.**</u>    Defendants object that the request is ambiguous, overbroad, unduly burdensome and disproportionate to the needs of the case. "Exception to policy" and "arrangement" are undefined and could conceivably apply

any of a number of formal and informal arrangements across the Force that are not readily tracked.   The information sought is not centrally tracked anywhere, and broadly read, the request would require Defendants to individually review medical and personnel files for every Marine who had even a temporary exemption for any reason to determine when the exemption was requested, when it was granted and whether their duties changed during or after the approval.   The resulting numbers would shed no light on the frequency, propriety or viability of such assignments for Plaintiffs or the Class.   For example, a Marine who was temporarily exempt for 30 days in December 2021 because the vaccine was not available at their deployed location, for example, may or may not have had their duties changed when the exemption was granted for reasons that may or may not have been related to their vaccination status. Similarly, a Marine who was granted a medical exemption due to prolonged recovery from COVID-19 may or may not have had their duties changed due to their medical status, unrelated to vaccination.

Moreover, the request seeks information that is unreasonable, irrelevant and disproportionate to the needs of the case insofar as it seeks information about temporary medical and administrative exemptions, which are in no way comparable or analogous to the religious exemptions sought by Plaintiffs.

### Plaintiffs' Interrogatory No. 9:

**9. State the number and identify the location of any BLA-compliant COVID-19 vaccine doses that Defendants have in their possession.**

13

**Defendants' Response to Plaintiffs' Interrogatory No. 9:**

**Response.**

Defendants respond that Defense Health Agency records reflect that as of September 14, 2022, DoD possesses BLA and BLA-compliant doses as follows:

| Row Labels | Sum of DOSES | Count of Sites |
|---|---|---|
| **Pfizer BLA manufactured, Comirnaty-labeled** | **30,360** | 41 |
| GFEBS Beaufort NH EAST | 7,848 | |
| Nellis AFB (99th MDG) ACC | 6,360 | |
| GFEBS San Diego NMC WEST | 2,964 | |
| GFEBS Camp Pendleton NH WEST | 1,260 | |
| Ft Leonard Wood (Leonard Wood) RHC-C | 1,110 | |
| Luke AFB (56th MDG) AETC | 1,080 | |
| Ft Sam Houston (Brooke-BAMC) RHC-C | 858 | |
| Whiteman AFB (509th MDG) AFGSC | 720 | |
| GFEBS Patuxent River (Pax) NHC | 720 | |
| Eglin AFB (96th MDG) AFMC | 654 | |
| Misawa AB (35th MDG) PACAF | 600 | |
| GFEBS Cherry Point NH EAST | 540 | |
| Ft Campbell (Blanchfield) RHC-A | 510 | |
| Ft Benning (Martin) RHC-A | 450 | |
| Sheppard AFB (82nd MDG) AETC | 390 | |
| Yokota AB (374th MDG) PACAF | 342 | |
| Tyndall AFB (325th MDG) AETC | 300 | |
| Ft Riley (Irwin) RHC-C | 300 | |
| GFEBS Guantanamo Bay NH EAST | 300 | |
| Ft Bragg (Womack-WAMC) RHC-A | 300 | |
| Lackland AFB (Wilford Hall 59th MLRS) AETC | 300 | |
| Kadena AB (18th MDG) PACAF | 294 | |
| Ft Hood (Darnall) RHC-C | 288 | |
| Vandenberg AFB (30th MDG) AFSPC | 288 | |
| Wright-Patterson AFB (88th MDG) AFMC | 240 | |
| GFEBS Jacksonville NH EAST | 204 | |
| Walter Reed National MMC Bethesda (WRNMMC) DHA | 180 | |
| GFEBS Camp Lejeune NMC EAST | 162 | |
| Elmendorf AFB (673rd MDG) PACAF | 120 | |
| Ft Rucker (Lyster) RHC-A | 108 | |
| Ft Knox (Ireland) RHC-A | 102 | |
| GFEBS Bremerton NH WEST | 96 | |
| GFEBS Quantico NHC (Naval Health Clinic) EAST | 72 | |
| US Air Force Academy (USAFA 10th MDG) USAFA | 60 | |

| | | |
|---|---|---|
| GFEBS 29 Palms NH WEST | 60 | |
| Hurlburt Field AFB (1st SPEC OPS MDG) AFSOC | 54 | |
| Ellsworth AFB (28th MDG) ACC | 36 | |
| Mountain Home AFB (366th MDG) ACC | 30 | |
| Aviano AB (31st MDG) USAFE | 30 | |
| Maxwell AFB (42nd MDSS) AETC | 24 | |
| Goodfellow AFB (17th MDG) AETC | 6 | |
| **Moderna BLA manufactured, Spikevax labeled** | **1,090** | **2** |
| GFEBS Beaufort NH EAST | 1,000 | |
| Kirtland AFB (377th MDG) AFMC | 90 | |
| **Pfizer, EUA labeled, BLA Compliant** | **1,008** | **2** |
| Langley AFB (633rd MDG) ACC | 948 | |
| Ft Lewis (Madigan-MAMC) RHC-P | 60 | |
| **Total:** | **32,458** | **45** |

If vaccine meets logistics parameters for redistribution, those doses can be moved around as needed, and medical treatment facilities may order additional Comirnaty or Spikevax based on local demand.  There are no restrictions on ordering.

**Specific Objections.**  Defendants object that the request is ambiguous insofar as the parties have previously disputed the definition of BLA-compliant.  Defendants will provide information consistent with Defendants' position that "BLA-compliant doses" encompass both EUA-labelled vaccines identified by FDA as BLA-compliant, as well as BLA doses labelled as Comirnaty or Spikevax.  This answer does not concede in any way Defendants' position that other EUA-labeled Pfizer or Moderna vaccine may be used interchangeably with Comirnaty or Spikevax, as though it were the licensed vaccine.

Moreover, responsive information fluctuates frequently, as doses are used, expire or are obtained.  Defendants therefore object to any instruction or argument that Defendants are required to regularly supplement this data, which may change on

a daily basis, and is burdensome to compile.  Supplementing responses regularly would

be unreasonable, burdensome and disproportionate to the needs of the case.

### Plaintiffs' Interrogatory No. 10:

**10. Identify the highest ranking official or officials in the United States Marine Corps chain of command with authority over the content, implementation, administration, or enforcement of the Religious Exemption Policy, as applicable to United States Marine Corps servicemembers, the proposed deposition of whom by Plaintiffs would not be subject to an Apex-doctrine objection by Defendants.**

### Defendants' Response to Plaintiffs' Interrogatory No. 10:

**Response.** Defendants stand on their objections.

**Specific Objections.**  Defendants object to this interrogatory, which is not a

factual or legal inquiry relevant to a claim or defense in this case, but a request related

to trial and discovery strategy.  As such, a comprehensive answer would involve

information protected by the work product doctrine.  The rules and orders in this case

impose an obligation on the parties to identify relevant witnesses in their initial

disclosures, timely supplements, expert disclosures and in the pretrial report.

Defendants will comply with those obligations, but not provide Plaintiffs with a

premature response.  Defendants will make best efforts to provide a supplement to the

initial disclosures that will identify additional high-ranking officials that may testify on

behalf of Defendants on these matters, on or before October 5, 2022, and supplement

those disclosures further as required by the Rules.

16

## GENERAL OBJECTIONS AND RESPONSES
## TO INSTRUCTIONS AND DEFINITIONS

**Relevance and Proportionality.**  Defendants' response is provided in accordance with Federal Rule 26(b)(1), which permits the discovery of any information, not privileged, that is both (1) relevant to any party's claim or defense, and (2) proportional to the needs of the case. Defendants object to the interrogatories and accompanying instructions and definitions to the extent they impose obligations in excess of those imposed by the Federal Rules of Civil Procedure. Defendants will comply with the Federal Rules.

**No waiver.** Defendants do not, by providing such information, waive any objection to its admissibility on the grounds of relevance, proportionality, accessibility, materiality, or other appropriate ground.  The inadvertent production by Defendants of information or documents protected by any privilege or protection shall not constitute a waiver of the applicable privilege or protection as to any information or documents disclosed. And the identification of any individual in response to an interrogatory or the disclosure that a particular communication occurred does not waive any applicable privilege over the contents of relevant conversations.

**Military Decisionmaking.** Defendants object to these interrogatories as unduly burdensome and not proportionate to the needs of the case insofar as they seek information to undertake an independent evaluation of military data. *See Doe 2 v. Shanahan*, 917 F.3d 694, 737 (D.C. Cir. 2019) (Williams, J., concurring) (noting the

17

court's role in evaluating military policy is so circumscribed that extra-record evidence and discovery is "quite beside the point") (quoting *Goldman v. Weinberger*, 475 U.S. 503, 509 (1986)); *see also id.* (noting that the Supreme Court in "*Rostker* chastised the district court for 'palpably exceed[ing] its authority' in 'relying on [such] testimony'" (quoting *Rostker*, 453 U.S. at 81)). Courts "readily acknowledge" that such decisions "are not lightly to be overruled by the judiciary" and apply that deference by focusing their review on the military justifications reflected in the administrative record. *Pruitt v. Cheney*, 963 F.2d 1160, 1166-67 (9th Cir. 1992) (in service member case asserting constitutional claims, instructing that military deference "is best applied in the process of judging whether the reasons put forth on the record . . . are rationally related to any of the Army's permissible goals"); *cf. Austin v. U.S. Navy SEALs 1-26*, 142 S. Ct. 1301, 1302 (2022) (emphasizing that "[t]he Court 'should indulge the widest latitude' to sustain the President's 'function to command the instruments of national force,'" and citing *Gilligan v. Morgan*, 413 U.S. 1 (1973) and *Dep't of Navy v. Egan*, 484 U.S. 518 (1988)).

**Privileged Material.** Defendants object to Plaintiffs' requests to the extent they seek information or documents protected by the attorney-client privilege, work-product doctrine, deliberative process privilege, state secrets privilege, or any other applicable privilege, exemption, or immunity. Defendants incorporate their forthcoming privilege logs and all related information to the extent necessary to preserve against any waiver of any applicable privilege or immunity from discovery. To the extent that Defendants respond that they will search for and produce responsive documents,

Defendants are only undertaking to make a good faith effort to conduct a reasonable search of non-privileged records of those individuals likely to have meaningful information responsive to a reasonable request, as maintained in the ordinary course of business.

**Classified Information.** Defendants object to this request to the extent it seeks information that is subject to the privilege or statutory protections for national security information, including any information that is classified under Executive Order. The disclosure of such information could reasonably be expected to harm the national security interests of the United States and, thus, any such responsive information is withheld on the basis of this objection.

**Definitions and Instructions.**

**Definitions:**

1.     Defendants object to all of the requests and accompanying instructions and definitions to the extent they impose obligations in excess of those imposed by the Federal Rules of Civil Procedure.  Defendants will comply with the Federal Rules.

2.     Defendants also object to Plaintiffs' "Definitions" to the extent they seek to impose unreasonable or burdensome obligations beyond what is required by the Federal Rules of Civil Procedure and object to any meaning or interpretation onto the requests other than that evident from the plain and ordinary meaning of the words used therein. Defendants will read and respond to Plaintiffs' requests with the

understanding that these terms have their plain and ordinary meaning in standard English usage.

3.  Defendants object to Plaintiffs' Definition 1 of "Defendants", "you," and "your" in that it encompass all "officers," "employees," "attorneys," within the Department of Defense, the United States Marine Corps, and "all related departments and branches," "and any other person acting on behalf of any of them." The Department of Defense is an organization encompassing more than 2 million employees and Plaintiffs' definition seeks to have the Department search the records of every employee for records responsive to these requests including Military Branches that have been severed from this case. Accordingly, Plaintiffs' definition is unreasonable, overbroad, beyond the scope of the litigation, and unduly burdensome. Moreover, Plaintiffs' inclusion of "attorneys" and "and any other person acting on behalf of" Defendants expands this request to material protected by the attorney work product and attorney client privilege, including material from Department of Justice attorneys representing Defendants in this litigation. Such material is privileged and any such search would be unreasonable, overbroad, beyond the scope of the litigation, and unduly burdensome.

4.  Defendants object to Plaintiffs' Definition of "Class Member" or "Putative Class Member" because it diverges from the class definition previously determined by the Court. *See* ECF No. 229. Defendants will use the definition provided by the Court.

20

5.      Defendants object to Plaintiffs' Definition 6 of "Communication" as encompassing "telefaxes", "telegrams," "telexes," as these means of communication are not defined in Plaintiffs' Definitions and Defendants are unaware of individuals communicating by these means.  Defendants further object to Plaintiffs' Definition 6 as encompassing "telephone calls" and "conversations" to the extent these conversations were not recorded or otherwise memorialized.

5.      Defendants object to Plaintiffs' Definition 10 of "Document" and "documents" as encompassing "networks, databases, computer systems (including legacy systems, hardware, and software), servers, archives, backup or disaster recovery systems, tapes, discs, drives, cartridges, and other storage media, laptops, personal computers, tablets, digital assistants, handheld wireless devices, mobile telephones, paging devices, and audio systems (including voice-mail)," insofar as data collection and translation are appropriate only to the extent reasonable and proportional to the needs of the case, taking into account any technical limitations and costs associated with such efforts.  Defendants further object to Plaintiffs' Definition 10 of "Document" and "documents" as encompassing "drafts," as overbroad, unreasonable, and unduly burdensome in that it solely seeks documents potentially subject to the deliberative process privilege. *See United States Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777 (2021); *Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114, 1122 (9th Cir. 1988); *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980). Accordingly, it is unreasonable and unduly burdensome to conduct a search for

drafts—just as it would be unreasonable and unduly burdensome to conduct a search for all communications between an attorney and their client.

6.      Defendants object to Definition 15 of "Vaccine Mandate" because, read broadly, it encompasses implementing policies, guidance and individual orders that are not directly challenged in this action.  Accordingly, Plaintiffs' definition results in requests that are unreasonable, overbroad, beyond the scope of the litigation, and unduly burdensome.  Defendants will use the term "Vaccine Mandate" to refer to Defendant Secretary Austin's August 24, 2021 Memorandum, and relevant implementing guidance, such as MARADMIN 462/21, MARADMIN 533/21, MARADMIN 612/21, MARADMIN 733/21, and MARADMIN 464/22.

**Instructions.**

1.      Defendants object to all of the requests and accompanying instructions and definitions to the extent they impose obligations in excess of those imposed by the Federal Rules of Civil Procedure.  Defendants will comply with the Federal Rules.

2.      Defendants object to the identification of a supposedly "relevant time period" dating back to June 1, 2021, to the extent this time period is beyond the scope of the litigation, unreasonably burdensome and unlikely to yield any information relevant to the litigation.  For example, a search for modifications to the Secretary's August 24, 2021, mandate before the mandate even issued is unreasonable, unduly burdensome, and unlikely to yield any relevant information.

3.      Defendants object to Plaintiffs' Instruction 2 in that it purports to require "continuing" and "timely" and "required" supplements without defining those terms. Many of Plaintiffs' Interrogatories seek information or data that may change on a daily or weekly basis.    Supplementing responses regularly would be unreasonable, burdensome and disproportionate to the needs of the case.  Accordingly, as specified in responses below, Defendants will respond as of a specific date.

4.      Defendants object to Plaintiffs' Instruction 3 in that it purports to require Defendants to provide "all knowledge or information available to Defendants" with an expansive definition. The Department of Defense is an organization encompassing more than 2 million employees with offices, installations, and bases worldwide, Defendants will only search locations where it is reasonable and proportional to the needs of the case and not unduly burdensome, in accordance with the Federal Rules of Civil Procedure.

5.      Defendants object to Plaintiffs' Instruction 5 insofar as it exceeds Defendants' obligations under the Federal Rules of Civil Procedure, which do not require the Defendants to identify inquiries made, documents or witnesses.

6.      Defendants object to Instruction 6 to the extent it imposes obligations to provide information in excess of those imposed by the Federal Rules of Civil Procedure.

Dated:  September 23, 2022                    Respectfully submitted,

BRIAN M. BOYNTON                             */s/  Amy E. Powell*
Principal Deputy Assistant                    ANDREW E. CARMICHAEL
Attorney General                             AMY E. POWELL
                                             Senior Trial Counsel
ALEXANDER K. HAAS                            ZACHARY A. AVALLONE
Director, Federal Programs Branch            Trial Attorneys
                                             United States Department of Justice
ANTHONY J. COPPOLINO                         Civil Division, Federal Programs Branch
Deputy Director                              1100 L Street, N.W.
                                             Washington, DC 20005
                                             Tel: (919) 856-4013
                                             Email: amy.powell@usdoj.gov

                                             *Counsel for Defendants*


## Certificate of Service

Undersigned served this document by electronic mail on Plaintiffs' counsel on September 23, 2022.

*/s/ Amy Powell*

Amy Powell

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

**COLONEL FINANCIAL MANAGEMENT OFFICER**, *et al.*,

           Plaintiffs,

   v.

**LLOYD AUSTIN, III**, in his official capacity as Secretary of U.S. Dep't of Defense, *et al.*,

           Defendants.

Case No. 8:22-cv-01275-SDM-TGW

## <u>INTERROGATORY VERIFICATION</u>

I am a medical doctor assigned to the Defense Health Agency.  I have read the response to interrogatory 9.  I certify, based on reasonable inquiry, that the foregoing answers are true and correct to the best of my knowledge, information, and belief.  I verify under penalty of perjury that the foregoing is true and correct.

RANS.TONYA.S
UE.1081263031

Digitally signed by
RANS.TONYA.SUE.1081263031
Date: 2022.09.23 15:28:49
-04'00'

Tonya Rans
Col, USAF, MC

1