## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| **COLONEL FINANCIAL MANAGEMENT OFFICER,** *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> **LLOYD AUSTIN,** in his official capacity as Secretary of the United States Department of Defense, *et al.*, <br><br> Defendants. | Case No. 8:22-cv-1275 (SDM/TGW) |

## TIME-SENSITIVE THIRD MOTION TO STAY PROCEEDINGS

## INTRODUCTION

Defendants have separately moved to dismiss this case as moot. Due to the impendency of trial and significant other discovery demands, Defendants respectfully move for an order vacating all pending deadlines and staying all other deadlines while the Court considers that motion. If the Court determines that anything remains of the case the parties should be ordered to file a status report proposing next steps within thirty days of such a ruling.

As set forth in separate briefing on mootness ordered by the Court, in December, Congress passed and the President signed the NDAA, a law requiring rescission of DoD's COVID-19 vaccination requirement (the very requirement at issue in this action). The Secretary has acted to rescind that requirement, including removal of past and pending adverse action for Plaintiffs and class members in this action. Defendants previously twice moved the Court to stay proceedings to preserve judicial and party resources while Congress considered, and Defendants implemented, the

NDAA.  Some deadlines were extended with each motion.  Since then, the Secretary acted to rescind the mandate, and the Court has ordered briefing on mootness.

Now that the parties are briefing mootness, it is even clearer that implementation of the NDAA will have a substantial impact on this litigation. Defendants have argued that the rescission justifies dismissal of all claims, or at a minimum, decertification of the class and dissolution of the injunctions.  If anything of this case remains, the remaining class-wide or individual issues will look very different than the trial the parties envisioned.  Accordingly, absent an immediate dismissal, a stay of proceedings in this case while the Court considers mootness and the parties address any ruling would be appropriate and will preserve the parties' and the Court's resources.  If any aspect of the litigation remains following the Court's ruling on mootness, Defendants propose that the parties file a joint status report proposing next steps within thirty days of that ruling.

Plaintiffs' continued insistence that the Court proceed as originally scheduled and resolve other pending pre-trial motions in time to conduct a bench trial in February (that could last two weeks or longer) is not an efficient use of resources.  Moreover, because the challenged mandate has now been rescinded, rulings on the other pre-trial motions would likely result in a series of advisory opinions.  The scope and content of relevant witness testimony would depend on what, if any, aspects of the litigation remain.  For example, because the mandate has been rescinded and religious accommodation requests ("RARs") seeking an exemption from that mandate will no longer be processed, it is highly unlikely that any class issues will remain in the case.

2

Thus, the high-ranking officials Plaintiffs currently seek to depose are unlikely to be relevant to any remaining issues. And, if any claim remains as to an individual Plaintiff, despite the Secretary's direction to remove past discipline, litigation of that claim could require a different witness and discovery related to that individualized claim, as opposed to the class issues the parties have prepared for to date.

Given the rescission of the mandate and the removal of pending and past discipline for Plaintiffs, neither Plaintiffs nor the class can demonstrate prejudice from a brief stay of proceedings to clarify whether any aspect of this case continues.

In light of scheduled discovery deadlines, scheduled depositions, and the fast-approaching trial date, Defendants respectfully request expedited treatment of this motion and either an administrative stay pending briefing, or a decision by February 2, 2023. Defendants have conferred with Plaintiffs' counsel, who oppose the relief sought in this motion, but agree to an expedited briefing schedule whereby they file their opposition on the schedule set by the Court for mootness briefing, such that the opposition is due on or before January 25, 2023.

## BACKGROUND

The background in this matter is more fully set forth in the mootness briefing concurrently filed today January 18, 2023. *See* ECF No. 275. As relevant here, when the proposed NDAA legislation was publicly released, Defendants moved to stay proceedings. ECF No. 252. The parties reached partial agreement and the Court entered an order extending certain discovery deadlines. ECF No. 254. In particular, the parties agreed to reschedule four depositions for the first two weeks of January, file

*Daubert* motions by January 13, 2023, and complete conferrals on outstanding discovery disputes as soon as practicable. *Id.* When the President announced an intention to sign the NDAA, Defendants again moved to stay proceedings. ECF No. 256. The Court partially granted the motion, continuing the trial date to February 27, 2023, and encouraging the parties to resolve other scheduling issues. ECF No. 262. The parties jointly sought a scheduling order, which directed the parties to complete remaining depositions by February 8, 2023, set the pretrial report for February 15, 2023, and set the pretrial conference for February 21, 2023. ECF No. 267.

Significant discovery disputes and trial preparation remain to be completed prior to the pretrial report on February 15, including three depositions of high-ranking officials, and several motions that would need to be resolved. The three remaining depositions include: on February 6, 2023, an expert witness deposition of Dr. Barbara Mahon, a senior CDC official and Defendants' expert witness on the safety and efficacy of the COVID-19 vaccines; on February 7, 2023 a 30(b)(6) deposition of Colonel Mark Reid, regarding the now-defunct policies implementing the DoD vaccine requirement; and on February 8, 2023, a fact deposition of Lieutenant General David Ottignon, who was preparing to testify as to why the Marine Corps' compelling interests require vaccination of the Plaintiffs. Defendants also have multiple pending motions (in addition to the mootness briefing): Defendants' motion for an order to show cause why Chief Warrant Officer 3 should not be dismissed for failure to prosecute, ECF No. 244; Defendants' motion for a protective order regarding additional 30(b)(6) deposition topics, ECF No. 250; Defendants' motion in limine to

4

exclude the testimony of Plaintiffs' experts, ECF No. 273; and Defendants' motion to compel, ECF No. 274.  Pursuant to the schedule set by the Court, Defendants also currently anticipate filing a partially dispositive motion (related to the informed consent and damages claims), on or before January 23, 2023.  ECF No. 272.  Plaintiffs also just served a procedurally improper subpoena for the deposition of a Marine who previously conducted administrative functions in the RAR process.   Defendants anticipate motions practice on that issue as well.[1]  Defendants have also sought to hold the pending appeals in this matter in abeyance.

## ARGUMENT

If the Court does not immediately dismiss all claims, the Court should stay all other proceedings while the parties brief and the Court decides if the litigation is moot. A district court "has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997).  "A request for stay 'calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.'" *Ferrari v. N. Am. Credit Servs., Inc.*, 585 F. Supp. 3d 1334, 1336 (M.D. Fla. 2022) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936)).  In deciding whether to stay proceedings, courts consider "(1) whether a stay will unduly prejudice or tactically disadvantage the nonmoving party, (2) whether the moving party will suffer a hardship or inequity going forward, and (3) whether a stay will

---

[1] There are additional discovery issues percolating that could result in additional motions practice. For example, Plaintiffs recently agreed to complete supplemental searches and produce additional documents on or before January 27, 2023; if that production is inadequate, Defendants may need to file another motion to compel.

preserve judicial resources." *Garmendiz v. Capio Partners, LLC*, No. 8:17-cv-987, 2017 WL 3208621, at *2 (M.D. Fla. July 26, 2017).

Here, these factors weigh in favor of a stay of proceedings. Indeed, proceeding to address Plaintiffs' challenges to the military's COVID-19 vaccination regulations after the Government "commence[s] rescinding [those same] regulation[s] appears to be a very wasteful use of limited judicial resources." *Wyoming v. Zinke*, 871 F.3d 1133, 1142 (10th Cir. 2017). Even assuming that some aspect of Plaintiffs' claims might continue even after Section 525 is implemented, it "is clearly evident that the disputed matter" has "become a moving target." *Id.*

I.    **A Stay Promotes Judicial Economy.**

The Court should stay proceedings to promote judicial economy and to conserve the parties' and the Court's resources. Implementation of the NDAA resolves all or some of Plaintiffs' claims, rendering unnecessary—or at least substantially affecting—future litigation. Accordingly, Defendants propose that other litigation deadlines be stayed until after the Court resolves mootness, so that the parties can incorporate the mootness decision into any required discovery, briefing and trial preparation. A stay "will narrow the legal issues involved in this dispute and provide a more concrete setting for deciding any issues [that may or may not be] left on the table." *See Am. Petroliam Institute v. EPA*, 683 F.3d 382, 388 (D.C. Cir. 2012).

The preparation currently proceeding at breakneck speed is either entirely unnecessary or focused on the wrong issues. The parties have been undergoing discovery on a highly expedited basis, *see* Order, ECF No. 236, with a focus on what

the Court described as the "only contention that unifies the class" as "whether . . . before ordering Marines to accept a vaccination religiously repugnant (to the class) the Marine Corps asked the questions that RFRA demands and answered those questions in the manner . . . that RFRA demands", ECF No. 229, at 4, and what the Court described as "the only remedy foreseeably 'appropriate' [-] an order re-committing the Marines' applications [for a religious accommodation from the COVID-19 vaccination requirement] *en masse* to the Marine Corps for a determination in accord with the . . . requirements of RFRA," *id*. at 46. Defendants have separately argued that Section 525 and the rescission moot this case entirely, or at a minimum, would impact the basis for class certification and the existing injunctions. ECF No. 275. To the extent class members claim they have other lingering effects from the mandate and demand new class-wide relief, such relief has not been the subject of this litigation to date and is not the focus of the currently scheduled depositions, which therefore do nothing to advance Plaintiffs' claims. It is difficult to see how the parties can investigate and try such claims a few weeks from now. If any claims survive the NDAA as implemented, the remaining Plaintiffs will need to amend their complaint, including as to any potential class claims. And the five or more other pretrial motions currently pending or expected in this matter, *see supra* pp. 4-5, perhaps need not be resolved at all if a stay is implemented. Accordingly, the requested relief will further the orderly course of justice and preserve the Court's resources.

## II.   A Stay Would Prevent All Parties from Needlessly Wasting Resources.

Given that the NDAA clearly impacts the scope and nature of the issues to be

decided, proceeding with expedited discovery imposes a hardship on Defendants (as well as Plaintiffs).  The Eleventh Circuit has recognized the hardship that potentially unnecessary discovery imposes as it has "emphasized the responsibility of trial courts to manage pretrial discovery in order to avoid 'a massive waste of judicial and private resources' and a loss of society's 'confidence in the courts' ability to administer justice.'"  *See Perez v. Miami-Dade Cnty.*, 297 F.3d 1255, 1263 (11th Cir. 2002) (quoting *Johnson Enters. of Jacksonville, Inc. v. FPL Grp. Inc.*, 162 F.3d 1290, 1333 (11th Cir. 1998)); *see, e.g., Log Cabin Republicans v. United States*, 658 F.3d 1162, 1166–68 (9th Cir. 2011) (finding moot a challenge to the military's don't-ask-don't-tell policy when the policy was repealed by statute after trial).  Accordingly, there is a high likelihood that proceeding with discovery and litigation in this case will waste resources of all parties.

Even if some aspects of this case remain, the imminently scheduled depositions regarding a defunct policy are likely irrelevant and would needlessly consume the limited time and resources of high-ranking officials.[2]  Here, the scheduled depositions in this case include high-ranking military officials and one high-ranking Centers for Disease Control and Prevention ("CDC") official: Lieutenant General David A. Ottignon, Barbara Mahon, M.D. M.P.H., and Colonel Mark Reid.

LtGen Ottignon is the Commanding General of the Second Marine

---

[2] Certain high-ranking officials are not normally subject to deposition at all.  *See, e.g., In re United States*, 985 F.2d 510, 512 (11th Cir. 1993); *In re Paxton*, 53 F.4th 303, 309 (5th Cir. 2022); *Lederman v. N.Y.C. Dep't of Parks & Recreation*, 731 F.3d 199, 203–04 (2d Cir. 2013).  Those principles apply with the greatest force when official military duties in furtherance of the national defense are implicated.  *See Woodard v. Marsh*, 658 F.2d 989, 994 (5th Cir. 1981) (equitably balancing the impact on the military of "requir[ing] the Army to submit to discovery concerning" its decisions).

Expeditionary Force ("II MEF").[3]  Defendants identified him as the Marine Corps' witness on why vaccination of Plaintiffs is necessary to further the Marine Corps compelling interests, and as a witness on the RAR process as applied to the now-defunct vaccine requirement (in addition to another witness already deposed on the process).  LtGen Ottignon's testimony is now unlikely to be required in this case because Defendants should no longer need to prove a compelling interest furthered by the vaccination mandate that Plaintiffs challenge in this case.  Disturbing LtGen Ottignon's duties should not be required at this time given the need to first identify the remaining issues, if any, and then determine whether he is still a relevant witness.

Second, Dr. Barbara Mahon is a Senior Advisor in the Office of the Director for the CDC's National Center for Immunization and Respiratory Diseases and the Acting Director of the proposed Coronavirus and Other Respiratory Viruses Division. Defendants identified her as the primary expert witness on vaccine safety and efficacy, which was important to proving that the Marine Corps' compelling interests are furthered by the vaccination mandate and that no less restrictive means exist, and disproving allegations by Plaintiffs that the required vaccines are neither safe nor effective.  Now, however, the Marine Corps vaccination requirement at issue is no longer in place, and it is unlikely that Defendants will need to present a witness on this topic.  Accordingly, Dr. Mahon's other important duties to the American people

---

[3] A MEF is a combined-arms force consisting of ground, air, and logistic forces.  LtGen Ottignon's MEF is one of three in the Marine Corps and includes more than 47,000 Marines and Sailors.

should not be disturbed.[4]

Finally, Defendants have identified Col Mark Reid, who is currently serving as Director of the Ground Combat Element Division of Capabilities Development Directorate within Combat Development and Integration, as the likely 30(b)(6) witness on the revised Topic 1 — regarding the Marine Corps' now-defunct policies implementing the now-defunct vaccine requirement. Although Col Reid can be prepared to testify on this topic on February 7, 2023, preparation and deposition on these plainly moot topics will take Col Reid away from his duties.

The time and resource demands of depositions of these senior officials appear wholly unnecessary, and if those depositions are proven necessary, they should occur only after the Court has resolved the mootness issues and the parties have determined what issues remain.

### III.   A Brief Stay Would Benefit, Not Unduly Prejudice, Plaintiffs.

The Court must balance the benefits to the parties and for judicial economy against any undue prejudice that a stay may impose upon Plaintiffs. Plaintiffs will not be prejudiced by a short stay of proceedings because there is no threatened or imminent adverse action with respect to Plaintiffs or class members. *See* ECF Nos. 275-1, 275-3, 275-4 (describing Plaintiffs' status and the rescission memorandum).

Plaintiffs assert that some part of their claims might survive. But even if

---

[4] Dr. Mahon serves as the CDC lead on child respiratory illnesses this winter season, requiring frequent engagement with CDC leadership; the White House; state, local, territorial, and Tribal public health departments; and other public health partners. Dr. Mahon is also routinely called upon by the White House and public health leadership for advice and opinions on COVID-19.

Plaintiffs are correct, they cannot explain how a limited stay would prejudice them. A stay would ensure that any deposition and trial would be focused squarely on any remaining issues rather than on matters rendered moot by the implementation of Section 525. If anything, requiring Plaintiffs and military deponents to guess about the possible scope of the remaining claims may prejudice Plaintiffs' ability to obtain information from deponents relevant to any aspect of the case that might, hypothetically, remain. Finally, as a practical matter, the need to resolve the mootness issues, resolve all pre-trial motions, and possibly conduct supplemental discovery as to any remaining issues makes a February 27 trial impracticable or impossible.

## CONCLUSION

For the foregoing reasons, if the Court does not dismiss this action, the Court should vacate all pending deadlines—including those related to discovery and the February 2023 trial—and stay proceedings in this matter. If any aspect of the litigation remains following the Court's ruling on mootness, Defendants propose that the parties file a joint status report proposing next steps within thirty days of that ruling.

## LOCAL RULE 3.01(g) CERTIFICATION

On January 13, 2023, counsel for Defendants conferred via telephone with Plaintiffs' counsel, and by email on January 17, 2023; Plaintiffs oppose the relief sought in this motion, but agreed to an expedited briefing schedule whereby they file their opposition on the schedule set by the Court for mootness briefing, such that the opposition is due on or before January 25, 2023.

Dated: January 18, 2023                              Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney
General

ALEXANDER K. HAAS
Director, Federal Programs Branch

ANTHONY J. COPPOLINO
Deputy Director

*/s/ Amy E. Powell*
ANDREW E. CARMICHAEL
AMY E. POWELL
Senior Trial Counsel
MICHAEL P. CLENDENEN
LIAM C. HOLLAND
CATHERINE M. YANG
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel: (919) 856-4013
Email: amy.powell@usdoj.gov
*Counsel for Defendants*