## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

| | | |
|---|---|---|
| COLONEL FINANCIAL MANAGEMENT OFFICER, United States Marine Corps, *et al.*, for themselves and all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) | No. 8:22-cv-01275 SDM-TGW |
| v. | ) ) | |
| LLOYD AUSTIN, in his official capacity as Secretary of the United States Department of Defense, *et al.*, | ) ) ) ) | |
| Defendants. | ) ) | |

"*The defendant is free to return to his old ways. This, together with a public interest in having the legality of the practices settled, militates against a mootness conclusion.*"[1]

## PLAINTIFFS' COMBINED RESPONSE
## IN OPPOSITION TO DEFENDANTS' MOOTNESS AND STAY MOTIONS

Plaintiffs, pursuant to Local Rule 3.01(b) and the Court's Orders (Docs. 268, 277, 279), respond in opposition to Defendants' Motion to Dismiss for Mootness or for an Indicative Ruling to Dissolve Injunction (Doc. 275) and Third Motion for Stay (Doc. 276).[2] For the following reasons, the motions should be denied.

---

[1]   *United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953) (emphasis added).

[2]   Plaintiffs are allowed fifteen pages to respond to Defendants' mootness motion (Doc. 268), and 20 pages to respond to Defendants' stay motion, M.D. Fla. L.R. 3.01(b). Given the substantial conceptual overlap, Plaintiffs combined both responses in this single filing, using fewer than the combined thirty-five pages allowed for both responses.

## ARGUMENT

## I. NEITHER THE NDAA, THE SECRETARY'S RESCISSION, NOR THE MARINE CORPS'S IMPLEMENTATION MOOTS PLAINTIFFS' CLAIMS.

Defendants claim this action is moot and should be dismissed based on enactment of the James M. Inhofe National Defense Authorization Act for Fiscal Year 2023 (NDAA), the Secretary's rescission of the vaccine mandate pursuant to the NDAA, and the Marine Corps's orders implementing the rescission. (Doc. 275 at 1-11.) But these actions by the government are insufficient to moot Plaintiffs' individual and class claims. Defendants bear a "heavy burden" in making it "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012, 2019 (2017) (quoting *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs (TOC), Inc.*, 528 U.S. 167, 189 (2000)); *see also United States v. W.T. Grant Co.*, 345 U.S. 629, 653 (1953) (same); *Los Angeles Cnty. v. Lyons*, 440 U.S. 625, 631 (1979) ("The burden of demonstrating mootness is a heavy one." (cleaned up)). As the Supreme Court held in *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013), the government's burden to demonstrate Plaintiffs' claims are moot is "formidable" and requires absolute clarity that a return to prior unlawful ways will not occur. Defendants have failed to make that showing, expressly claim the authority to reinstate the illegal mandate, and explicitly contemplate reinstating the mandate. Plaintiffs' claims are not moot, and this Court should deny Defendants' motion to dismiss.

**A. Plaintiffs' Claims Are Not Moot Because the Secretary Retains the Authority to Reinstate the Challenged Mandate at Any Time.**

As the Supreme Court declared in *Tandon v. Newsom*, "even if the government withdraws or modifies a COVID restriction in the course of litigation, that does not necessarily moot the case." 141 S. Ct. 1294, 1297 (2021). "And, so long as a case is not moot, litigants otherwise entitled to [relief] remain entitled to such relief where applicants 'remain under a constant threat' that government officials will use their power to reinstate the challenged restrictions." *Id.* (emphasis added) (quoting *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 68 (2020)). The reason for this is simple: "Government actors have been moving the goalposts on pandemic-related sacrifices for months, adopting new benchmarks that always seem to put restoration of liberty just around the corner." *South Bay United Pentecostal Church v. Newsom*, 141 S. Ct. 716, 716 (2020) (Gorsuch, J., statement). Indeed, "officials with a track record of moving the goalposts retain authority to reinstate those heightened restrictions at any time." *Tandon*, 141 S. Ct. at 1297. In such a case, "the rescission of the policy does not render this case moot." *United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1537 n.* (2018).

Here, the Secretary retains the authority to reinstate a COVID-19 vaccination requirement at any moment. The NDAA required the Secretary to rescind the August 24 Memorandum, and he did. (Doc. 256-1 at 4 ("Not later than 30 days after the date of the enactment of this Act, the Secretary of Defense shall rescind the mandate that members of the Armed Forces be vaccinated against COVID-19 pursuant to the memorandum dated August 24, 2021 . . . ."); Doc. 275-1 at 8 ("Section 525 of the

NDAA for FY 2023 requires me to rescind the mandate that members of the Armed Forces be vaccinated against COVID-19, issued in my August 24, 2021 memorandum . . . . I hereby rescind *that memorandum*." (emphasis added)).) Absent from the NDAA is any removal of authority from the Secretary to reinstate the mandate or one like it. Absent from the Secretary's rescission is any commitment not to reinstate the mandate or one like it. These absences are fatal to Defendants' claims of mootness. *See, e.g.*, *Pashby v. Delia*, 709 F.3d 307, 316 (4th Cir. 2013) (holding that the "power to reassess [the challenged conduct] at any time" precludes a finding of mootness); *Deal v. Mercer Cnty. Bd. of Educ.*, 911 F.3d 183, 192 (4th Cir. 2018) ("[W]e have held that a defendant does not meet its burden of demonstrating mootness when it retains the authority to reassess the challenged policy at any time.").

Put simply, given the ever-changing nature of COVID-19 infringements on religious exercise, "there is no reason why [plaintiffs] should bear the risk of suffering further irreparable harm in the event of another [mandate]." *Roman Catholic Diocese*, 141 S. Ct. at 68–69. As Defendants' "reasoning goes, [the Court] should send the plaintiffs home with an invitation to return later if need be." *Id.* at 71 (Gorsuch, J., concurring).

> [I]f we dismissed this case, nothing would prevent the [Secretary] from reinstating the challenged restrictions tomorrow. And by the time a new challenge might work its way to us, he could just change them again. The [Secretary] has fought this case at every step of the way. To turn away religious [claimants] bringing meritorious claims just because the [Secretary] decided to hit the "off" switch in the shadow of our review would be, in my view, just another sacrifice of fundamental rights in the name of judicial modesty.

*Id.* at 71–72 (Gorsuch, J., concurring).

Defendants' retention of authority to reinstate the challenged mandate is not theoretical. Defendants have expressly held that door open in their assertions to the Court. (*See, e.g.*, Doc. 275 at 11 n.9 ("Any *future new vaccination requirement* would present wholly different burden, compelling-interest, and least restrictive means issues." (emphasis added)).) And Defendants trot out their long-rejected contention that their treatment of Marines under any such "future new vaccination requirement" would be "nonjusticiable." (Doc. 275 at 11 n.9.) So, worse than the government defendant in *Roman Catholic Diocese*, Defendants here urge the Court to send Plaintiffs home without relief and with an invitation to *never* return when future new vaccination requirements (even identical to those challenged here) are issued—because the Secretary's actions are immune from this Court's review "[i]n any event." (Doc. 275 at 11 n.9.) Thus, rather than admitting the error of their ways, Defendants' mootness contentions seem to be "more like '*don't let the door hit you on your way out.*'" *N'Diom v. Gonzales*, 442 F.3d 494, 500 (6th Cir. 2006) (Martin, J., concurring).

## B. Defendants' Continued Defense of the Unlawful Mandate Undermines Their Mootness Contentions.

A case is not moot where, as here, the Secretary "did not voluntarily cease the challenged activity because he felt [it] was improper," and "has at all times continued to argue vigorously that his actions were lawful." *Olagues v. Russoniello*, 770 F.2d 791, 795 (9th Cir. 1985); *Pierce v. Ducey*, No. CV-16-01538-PHX-NVW, 2019 WL 4750138, at *1 (D. Ariz. Sept. 30, 2019) ("A voluntary cessation joined with a threat to do it

again is the paradigm of unsuccessful blunting of power to adjudicate . . . ."), *id* at *5–6 ("The Court is not fooled."), *rev'd on other grounds*, 965 F.3d 1085 (9th Cir. 2020).

"[W]hen the government ceases a challenged policy without renouncing it, the voluntary cessation is less likely to moot the case." *Pierc*e, 2019 WL 4750138, at *5. In numerous instances, including in his mootness submissions to the Court, the Secretary has maintained that his August 24 Memorandum was lawful and constitutional. (*See* Doc. 275-1 at 9 (continuing to describe August 24 Memorandum as "a lawful order to receive a vaccine for COVID-19"); Doc. 275-1 at 8 (contending his mandate "preserve[d] the Department's compelling interest in mission accomplishment" and "military readiness, unit cohesion, good order and discipline, and the health and safety of a resilient Joint Force"); Doc. 118 at 4–9 (contending mandate did not violate RFRA).) Even after Congress enacted the NDAA, the Secretary maintained the lawfulness and appropriateness of his order and opposed the congressionally mandated rescission. Connor O'Brien, *Defense bill rolls back Pentagon's Covid vaccine mandate*, Politico (Dec. 6, 2022), https://www.politico.com/news/2022/12/06/ndaa-pentagon-coronavirus-vaccine-mandate-00072668 ("Secretary Austin has been very clear that he opposes the repeal of the vaccine policy . . . . He continues to believe that all Americans, including those in the armed forces, should be vaccinated and boosted for Covid-19.").

"[U[nder controlling law, a defendant's failure to acknowledge wrongdoing similarly suggests that cessation is motivated by a desire to avoid liability, and furthermore ensures that a live dispute between the parties remains." *Sheely v. MRI*

*Radiology Net., P.A.*, 505 F.3d 1173, 1187 (11th Cir. 2007). In such a case, the Secretary's constant refrain that his refusal to follow the commands of RFRA was never unlawful negates mootness. *See, e.g.*, *id.* (collecting cases showing failure to admit unlawful conduct and provide assurances of no return to prior practices does defeats mootness); *Jager v. Douglas Cnty. Sch. Dist.*, 862 F.2d 824, 833–34 (11th Cir. 1989) (holding matter not moot when defendant "never promised not to resume the prior practice" and "continue[d] to press . . . that the voluntarily ceased conduct should be declared constitutional"); *United States v. Bob Lawrence Realty, Inc.*, 474 F.2d 115, 127 (5th Cir. 1973) ("[I]n the face of appellant's own inability to recognize his transgressions of the Act, we decline to assume that he will not violate the Act in the future."); *Pierce*, 2019 WL 4750138, at *6 ("There is nothing in the parties' submissions or the record to demonstrate the Governor changed his mind about the merits of Plaintiff's claim.").

## C. Plaintiffs' Claims Are Not Moot Because They Are Capable of Repetition Yet Evading Review.

Plaintiffs' claims are also not moot because the case "fit[s] comfortably within the established exception to mootness for disputes capable of repetition, yet evading review." *Fed. Election Comm'n v. Wisconsin Right to Life, Inc.*, 551 U.S. 449, 462 (2007). "The exception applies where '(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again.'" *Id.* Both circumstances are present here.

First, the duration of Defendants' RFRA violations is too short to be fully litigated. *See Kingdomware Tech., Inc. v. United States*, 136 S. Ct. 1969, 1976 (2016) (two years is too short); *Turner v. Rogers*, 564 U.S. 431, 440 (2011) (12 months is too short); *First Nat. Bank of Boston v. Bellotti*, 435 U.S. 765, 774 (1978) (18 months is too short); *Southern Pac. Terminal Co. v. ICC*, 219 U.S. 498, 515 (1911) (two years is too short). Here, Plaintiffs commenced this action on October 15, 2021 (Doc. 1), nearly sixteen months ago. Despite obtaining a number of orders from the Court granting preliminary injunctive relief and an expedited discovery schedule, Plaintiffs have not been able to obtain final relief in that time. As the Eleventh Circuit has recognized, where a challenged action is too short in duration for a court to effectuate full relief, the plaintiff's challenge is not moot. *See, e.g.*, *Sierra Club v. Martin*, 110 F.3d 1551, 1554 (11th Cir. 1997); *Citizens for Police Accountability Pol. Comm. v. Browning*, 572 F.3d 1213, 1216 n.5 (11th Cir. 2009).

Second, there is no question that Plaintiffs and the Class reasonably maintain a fear that the challenged requirements will be reinstituted. Defendants' submissions demonstrate the well-founded nature of Plaintiffs' fears. (*See, e.g.*, Doc. 275 at 11 n.9 (explicitly discussing "future new vaccination requirement[s]" and claiming they would be "nonjusticiable.").) A plaintiff's claims remain live where—as here—the rescission of the challenged conduct or policy "only goes so far" and leaves the "waters muddied." *League of Women Voters of Florida, Inc. v. Lee*, No. 4:18cv251-MW/CAS, 2019 WL 11541284, at *4 (N.D. Fla. Aug. 22, 2019).

In the Eleventh Circuit, "courts are more likely to find that the challenged behavior is not reasonably likely to recur where it constituted an isolated incident, was unintentional, or was at least engaged in reluctantly." *Sheely*, 505 F.3d at 1184. Defendants' mandate was none of these. The rights violations resulting from Defendants' policy were not isolated incidents—the Marine Corps denied 3,736 out of 3,736 religious accommodation requests. (Doc. 275-5 at 3 of 26.) The record also reveals that the manner of implementing the mandate was not unintentional—it "enjoys at least two, even if no other, benefits to the Secretary and the Marine Corps: unmistakable clarity and unwavering consistency." (Doc. 229 at 2.) Defendants, "despite several adverse orders, continue[d] on a path determined months ago." (Doc. 122 at 19.) Finally, it is beyond peradventure that Defendants did not reluctantly engage in the challenged policy. To the contrary, Defendants "persistently and resolutely cling[] to the belief that their accustomed and unfettered command discretion need not yield – on the narrow and specific question of Free Exercise – to the statutory command of RFRA." (Doc. 229 at 16.)

"[W]e are more likely to find a reasonable expectation of recurrence when the challenged behavior constituted a 'continuing practice' or was otherwise deliberate." *Sheely*, 505 F.3d at 1184–85. That is precisely the scenario here. Defendants' policy was (and unwavering devotion to it is) ongoing (Doc. 275-1 at 9; Doc. 275 at 11 n.9) and always deliberate. (Doc. 122 at 19; Doc. 229 at 2, 16.) Defendants have failed to make it absolutely clear that their illegal acts are unlikely to recur again. Plaintiffs' claims are not moot.

**D. Plaintiffs' Challenge the Marine Corps's RAR Policy, Which Fails to Afford the Individualized Review Required by RFRA and Was Not Rescinded.**

Although this case was precipitated by the military vaccine mandate, Plaintiffs' First Amendment and RFRA claims are not directed at the vaccine mandate itself so much as the Marine Corps's religious accommodation policy as administered through the vaccine mandate.[3] "It is well established that if a plaintiff challenges both a specific agency action and the *policy* that underlies the action, the challenge to the policy is not necessarily mooted merely because the challenge to the particular agency action is moot." *City of Houston v. Dep't of Housing & Urban Dev.*, 24 F.3d 1421, 1428 (D.C. Cir. 1994); *Harris v. City of Houston*, 151 F.3d 186, 191 n.5 (5th Cir. 1998) (same); *NY Civil Liberties Union v. Grandeau*, 528 F.3d 122, 129 (2d Cir. 2008) (same); *Aulenback, Inc. v. Fed. Hwy. Admin.*, 103 F.3d 156, 164 (D.C. Cir. 1997) (same); *see also Harris v. Castro*, No. 1:14-cv-3110-TCB, 2015 WL 13547618, at *7 (N.D. Ga. Nov. 19, 2015) (challenges to underlying policy are not moot even if specific application of that policy in a given instance might otherwise be moot); *Flat Creek Transp., LLC v. Fed. Motor Carrier Safety Admin.*, No. 1:16-CV-876, 2017 WL 4172613, at *4 (M.D. Ala. Sept. 20, 2017) (same).

---

[3]   *Cf.* Doc. 229 at 5–6, 18 (discussing applicability of Marine Corps Order (MCO) 1730.9, *Accommodation of Religious Practices in the Marine Corps*); Doc. 255 at 9–13 (explaining Plaintiffs' need for a Marine Corps Rule 30(b)(6) witness on the issuance of MCO 1730.9 one month before Defendant Secretary's memorandum announcing the vaccine mandate.).

Plaintiffs have effectively challenged the entire process by which Defendants denied religious accommodations. Plaintiffs' claims are focused on the Marine Corps's inability to justify the religious accommodation policy it has already implemented and already applied to Plaintiffs (*i.e.*, across-the-board denials), and the resulting adverse actions against Plaintiffs (*i.e.*, discipline, threats of discipline, and administrative obstructions for resisting orders to vaccinate). In their Prayer for Relief, Plaintiffs specifically request a judgment declaring unlawful the "Federal COVID-19 Vaccine Mandate, *without sufficient provision for exemption or accommodation for sincerely held religious beliefs*, violates the First Amendment to the United States Constitution by imposing a substantial burden on Plaintiffs' sincerely held religious beliefs. (Doc. 198 at 96, ¶ B.ii (emphasis added); *id.*, ¶ B.iii (praying for same declaration under RFRA).)

Defendants' policy for reviewing and denying the religious accommodations requested by Plaintiffs and the Class, which Judge O'Connor described as "theater," *U.S. Navy SEALS 1-26 v. Biden*, 578 F. Supp. 3d 822, 826 (N.D. Tex. 2022), and this Court said lacks "a wholesome hypothesis" for "inevitable denial" (Doc. 229 at 2–3), remains the same. To be sure, the Secretary's rescission expressly retains the religious accommodation policy going forward. (*See* Doc. 275-1 at 9 ("Components shall continue to apply the uniform standards set forth in DoD Instruction 1300.17, 'Religious Liberty in the Military Service.'") And this Court already found the policy violative of RFRA. (Doc. 229 at 3 ("the authority rendering this uniform course of rejection is highly unlikely to successfully demonstrate the *bona fides* of *the process* that produced this monolithic series of rejections." (emphasis added)), *id.* (noting that "a

11

reasonable jurist" could conclude that Plaintiffs and the Class "never received the benefit *of the process* commanded by RFRA" (emphasis added)).) Plaintiffs "challenge [that] ongoing underlying policy rather than isolated [DOD] action." *Rohas v. Mukasey*, No. 08-0064-WS-M, 2008 WL 2705358, at *2 (S.D. Ala. July 7, 2008) (cleaned up). Thus, "[t]he specific issue that unifies the class[—]the organized, purposeful, and systemic failure to resolve the requests for a religious accommodation in accord with the burden imposed by RFRA" (Doc. 229 at 23)—was not resolved or mooted by rescission of the vaccine mandate. (*See also* Doc. 43, Tr., at 12 (noting Plaintiffs' RFRA and First Amendment challenges relate to accommodation process).)

### E. Plaintiffs' and the Class's Claims Are Not Moot Because the Secretary's Rescission of the Mandate Is Only Speculative as to the Relief Plaintiffs and the Class Will Receive.

"It is well settled that a defendants' voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 288 (1982). "Such *abandonment* is an important factor bearing on whether a court should exercise its power to enjoying the defendant from renewing the practice. *Id.* (emphasis added). And where—as here—Defendants' challenged conduct is a continuing practice, "courts will not assume it has been *abandoned* without clear proof." *United States v. Oregon State Med. Soc'y*, 343 U.S. 326, 333 (1952) (emphasis added). Here, the relief sought by Plaintiffs and the Class includes a declaratory judgment and permanent injunction preventing Defendants from taking "any actions arising from or connected to Plaintiffs' religious exemption and accommodation requests, including current and ongoing punishment

and threatening to dishonorably discharge, court martial, and impose other life-altering disciplinary actions on Plaintiffs for failure to accept a COVID-19 vaccine that violates their sincerely held religious beliefs." (Doc. 198 at 95.) Defendants have not demonstrated that the mandate rescission and limited implementation will effect all of the relief sought.

The Secretary's rescission states only that Plaintiffs and Class members cannot be separated "solely on the basis of their refusal to receive the COVID-19 vaccination if they sought an accommodation on religious . . . grounds," that the "Military Departments will update the records of such individuals to remove any adverse actions solely associated with denials of such requests," and that the review of RARs will cease. (Doc. 275-1 at 8.) MARADMIN 025/23 states only that administrative separation processing will cease, adverse administrative action proceedings will cease, and RAR reviews will cease. (Doc. 275-1 at 12.) But Plaintiffs and Class members who have suffered other adverse and retaliatory effects—*e.g.*, holds and cancelations of training, promotion, and station change, coerced elections to Inactive Ready Reserve (IRR), hidden command comments in permanent file, etc. (*see* Declaration of Daniel J. Schmid filed contemporaneously herewith)—are promised only that "[f]urther implementation guidance will be provided via MARADMIN" (Doc. 275-1 at 13), or that remediation of certain adverse actions "is expected" (Doc. 275-1 at 6, ¶ 15). Moreover, putative class members who were separated after denial of their RAR appeals but before the Court's preliminary injunction—three officers and an undetermined number of enlisted Marines (Doc. 275-5 at 7–9 of 26)—are given

13

nothing and promised nothing. Undefined, incomplete, future "guidance," even if somehow "expected," is plainly insufficient to carry the formidable burden imposed on Defendants to make it absolutely clear that they have *abandoned* their unlawful ways.

### F. Even if Some Claims for Preliminary Injunctive Relief Were Moot, Plaintiffs' Claims for a Permanent Injunction and Declaratory Relief Are Not Moot.

Plaintiffs' claims for declaratory relief and a permanent injunction preventing Defendants from reinstating the previous mandate (or some modification thereof) are not moot. Indeed, when claims for permanent injunctive relief pend, as here, "a government ordinarily cannot establish mootness just by promising to sin no more." *Strawser v. Strange*, 190 F. Supp. 3d 1078, 1081 (S.D. Ala. 2016) (cleaned up). As the Seventh Circuit eloquently stated, "[t]he court may consider how easily former practices might be resumed at any time in determining the appropriateness of injunctive relief." *United Air Lines, Inc. v. Air Line Pilots Ass'n Int'l.*, 563 F.3d 257, 275 (7th Cir. 2009); *see also Scotch Whisky Ass'n v. Barton Distilling Co.*, 489 F.2d 809, 813 (7th Cir. 1973) (holding district court did not abuse its discretion when entering injunction against unlawful conduct that "has ceased before the trial has taken place"). Indeed,

> While the preliminary injunction diminished the *immediate* threat of prosecution, it is important not to confuse the threat of enforcement that existed relative to Hatchett's immediate advocacy, with the broader threat of enforcement that must be considered by this Court with respect to Hatchett's requests for declaratory and permanent injunctive relief.

*Hatchett v. Barland*, 816 F. Supp. 2d 583, 593 (E.D. Wis. 2011).

And, though preliminary injunctive relief claims may become moot in some circumstances, "[t]he case itself is not moot [where] a request for a permanent injunction was pending" and a plaintiff is subject to potential sanction for similar conduct in the future. *Certified Grocers of Ill., Inc. v. Produce, Fresh, & Frozen Fruits & Vegetables, Fish, Butter, Eggs, Cheese, Poultry, Florist, Nursery, Landscaping & Allied Emps., Drivers, Chauffeurs, Warehouseman & Helpers Union, Chicago & Vicinity, Ill., Local 703*, 816 F.2d 329, 331 (7th Cir. 1987). Claims for a permanent injunction are not moot where—as here—"prior patterns of contradictory behavior left the court with no assurances that the alleged constitutional violations would not recur." *Brown v. Colegio De Abagados de Puerto Rico*, 613 F.3d 44, 48 (1st Cir. 2010). That is precisely what the district court did in *Harvest Rock Church, Inc. v. Newsom*, No. 2:20-cv-6414, Doc. 95 (C.D. Cal. May 14, 2021)—issue a permanent injunction against restrictions that had been rescinded but could be reinstated at any time.

Simply put, "[w]hen a defendant corrects the alleged infirmity after suit has been filed, a court may nevertheless grant injunctive relief unless the defendant shows that [even] absent an injunction, *the institution would not return to its former, unconstitutionally deficient state.*" *LaMarca v. Turner*, 995 F.2d 1526, 1541 (11th Cir. 1993) (emphasis added); *see also Walker v. Inch*, No. 3:17cv206-MCR-HTC, 2019 WL 3400720, at *7 (N.D. Fla. May 10, 2019) (same). Here, Defendants have plainly not demonstrated that a return to the deficient administration of the religious accommodation policy will not happen. In fact, Defendants have promised the opposite.

15

Plaintiffs' and the Class's claims for declaratory relief are also not moot because Congress authorized declaratory judgments for this precise scenario. Indeed, "Congress plainly intended declaratory relief to act as an alternative to the strong medicine of the injunction" where—as here—"injunctive relief [might] be unavailable." *Steffel v. Thompson*, 415 U.S. 452, 466 (1974). Moreover, "a federal district court has the duty to decide the appropriateness and merits of the declaratory request irrespective of its conclusion as to the propriety of the issuance of the injunction." *Zwicker v. Koota*, 389 U.S. 241, 254 (1967). *See also Washington v. Garmire*, 317 F. Supp. 1384, 1388 (S.D. Fla. 1970) ("Although injunctive relief is unavailable to the plaintiffs, the Court is compelled to consider separately whether plaintiffs are entitled to declaratory relief."). Thus, regardless of whether any claims for injunctive relief are moot, Plaintiffs have pleaded and requested declaratory relief. (Doc. 198 at 95–96.) Those claims, which the Court has a duty to adjudicate independently, are not moot.

### G. Plaintiffs' As-Applied Claims Are Not Moot.

An as-applied challenge "examine[s] the facts of the case before [it] exclusively, and not any set of hypothetical facts under which the statute might be constitutional." *Hegwood v. City of Eau Claire*, 676 F.3d 600, 603 (7th Cir. 2012); *see also Green v. City of Raleigh*, 523 F.3d 293, 300 (4th Cir. 2008) ("The amendments to the picketing ordinances here do not moot Green's as-applied challenges to the original ordinances."); *Nextel West Corp. v. Unity Twp.*, 282 F.3d 257, 263 (3d Cir. 2002) ("although facial challenges were mooted by the amendment, the as-applied

16

challenges were not moot because relief was still available for these claims, which the amendment had not redressed"), *id.* at 263 n.5 (noting that declaratory and injunctive relief still available for as-applied challenges even after amendment to the challenged regulation).

Abundant precedent in the Eleventh Circuit requires a finding that Plaintiffs' as-applied challenges are not moot. First, and importantly, that the conduct at issue in Plaintiffs' as-applied challenges is (purportedly) complete does not render those claims moot. This is so because as-applied challenges are "backward looking." *Oakes v. Collier Cnty.*, No. 2:20-cv-568-FtM-38NPM, 2020 WL 6591194, at *4 (M.D. Fla. Nov. 11, 2020). And, as the Supreme Court has recognized, though the circumstances giving rise to a facial challenge may be "long over," adjudication of a plaintiff's as-applied challenge is not moot where adjudication will have the effect of "simplifying future challenges" and permit an understanding of the constitutional limitations of the challenged conduct. *Storer v. Brown*, 415 U.S. 724, 738 n.8 (1974); *Citizens for Police Accountability Pol. Comm. v. Browning*, 572 F.3d 1213, 1216 n.5 (11th Cir. 2009) (same).

Second, as-applied challenges to government action are not moot when plaintiffs remain subject to similar action in the future. "A change in law, however, will not always moot a constitutional claim." *Chabad of Nova, Inc. v. City of Cooper City*, No. 07-60738-CIV-ALTONAGA/Turnoff, 2007 WL 9700874, at *8 (S.D. Fla. Oct. 15, 2007). And, when a change in the challenged law does not remove the concerns for future application, the cases in not moot. *Id.* at *9; *see also Parker v. Judicial Inquiry Comm'n of Ala.*, No. 2:16-CV-442-WKW, 2017 WL 3820958, at *8 (M.D. Ala. Aug. 31, 2017)

(holding government actions cannot moot as-applied challenge where plaintiff remains subject to the authority under which offending government action was instituted); *D'Acquisto v. Washington*, 750 F. Supp. 342, 346 (N.D. Ill. 1990) ("To hold that the claims of plaintiffs and those similarly situated were mooted by completion of the procedures they challenge would effectively eliminate the possibility of any 'as applied' challenge to those procedures. Dismissal of this action on grounds of mootness would be inappropriate under the circumstance.").

Here, Defendants have expressly held that door open in their assertions to the Court. (*See, e.g.*, Doc. 275 at 11 n.9 ("Any *future new vaccination requirement* would present wholly different burden, compelling-interest, and least-restrictive-means issues." (emphasis added).) And, as explained by the Eleventh Circuit, "we are more likely to find a reasonable expectation of recurrence when the challenged behavior constituted a continuing practice or was otherwise deliberate." *Sheely*, 505 F.3d at 1184–85. Defendants' behavior was both. (*See* Pt. I.C, *supra*.) Plaintiffs' as-applied challenges are not moot.

## II. NEITHER DECERTIFICATION OF THE CLASS NOR DISSOLUTION OF THE INJUNCTIONS IS APPROPRIATE BECAUSE DEFENDANTS HAVE NOT DEMONSTRATED THAT THE CLAIMS OF EACH CLASS MEMBER ARE MOOT.

### A. Defendants Have Failed to Demonstrate That the Claims of Each Class Member Are Moot.

The Court should reject Defendants contention that, "even if the case were not entirely moot," the Court should still decertify the class and dissolve the injunctions. (Doc. 275 at 12.) First, Defendants have not carried their burden to demonstrate that

any class claims are moot because the Secretary retains the authority to reinstate his mandate at any time, the claims are capable of repetition yet evading review, Plaintiffs' claims for permanent injunctive relief and declaratory relief against the underlying policy are not moot, and Plaintiffs' as-applied challenges are not moot.

Second, in order for a class action to be rendered moot, the claims of *every* member of the class must be moot. As the Seventh Circuit has succinctly stated, "[w]hen the claims of *all* of the class members are moot, the action is moot." *Davis v. Ball Memorial Hosp. Ass'n, Inc.*, 753 F.2d 1410, 1416 (7th Cir. 1985) (emphasis added). Binding precedent in this Circuit likewise compels this conclusion. *See, e.g.*, *Sosna v. Iowa*, 419 U.S. 393, 399 (1975) (noting that a class action is not mooted by mooting of named plaintiffs' claims because, when class certified, "class members acquired a legal status separate and apart from the interest of the named plaintiff"); *Stein v. Buccaneers Ltd. P'ship*, 772 F.3d 698, 704 (11th Cir. 2014) ("Even if the individual claims are somehow deemed moot, the class claims remain live, and the named plaintiffs retain the ability to pursue them."); *see also Zeidman v. J. Ray McDermot & Co.*, 651 F.2d 1030, (5th Cir. 1981).[4] Thus, even if named Plaintiffs' claims were moot, which they are not, the class claims they pursue would not be. *See, e.g.*, *Castorela v. Mellon*, 754 F. Supp. 191, (M.D. Fla. 1990) ("One exception to the mootness doctrine which allows a court to retain

---

[4]   The Fifth Circuit's decision in *Zeidman* is binding precedent. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

jurisdiction over a cause occurs when the class has been certified in a class action suit prior to the representative plaintiff's claims becoming moot.").

**B.  Dissolution of the Injunction Is Inappropriate.**

Defendants contend that the preliminary injunction should be dissolved because the case is moot, and no Plaintiffs or Class members can "show any current or future burden on their religious beliefs resulting from the challenged policy." (Doc. 275 at 15.) The Court should likewise reject this contention.

Here, the Court certified a class of Marines as follows:

> All persons on active duty or in the ready reserve (1) who serve under the command of the Marine Corps, (2) who were affirmed by a chaplain as harboring a sincere religious objection, (3) who timely submitted an initial request for a religious accommodation, (4) who were denied the initial request, (5) who timely appealed the denial of the initial request, and (6) who were denied or will be denied after appeal.

(Doc. 229 at 47.)

And the Court issued a preliminary injunction, enjoining Defendants

> (1) from enforcing against a member of the class any order, requirement, or rule to accept COVID-19 vaccination, (2) from separating or discharging from the Marine Corps a member of the class who declines COVID-19 vaccination, and (3) from retaliating against a member of the class for the member's asserting statutory rights under RFRA.

(Doc. 229 at 47.)

What Defendants fail to account for is the continuing need for injunctive relief prohibiting Defendants "from retaliating against a member of the class for the members' asserting statutory rights under RFRA." (Doc. 229 at 47.) Neither the NDAA (Doc. 256-1 at 4), the Secretary's recission memorandum (Doc. 275-1 at 8-9),

nor the Marine Corps's MARADMIN 025/23 (Doc. 275-1 at 11-13) says anything to quell retaliation against Plaintiffs and Class members after the purported present stoppage of their separations and "expected" removals of certain black marks in their records. That silence offers little comfort to Plaintiffs and Class members who have experienced retaliation since the institution of the mandate.

"While past wrongs do not in themselves amount to that real and immediate threat of injury . . . a plaintiff's exposure to illegal conduct in the past is nonetheless evidence bearing on whether there is a real and immediate threat of repeated injury." *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1336 (11th Cir. 2013) (cleaned up). And, as this Court has previously and aptly noted, Defendants' "past conduct is prologue to a real and immediate threat of repeated injury." *Lavandeira v. Tampa Police Dept.*, No. 8:20-cv-169-T-23CPT, 2021 WL 1541716, at *5 (M.D. Fla. Aug. 20, 2021) (Merryday, J.). Plaintiffs and the Class retain their need for this Court's injunctive relief and protection from retaliation by Defendants who have already demonstrated their capabilities.

As Defendants demonstrated in their treatment of Navy Commander, the past is instructive of the need for continuing injunctive relief. As the Court will recall, upon seeking a preliminary injunction, Navy Commander was subjected to a last-minute, un-cross-examined, and self-serving affidavit from Defendants claiming other reasons for an immediate need for his removal—purportedly apart from his RAR request. (Doc. 111 at 12 n.3.) And, despite his impeccable, impressive, and unblemished 17-year record of service in the Navy, Defendants displayed a "sudden eagerness to

remove Navy Commander from command of a destroyer result[ing] from other neutral factors and not from a retaliatory animus toward Navy Commander's legally protected pursuit of relief that Congress through RFRA secures in federal court for every service member." (Doc. 122 at 2.) As this Court made clear, the contents of the affidavit purporting to provide a "handy" (Doc. 133 at 4) basis for Defendants' retaliatory removal of Navy Commander "arriv[ed] suddenly after seventeen stellar years of service by Navy Commander and after, to say the least, tense exchanges with his superior officer about vaccination and about his RFRA claim." (Doc. 122 at 11–12.) Though provided with the opportunity to support their handy and sudden claims, "the March 10 hearing resulted in the defendants offering no testimony, live or otherwise, to support the claim that the Navy's alleged loss of confidence is bona fide and not retaliatory." (Doc. 133 at 5.) The reason for that is simple: Defendants' treatment of Navy Commander was pretextual, retaliatory, and a harbinger of treatment for other Plaintiffs and Class members who dare continue their pursuits against Defendants' policies. "History but repeats itself," *Farrington v. Tennessee*, 95 U.S. 679, 683 (1877), and the current injunction should remain in place to protect Plaintiffs and the Class from retaliation pending final adjudication of their claims.

## III. STAYING THE PROCEEDINGS BEYOND THE COURT'S CURRENT TEMPORARY STAY IS UNNECESSARY.

Defendants' Third Motion for Stay largely relies on their mootness contentions. (*See* Doc. 276 at 6–11.) Indeed, Defendants' stay motion suggests the Court "should stay all other proceedings while the parties brief and the Court decides if the litigation

22

is moot." (Doc. 276 at 5.) As demonstrated in Parts I and II, *supra*, the case is not moot, so Defendants' stay motion should fail for the same reasons. And, pursuant to the Court's Order (Doc. 277), the matter is temporarily stayed pending a determination of mootness anyway. (Doc. 277 at 2.) There is, essentially, nothing more for the Court to stay. Indeed, discovery should resume in advance of a re-set trial, though with additional focus on Defendants' current and "expected" implementation of the mandate rescission, to determine the full extent of individual Plaintiff and Class relief still required to ameliorate the effects of Defendants' administration of the religious accommodation process through the vaccine mandate.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motions, leave the preliminary injunctions and class certification undisturbed, and re-set the trial for prompt adjudication of Plaintiffs' claims for declaratory relief and a permanent injunction.

/s/ Daniel J. Schmid
Mathew D. Staver
Horatio G. Mihet
Roger K. Gannam
Daniel J. Schmid*
Richard L. Mast*
LIBERTY COUNSEL
P.O. Box 540774
Orlando, FL 32854
(407) 875-1776
court@LC.org
hmihet@lc.org
rgannam@lc.org
dschmid@lc.org
rmast@lc.org
*Admitted specially

**Attorneys for Plaintiffs**