## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| COLONEL FINANCIAL MANAGEMENT OFFICER, United States Marine Corps, *et al.*, for themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LLOYD AUSTIN, in his official capacity as Secretary of the United States Department of Defense, *et al.*,<br><br>Defendants. | No. 8:22-cv-01275 SDM-TGW |

## DECLARATION OF DANIEL J. SCHMID

I, Daniel J. Schmid, do hereby declare as follows:

1. I am over the age of 18 years, have personal knowledge of the matters set forth in this Declaration or base this Declaration upon information that has been provided to me in my duties as Counsel for Plaintiffs and Class Counsel, and if called upon to testify to them, I would and could do so competently.

2. I am Counsel for Plaintiffs and Class Counsel in the above-captioned cause, have personally spoken to the Named Plaintiffs referenced herein, and have reviewed documents submitted by the Named Plaintiffs herein concerning the matters discussed.

3. I submit this Declaration in support of Plaintiffs' Combined Response in Opposition to Defendants' Mootness and Stay Motions, and in response to the Declarations of Mr. Chad W. Schrecengost, Deputy Director of Manpower

Management Division, Manpower and Reserve Affairs for the United States Marine Corps (Doc. 275-1); Captain Mery-Angela Sanabria Katson, Branch Head Enlisted Plans and Policy (Doc. 275-2); Colonel Mark Jimison, Branch Head, Reserve Affairs Management Branch (Doc. 275-3), and Captain Edward Pingel (Doc. 275-4).

4. As to Plaintiff First Lieutenant, Deputy Director Schrecengost states that First Lieutenant was placed on the Officer Disciplinary Notebook ("ODN") for his RAR and objections to COVID-19 vaccination and processed for administrative separation. (Doc. 275-1 at 2, ¶ 5.) First Lieutenant is still listed on the ODN, still has adverse material included on his Fitness Reports, still has Reports of Misconduct on his military record, and other negative material associated with his military record on his Master Brief Sheet. All of these affect his overall standing as an officer in the United States Marine Corps.

5. As to Plaintiff Gunnery Sergeant, Deputy Director Schrecengost states that Gunnery Sergeant's military record "does not contain any adverse material related to the COVID-19 vaccine mandate" and that Gunnery Sergeant remains on activity duty. (Doc. 275-1 at 3, ¶ 4.) Gunnery Sergeant has received several negative Fitness Reports as a result of his RAR and remains on a promotion hold due to his RAR request. Gunnery Sergeant is still marked as "partially medically ready" on the Marine Corps Individual Medical Record System, which inhibits his ability for any permanent change of station or training exercises necessary for his promotion.

6. As to Plaintiff Captain 3, Deputy Director Schrecengost states that his military record "does not contain any adverse material related to the COVID-19

2

vaccine mandate" and that Captain 3 remains on activity duty. (Doc. 275-1 at 3, ¶ 9.) Captain 3 remains removed from Expeditionary Warfare School and has been held in historical archives (internally referred to as "the dungeon") as a result of his RAR. Captain 3 has been informed that he might be able to resume his schooling at Expeditionary Warfare School, but that will depend on the future MARADMINS. Captain 3's monitor has informed him that his command assignment is still awaiting "further guidance" concerning what to do with Captain 3 and those who sought RARs, particularly concerning the ability or potential for promotions that would have been – but could not be – earned as a result of the holds placed on them by the Marine Corps.

7. As to Plaintiff Midshipman 2/C, Captain Edward Pingel states that she was not subject to any adverse administrative action as a result of her refusal to take the COVID-19 vaccine. (Doc. 275-4 at ¶ 3.) Midshipman 2/C is still awaiting information concerning whether she will be permitted to attend Officer Candidate School, as she was scheduled to attend prior to her RAR. She has not been provided any confirmation that her status has changed whatsoever since the NDAA, the Secretary's rescission of the August 24 Memorandum, or any MARADMIN.

8. As to Plaintiff Reserve Lieutenant Colonel, Colonel Jimison states that Reserve Lieutenant Colonel "voluntarily" transferred herself to the Inactive Ready Reserve (IRR) and that it is "expected" that nothing will prevent her from returning to active duty once the Marine Corps implements additional guidance. (Doc. 275-3 at ¶ 4.) This is false. As a result of the denial of her RAR, Reserve Lieutenant Colonel

was told that she had the "choice" of being administratively separated or being transferred to IRR. (*See* Doc. 198, Verified Compl., ¶ 27.) This was no choice at all, and the Marine Corps's characterization of her transfer to the IRR is inaccurate. Reserve Lieutenant Colonel's status leaves her unable to acquire points, wages, time, or other credits towards retirement or promotion.

9. As to Plaintiff Captain 2, Deputy Director Schrecengost states that he was placed on the ODN because of his refusal to accept COVID-19 vaccination but does not have any adverse materials on his military record. (Doc. 275-1 at 3, ¶ 8.) As a result of his ODN status and the denial of his RAR, Captain 2 was unable to be considered a graduate of Expeditionary Warfare School, and his status has not been reinstated. Captain 2 is unable to request permanent change of station, and has been held in limbo status for over 10 months. Captain 2 has been told that his command and monitor are awaiting further MARADMIN guidance concerning what will occur with his status.

10. As to Plaintiff Second Lieutenant, Deputy Director Schrecengost states that his military record contains no adverse materials related to the COVID-19 mandate and remains on active duty. (Doc. 275-1 at 2, ¶ 3.) Second Lieutenant is waiting to hear what his status will be for reinstatement to The Basic School, and that his reinstatement is contingent upon the release of further MARADMINS.

11. As to Plaintiff Lance Corporal 3, Colonel Jimison states that Lance Corporal 3 has not been subject to any administrative action and that his military record does not contain any adverse material. (Doc. 275-3 at ¶ 3.) Lance Corporal 3

4

was removed from his current platoon and assigned (and remains) in a platoon of Marines who are considered nondeployable due to injuries, who are being removed from the Marine Corps for unsatisfactory conduct, or who are awaiting separation at the end of their current contract. Lance Corporal 3 has not been permitted to attend required training in certain areas and is limited in his ability to acquire necessary training.

12. As to Plaintiff Lieutenant Colonel 1, Colonel Jimison states that his military record does not contain any adverse materials as a result of the COVID-19 vaccine mandate and the denial of his RAR. (Doc. 275-3 at ¶ 6.) This is false and ignores the treatment Lieutenant Colonel 1 has received as a result of the denial of his RAR. Lieutenant Colonel 1 was removed from his position as Executive Officer of his squadron after denial of his RAR and before submission of his appeal. Lieutenant Colonel 1's record was marked with the XA code, and he was set to be placed on the ODN until the Court's preliminary injunction. As of October 1, 2022, Lieutenant Colonel 1 achieved the status to request normal retirement with a requested date of December 1, 2023. That request was initially approved, but on October 10, 2022, Lieutenant Colonel 1 was informed that his retirement was "retracted" by Headquarters Marine Corps because of his XA coding. As such, Lieutenant Colonel 1 has been placed in a state of limbo where the Marine Corps will not act on anything relating to his career as a result of his RAR request and the Marine Corps' denial of same.

13. As to Plaintiff Colonel Financial Management Officer, Deputy Director Schrecengost states that he was placed on the ODN "[s]olely as a result of his failure to be vaccinated," and that he was in the process of being required to show cause why he should not be separated from the Marine Corps. (Doc. 275-1 at ¶ 6.) Deputy Director Schrecengost admits that it was only this Court's preliminary injunction that caused that separation proceeding to be halted. (*Id.*) Deputy Director Schrecengost states that Colonel Financial Management Officer has no adverse materials in his military record. (*Id.*) This is incorrect. In the summer of 2022, Colonel Financial Management Officer received a Report of Misconduct as a result of his RAR request. He has received no information concerning removal or rescission of that ROM. Additionally, Colonel Financial Management Officer was informed that there is a system named Command Individual Risk and Resiliency Assessment System (CIRRAS), which is available and visible only to commanders, and contains personal observations, comments, and concerns on Marines. The comments could include things like marital problems, drinking problems, suicidal ideation, people who vigorously fought for RARs related to vaccination, or anything else. Theoretically, the information would be used in something called the Force Protection Counsel (FPC). According to MARADMIN 464/20, CIRRAS:

> provides commanders a single, standardized web-based tool to enable proactive identification and assessment of individual risk and resiliency factors. The FPC process shall remain a commander's responsibility while CIRRAS introduces consistency, standardization, and a communication platform for FPC relevant data

And:

6

> The FPC process optimizes the potential of all Marines and attached Sailors by identifying individual risk factors and applying holistic risk management measures to promote protective factors and enhance individual and unit readiness.  In the past, commanders lacked access to integrated, real-time, objective, and holistic assessment of their Marines' overall readiness from a single source, to include medical, mental health, and command input.  The lack of this vital information often resulted in adverse outcomes, including loss of life.

MARADMIN 464/20 (Aug. 12, 2020), https://www.marines.mil/News/Messages/Messages-Display/Article/2310545/announcement-and-implementation-of-the-command-individual-risk-and-resiliency-a/. The CIRRAS record follows a Marine from command to command and is never visible to the Marine. There is no way for Colonel Financial Management Officer to know what information about Colonel Financial Management Officer is in the system, has been removed from the system, or even can be removed (or how to seek removal if so). Neither the NDAA, the Secretary's rescission, nor the implementing MARADMINS address whether RAR-related information can or will remain in the CIRRAS system. Without the ability to know what RAR-related comments or information may be in the system, and without any official implementing guidance from the Marine Corps, there is no way to know what kind of RAR-related retaliation the Marine Corps may effect against Colonel Financial Management Officer (or other Marines) through unaccountable use of the CIRRAS system.

I declare under penalty of perjury under the laws of the United States and the State of Florida that the foregoing statements are true and correct to the best of my knowledge.

Dated this February 1, 2023.

/s/ Daniel J. Schmid
Daniel J. Schmid
*Counsel for Plaintiffs and Class Counsel*