## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

|  |  |
|---|---|
| **COLONEL FINANCIAL MANAGEMENT OFFICER**, *et al.*,<br><br>　　　　　　　　Plaintiffs,<br><br>　　v.<br><br>**LLOYD AUSTIN,** in his official capacity as Secretary of the United States Department of Defense, *et al.*,<br><br>　　　　　　　　Defendants. | Case No. 8:22-cv-1275 (SDM/TGW) |

## SUPPLEMENTAL MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Defendants' motion to dismiss was accompanied by declarations that established the rescission of the vaccine requirement as applied to the named Plaintiffs. The declarations were made by government officials with access to official records and information in their official positions. *See* ECF Nos. 275-1, 275-2, 275-3, 275-4. In response, Plaintiffs submitted a declaration of counsel reporting hearsay that purports to contradict some of the information provided by Defendants and offers new information regarding purported injuries to Plaintiffs. *See generally* Declaration of Daniel Schmid, ECF No. 281-1 ("Schmid Decl."). The allegations in the Schmid Declaration are not supported by personal knowledge and (1) do not foreclose a finding of mootness; (2) highlight the need to decertify the class; and (3) are out-of-date, incomplete or inaccurate in many respects.

### I.    The Schmid Declaration Does Not Undermine a Finding of Mootness.

Defendants previously explained that this matter is moot because, following the rescission of the mandate, the challenged policy is wholly rescinded and there is no

further effective relief the Court can order.  *See* ECF No. 275, at 8-12.  Plaintiffs argue that they "have suffered other adverse and retaliatory effects," citing to the Schmid Declaration for the proposition that they have been subject to "holds and cancelations of training, promotion, and station change, coerced elections to Inactive Ready Reserve (IRR), hidden command comments in permanent file, etc."  Pls.' Br. at 13, ECF No. 281.[1]  Even if these claims were accurate, these spotty allegations as to a handful of named Plaintiffs would not undermine a finding of overall mootness.  The challenged policy is rescinded, and Plaintiffs do not attempt to explain what further relief the Court could order as to these alleged injuries.

Moreover, many of the alleged injuries do not stem from the mandate or the religious accommodation request ("RAR") process, but from COVID mitigation policies or assignment decisions not challenged in this action.  For example, a DoD-wide policy previously limited travel of personnel who were not fully vaccinated to "mission critical" travel.  *See, e.g.*, Sept. 24, 2021 Mem., ECF No. 163-6 (Pls.' Ex. 28 at TRO hearing).  This former policy was not dependent on the mandate and was not impacted by the RAR process.  It initially limited travel of unvaccinated individuals (regardless of the reason they were unvaccinated), to include station changes, travel for training, and other operational decisions now identified by Plaintiff.  Force Health Protection Guidance has been issued and updated multiple times over the course of this litigation, and the current version no longer differentiates between vaccinated and

---

[1] "IRR" stands for "Individual Ready Reserve."  *See generally* https://www.marforres.marines.mil/Units/Force-Headquarters-Group/Marine-Corps-Individual-Reserve-Support-Activity/Individual-Ready-Reserve/.

unvaccinated individuals for the purposes of travel.  *See* ECF No. 280 (describing and attaching current version).   But Plaintiffs have never purported to challenge these (now-defunct) COVID mitigation policies that affected Plaintiffs' ability to change stations, conduct training and otherwise travel for assignments.

Other purported injuries relate only to Plaintiffs' assignments.  As previously explained, no relief is available to change a service member's assignment.  ECF No. 275, at 11 n.9.  But the operative complaint does not seek specific relief as to their individual assignments, and Plaintiffs have admitted that reassignment based on vaccination status would be acceptable (at least if it was non-retaliatory).  *See, e.g.*, Hearing Tr. April 11, 2022, at 59 ("neutral criteria can certainly be used with regards to other kinds of deployment, assignment, or operational decisions.").  And the Court has repeatedly disavowed the proposition that its orders to date prohibit such reassignments.  *See, e.g.,* Order, at 2-3, ECF No. 173 (clarifying that the injunctions to date did not prohibit reassignments based on vaccination status); Order, at 47 n.13, ECF No. 229 (similar). [2]

## II.    The Schmid Declaration Supports Defendants' Motion to Decertify.

Defendants previously explained that Plaintiffs no longer meet the standard for class certification and can no longer establish the need for a preliminary injunction.

---

[2] Additionally, Plaintiffs characterize Reserve Lieutenant Colonel's decision to drop from the Reserves to the Individual Ready Reserve prior to being ordered to vaccinate as "coerced."  Even if a decision she characterized as "voluntary" could reasonably be called "coerced," Plaintiffs do not explain how this purported injury could be remedied.  She has not sought to rejoin the Reserves.  If she does, her vaccination status would not prevent her from re-joining, and she has no related adverse action that would prevent re-joining.  Nothing remains for the Court to do in this instance.

ECF No. 275, at 12-14.  Defendants will address Plaintiffs' dubious legal arguments at oral argument if necessary, but it bears noting here that the Schmid Declaration tends to support Defendants' motion to decertify.  The Schmid Declaration does not claim that all or even most class members suffer a specific injury; it does not even address all of the named Plaintiffs in these actions.  And the purported injuries described are individualized and idiosyncratic in nature, which undermines any conclusion that a "a single injunction or declaratory judgment would provide relief to each member of the class." *See* ECF No. 275, at 14.  The purported injuries also would not be remedied by the current injunctions, and do not establish standing to seek prospective relief because there is no certainly impending future injury.

## III.    The Schmid Declaration Is Inaccurate.

Finally, Mr. Schmid's declaration is out of date, incomplete, or inaccurate in many respects. For example, he reports that some Plaintiffs continue to suffer adverse effects from being placed on the "Officer Disciplinary Notebook" or "ODN."  Mr. Schmid lacks access to the ODN and personal knowledge of its contents, and is misinformed.  Placement on the ODN, "a database used to track officer misconduct and substandard performance in the Marine Corps," is not itself a disciplinary measure, and such information is not included in an officer's personnel file. *See* MCO 5800.16, Vol. 15 ¶ 010401 (Aug. 8, 2018), https://perma.cc/RC83-6XZ4.  In any event, the Marine Corps has, in fact, closed the cases of Marine officers who were on the ODN solely for failure to comply with the COVID-19 vaccine mandate.  None of the Plaintiffs has an open case in the ODN. *See* Ex. 6, Wilson Decl. ¶¶ 3-6.

4

There are other errors as well.  Colonel Financial Management Officer ("Col. FMO") was issued a Report of Misconduct, but it was never placed in his record, and will not be.  Moreover, Mr. Schmid's speculation about the content of Col. FMO's CIRRAS record and its impact is incorrect.  *See* Ex. 7, Batinga Decl. ¶¶ 3-4.

Captain 2 and Captain 3 have in fact been offered the opportunity to complete Expeditionary Warfighting School, and were so informed prior to the Schmid Declaration.  Captain 2 received the orders he requested;  Captain 3 is re-enrolling in EWS.  Ex. 8, Vallely Decl. ¶ 3.

Second Lieutenant is already slated to return to training, and was so informed prior to the Schmid Declaration.  Ex. 9, Herron Decl. ¶ 3.

Gunnery Sergeant does not have any adverse fitness reports or other adverse paperwork in his record related to his RAR, and is not on a promotion hold.  Ex. 10, Wiegman Decl. ¶ 3.  The system that tracks readiness is in the process of being updated to reflect that he is medically ready, but he is currently able to PCS or attend training.  Ex. 11, Driscoll Decl. ¶ 3.

Lance Corporal 3's assignment includes full participation in battalion activities, including frequently drilling and travelling for training.  He currently has no impediments to future training or deployments.  Ex. 12, Riemann Decl. ¶ 3.

The Court should dismiss this action as moot.

Dated: February 14, 2023                    Respectfully submitted,

BRIAN M. BOYNTON                         */s/ Amy. E. Powell*
Principal Deputy Assistant Attorney        ANDREW E. CARMICHAEL
General                                    AMY E. POWELL
                                           Senior Trial Counsel

ALEXANDER K. HAAS
Director, Federal Programs Branch

ANTHONY J. COPPOLINO
Deputy Director

MICHAEL P. CLENDENEN
LIAM HOLLAND
CATHERINE M. YANG
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel: (919)856-4013
Email: amy.powell@usdoj.gov
*Counsel for Defendants*